Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
**FRANCK & ASSOCIATES**
910 Florin Road, Suite 212
Sacramento, CA 95831
Tel. (916) 447-8400; Fax (916) 447-0720

Attorneys for Plaintiffs Steve Ferrari, Mike Keynejad et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE FERRARI, MIKE KEYNEJAD, and PATRICIA RUBIN individually and as a representative of the Class of Persons similarly Situated; HOOSHANG JOWZA, CELSO FRAZAO, RENUKA NARAYAN, GERTRUD FRANKRONE, ERNEST SALINAS, KALKHUSAN SAREEN, HOSSEIN JALALI, RON WOLFE, SOHRAB RAHIMZADEH, FRED GRANT, ESTER GRANT, VINCENT LEUNG, KEN WONG, JESSICA LANGRIDGE, TONY NICOLOSI, DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ; HAROLD FETHE; RAYMOND GAPASIN;<br><br>          Plaintiffs,<br><br>          v.<br><br>AUTOBAHN, INC. DBA AUTOBAHN MOTORS; MERCEDES-BENZ USA, LLC; SONIC AUTOMOTIVE, INC.; AND SPEEDWAY MOTORSPORTS, INC.<br><br>          Defendant | Case No. 17-CV-00018-YGR<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>**1. CPO FRAUD**<br>**2. TRESPASS TO CHATTEL**<br>**3. FRAUD: INTENTIONAL MISREPRESENTATION AND CONCEALMENT**<br>**4. FRAUD – CONCEALMENT AS TO MBUSA**<br>**5. NEGLIGENT MISREPRESENTATION**<br>**6. NEGLIGENCE**<br>**7. VIOLATION OF B&P CODE SECTION 17500 [MISLEADING ADVERTISING]**<br>**8. VIOLATION OF B&P CODE SECTION 17200 [UNFAIR COMPETITION ACT]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Steve Ferrari, Mike Keynejad, Patricia Rubin, Hooshang Jowza, Celso Frazao, Renuka

Narayan, Gertrud Frankrone, Ernest Salinas, Kalkhusan Sareen, Hossein Jalali, Ron Wolfe,

Sohrab Rahimzadeh , Fred Grant, Ester Grant, Vincent Leung, Ken Wong, Jessica Langridge,

1

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

Tony Nicolosi, Donald Lyang, Artur Semichev, John Diaz, Harold Fethe and Raymond Gapasin herewith submits this Complaint for CPO Fraud, Tresspass to Chattel and Aiding and Abetting a Trespass to Chattels;  Fraud – Intentional Misrepresentation and Concealment and Aiding and Abetting a Fraud; Fraud-Concealment as to MB USA; Negligent Misrepresentation; Negligence; Violation of B&P Code Section 17500 (Misleading Advertising); Violation of B&P Code Section 17200 [Unfair Competition Act];  and allege and state as follows:

**I.**
**JURISDICTION AND VENUE**

1. This case was re-filed in San Mateo Superior Court, after this United States District Court dismissed plaintiffs' RICO claims, and declined to retain jurisdiction over the series of state law claims. Plaintiffs then re-filed this action in the San Mateo County Superior Court, asserting a series of state law claims. Defendant Mercedes Benz of USA then removed this case back to the United States District Court, on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715. Jurisdiction in the United States District Court is based on that act.

2. There is substantial, but not complete diversity of citizenship in that the plaintiffs reside in various counties within the Northern District; Autobahn Motors has a principle place of business in San Mateo County; defendant Mercedes Benz of USA has a principle place of business in Atlanta, Georgia; Sonic Automotive has a principle place of business in North Carolina; defendant Speedway Motorsport has a principle place of business in North Carolina.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

2

3. The Amount in controversy is substantially more than $75,000.

4. Venue in the Northern District of California is based on the fact that the occurrences and damages complained of herein substantially arose in the Northern District, from transactions between the plaintiffs with Autobahn Motors in Belmont, California.

## II.
## PARTIES

1.  Steve Ferrari is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated, and has purchased one or more Mercedes Benz automobiles from Autobahn Motors, and has taken his cars in her for regular maintenance service at Autobahn Motors during which non genuine parts were installed into his car.   He is a resident of Woodside, CA, located in San Mateo County, CA.

2.  Mike Keynejad is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated, and has purchased one or more Mercedes Benz automobiles from Autobahn Motors, and has taken his cars in her for regular maintenance service at Autobahn Motors during which non genuine parts were installed into his car.   He is a resident of San Carlos, CA, located in San Mateo County, CA.

3.  Patricia Rubin is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated, and has purchased one or more Mercedes Benz automobiles from Autobahn Motors, and has taken his cars in her for regular maintenance service at Autobahn Motors during which non genuine parts were installed into her cars. . She is a resident of San Francisco, CA, located in San Francisco County, CA.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

4.  Plaintiff John Diaz is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles.  John Diaz is a prospective class representative for individuals who brought their car for service to Autobahn Motors, and received non OEM parts, but were invoiced as if they received OEM parts.

5.  Plaintiff Harold Fethe is an individual who during 2009 purchased a 2005 S12 Mercedes Benz as a Certified pre owned (CPO) vehicle from Autobahn Motors.  His VMI report on the repair and purchase history of his automobile shows that zMAX was put in his car by Autobahn Motors.  The VMI shows that during 2009, a Mercedes-Benz certified pre-owned warranty was issued covering the automobile for the period 09/24/2009-09/23/2011.  Harold Fethe purchased a further third party warranty that expires December of 2016.  Although the VMI does not show zMAX to the previous owner of Harold Fethe's car, a reasonable inference from the evidence was that zMAX was in fact placed into the car at that time.  This evidence includes testimony of former parts advisor Roopesh Chandra, that they placed zMAX in all the pre-owned cars.  Chandra worked at Autobahn for app. 10 years.

6.  Harold Fethe is a proposed class representative for individuals who purchased a Certified Pre Owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].

7.  Plaintiff Ray Gapasin is an individual who purchased a pre-owned Mercedes–Benz car from non party Peter Pan Motors, a BMW dealership located in Burlingame, CA. His car had been earlier sold to the previous owner of the car, through a sale that occurred at Autobahn

4

Motors.  His VMI report shows that zMAX was put in his car.  This car was brought to Autobahn Motors as a sublet of Peter Pan Motors for repairs.  He was having problems with his oil light coming on and off.  Although the VMI does not show zMAX to the previous owner of Raymond Gapasin's car, a reasonable inference from the evidence was that zMAX was in fact placed into the car at that time.  This evidence includes testimony of former parts advisor Roopesh Chandra, that they placed zMAX in all the pre-owned cars.  Chandra worked at Autobahn for app. 10 years.  Autobahn Motors, without Plaintiff Gapasin's consent, added zMAX on September 30, 2010 [See VMI report, Exhibit M, Ray Gapasin VMI report, page 6]. Ray Gapasin's automobile is an example of where zMAX caused actual injury to the physical car, in the form of gummed up oil sludge that is now throughout the car's engine. Fixing the problem is a matter of fixing up the entire engine and cleaning it out piece by piece.

8.  Plaintiff Ray Gapasin is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 134 per the Sonic Automotive website].

9.  The following individuals assert their claims as individual members of the class:

10.  Plaintiff Hooshang Jowza is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

11.  Plaintiff Celso Frazao is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was

5

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

invoiced for OEM parts, and suffered compensable damages as a proximate result.

12. Plaintiff Renuka Narayan is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

13. Plaintiff Gertrud Frankrone is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

14. Plaintiff Earnest Salinas is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

15. Plaintiff Kalkhusan Sareen is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

16. Plaintiff Hossein Jalali is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

6

17. Plaintiff Ronald Wolfe is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

18. Plaintiff Sohrab Rahimzadeh is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

19. Plaintiff Fred Grant is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

20. Plaintiff Ester Grant is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

21.  Plaintiff Vincent Leung is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

22. Plaintiff Kenneth Wong is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

23. Plaintiff Jessica Langridge is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

24. Plaintiff Tony Nicolosi is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

25. Plaintiff Donald Lyang is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

26. Plaintiff Artur Semichev is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs, and received non-OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

27. Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn" or "Autobahn Motors"] is a California Corporation with a principal place of business in Los Angeles, CA and the dba Autobahn Motors in Belmont, San Mateo, CA. A printout from their website with further information regarding Autobahn Motors, Inc. is attached hereto as Exhibit A. Autobahn Motors is sued herein based on its direct participation in the fraudulent conduct described herein.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

28. Defendant Mercedes-Benz USA, LLC ["MB USA"] is a Delaware Limited Liability Company, with a principal place of business in Atlanta, Georgia. A printout from its website with further information regarding Mercedes-Benz USA, LLC is attached hereto as Exhibit B. MBUSA is sued herein based on its direct participation in the fraudulent conduct described herein.

29. Defendant Sonic Automotive, Inc. is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. It is directly involved in the implement and conduction of the secret/unearned commission scheme alleged herein.

30. Defendant Speedway Motorsports, Inc. is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. It is directly involved in the implement and conduction of the secret/unearned commission scheme alleged herein.

**III.**
**CLASS ACTION ALLEGATIONS**

31. Plaintiffs make the following class action allegations:

32. According to the data from Munich Auto Parts [the supplier of the non OEM oil filters described herein], there were a total of 17,795 non-OEM/non genuine oil filters purchased by Autobahn Motors.  These non-OEM oil filters were received by Autobahn Motors and sold to Autobahn Motors customers such as Plaintiffs herein.

33. It is true that many of the victimized customers own more than one Mercedes Benz, and thus 17,795 may not equate to 17,795 Plaintiffs. Munich Parts Warehouse also shows the

9

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

following detail regarding its sales of  non-genuine/approved, non-OEM MB USA products

to Autobahn Motors during the period 2005-2010:

1. MUNICH PARTS

Qty Shipped: 61,230

Total: $580,679.31

Total Dealer Net: $772,527.20

Total Saved:  $191,847.89

2. MUNICH OIL FILTERS

Qty Shipped: 17,795

Total:  $127,082.00

Total Dealer Net: $174,120.00

Total Saved: $ 47,038.00

3. MUNICH FILTERS

Qty Shipped: 318

Total:  $12,339.06

Total Dealer Net:  $16,646.00

Total Saved:  $ 4,306.94

4. ALL FILTERS (except Oil Filter)

Qty Shipped: 7853

Total: $144,970.96

Total Dealer Net:  $187,284.60

Total Saved:  $42,313.64

The dollar amounts sold by Munich Auto Parts to Autobahn are as follows: $174,120 in

oil filters; $75,280.00 in spark plugs [13,670 units]; $1,816 in motor mounts; $16,484.50

in V-Belts; $18,358.50 in gaskets; $3,868.00 in engine mounts; $22,709.90 in battery

units [5024 units]; $20,109.50 in brake sensors [5024 units]; $28,570.00 in ignition

cables;  $330.00 in tightener pulleys; $30,736.00 in air mass sensors; $19,857.50 in fuel

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

filters; $22,649.00 in part kits filters; $7,460.00 in trans oil filters; $14,556.20 in cabin filters; $19,898.50 in air filters; $60,303.00 in filter elements;  adding up to a total of $537,106.60 non-genuine/approved parts.

34. The transactions between Autobahn Motors and an auto parts warehouse by the name of SSF Auto, show thousands of different non-OEM /non-genuine/non-approved parts being purchased by Autobahn for placement into unsuspecting Plaintiffs' automobiles, which add up to thousands of other impacted victims. The SSF Imported Auto Parts documents were examined by former Autobahn Motors parts manger Roopesh Chandra who confirmed that parts covered virtually every auto parts available for Mercedes-Benz automobiles ion in-genuine/approved form. SSF Imported Auto Parts produced approximately 3600 pages of electronic records showing its sale of thousands non-genuine/approved Mercedes-Benz parts to Autobahn Motors.

35. Plaintiffs do not know the true number of victims, but allege that the number is in excess of ten thousand, which satisfies the numericity requirement for a class action.

36. According to Autobahn Motors General Manager Joe Cox, the MB Auto Parts purchased from SSF Imported Auto Parts during the period of December 2004-May, 2015 were placed into  Autobahn Motors preowned fleet including automobiles coming under the CPO program.

37. The same cars in the pre-owned car fleet also received a non-OEM product known as zMAX. zMAX is an oil additive manufactured by Speedway Motorsports Inc.  Speedway Motors was founded by the same President [O. Bruton Smith] as the former President and current Chairman of Sonic Automotive.  Defendant Smith has instructed the General Managers at the Autobahn Motors Dealerships [APP 162 Dealerships], to actively market zMAX, and to

11

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

automatically place zMAX into all of the cars in the dealerships preowned car fleet, including CPO cars.   Autobahn Motors with former Sonic Automotive Executive Joe Cox, both enforced and followed this directive, and did during app. 2004- present, regularly cause zMAX to be placed into all pre-owned cars, including CPO cars in stock at Autobahn Motors.

38. There are thus 2 classes of victims.  The class of victims include the customers of Autobahn Motors and other dealerships whose car received non OEM parts including zMAX during the repair process, and during the process of purchasing a CPO automobile.  Autobahn Motors General Manager Joe Cox testified that Autobahn motors sells about 75-100 pre owned automobiles each month, or about 1000 per year. Going back to 2004, this comes to approximately 12,000 pre-owned automobiles. The number of other class members that bring their automobiles to Autobahn Motors for regular maintenance is likely in excess of $12,000, based on data plaintiffs have obtained from email blasts in the San Mateo Area.

39. Named Plaintiffs are typical of the nature and types of claims herein, as they are owner of Mercedes Benz automobiles that had undergone oil changes and/or other repairs at Autobahn Motors and received non-OEM parts and were invoiced for OEM parts, at OEM prices.  Two of the plaintiffs, Patricia Rubin and Harold Fethe, purchased CPO Mercedes Benz automobiles from Autobahn Motors.

40. Plaintiff Steve Ferrari will serve as a capable class representative, Plaintiff Ferrari will fairly and adequately protect the interests of the class.

41. Plaintiff Steve Ferrari is a longtime Mercedes Benz owner with multiple cars that have been regularly been brought to Autobahn for service.

12

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

42. Plaintiff Mike Keynejad has been instrumental in receiving news and evidence of the OEM fraud, and following up on that evidence in following up on those proceedings and producing documents pursuant to a series of subpoenas. Mike Keynejad's shop Eurotech has become a clearinghouse for Autobahn former techs who came to Mike Keynejad after learning of his current lawsuit with Autobahn Motors. Keynejad is also an expert concerning Mercedes Benz car repair procedures and issues, and of any of the interrelationships that form the Mercedes-Benz subset of the auto repair business.

43. Mike Keynejad has a substantial history including his family's ownership of Mercedes Benz dealerships, Mercedes Benz car and truck factories, Mercedes Benz certified body shop [Eurotech]; all of which has given him decades of highly specialized Mercedes Benz specific knowledge that will ready to bear in this case.  He understands the duties of a class representative and agrees to abide by those duties.

44. Plaintiffs John Diaz is a prospective class representative. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles. He also is an owner of a pre owned Mercedes Benz automobile which was brought in for service at Autobahn Motors.

45. Harold Fethe is a proposed class representative for individuals who purchased a pre-owned CPO vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].  Plaintiffs believe that some of the Sonic Automotive dealerships do not sell zMAx [For example, Mercedes Benz of Walnut Creek].

46. Harold Fethe had a career of working at the Shell Oil research facility working in which issues about oil additives were researched.   He is an example of someone who brought a Certified preowned Mercedes (CPO) car from Autobahn which had zMAX put into it, which consequentially caused Mr. Fethe's automobile warranty to become voidable at the option of the warrantor.  This legal impact on the warranty is common to all purchasers of preowned vehicles of Autobahn Motors, and many of the other 132 dealerships owned by Sonic Automotive.  Mr. Fethe was told by the Autobahn Motors salesman of the car that the car was done under the CPO program, and that a result of having CPO status is was worth several thousand dollars more. More recently, during November 2016, Mr. Fethe attempted to obtain a warranty repair of the zmax problem (desludging) to Easy Care, the third party warranty issuer. Easy Care declined this request on the basis that damage caused by oil additives were not covered by the warranty.

47. Plaintiff Ray Gapasin is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMAX was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].

48. Raymond is an example of a person that purchased a preowned Mercedes Benz that was previously sold by Autobahn Motors, and that had received zMAX placed into the car by Autobahn Motors, when it sold the car as a certified preowned car, and then again in September 2010, when the car was taken in for a repair.  Raymond Gapasin is an auto mechanic enthusiast who has a substantial level of knowledge concerning the operation of automobiles generally, and his own Mercedes Benz.  Raymond is also an example of a person whose car was damaged by zMAX as described above.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

49. Plaintiffs have retained Herman Franck, Esq. of Franck & Associates to prosecute this claim.

50.  Herman Franck and Franck and Associates will serve as class counsel, and have the following credentials to show that they will be adequate counsel for the class:

51. Herman Franck is a Georgetown University Law Center Graduate [Juris Doctorate 1985] with a Masters of Economics [1985] and a BA (honors) in Political Economy from UC Berkeley [1981].

52.  Mr. Franck has been a member of the California State Bar since 1986 [SBN 123476], and has owned and operated Franck & Associates in Sacramento since the year 2000. Mr. Franck represents an auto body shop in San Mateo by the name of Eurotech in a lawsuit against Autobahn and MB USA concerning an ad co-op scheme and illegal tying arrangement [*Maskay Inc. dba Eurotech vs Autobahn Motors Inc. dba Autobahn Motors; MB USA; Rick Ali, Bobby Ali, AW Collision Inc.* San Mateo Superior Court Case No. CIV 525559].

53. During the course of that case, the facts and evidence regarding the OEM fraud described in this matter came to light through a series of subpoenas issued by Herman Franck's office; and through a series of depositions of eyewitnesses taken by Herman Franck of eyewitnesses to the OEM fraud described in this complaint.

54.  Eurotech has also become instrumental in assisting Herman Franck in this matter. Eurotech, owned by Mike Keynejad, has become a clearinghouse for information concerning Autobahn Motors' fraudulent conduct.

15

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

55. Apparently, word got out in the industry about Eurotech's case, and people who formerly worked for Autobahn contacted Mike Keynejad and informed him of the OEM parts scandal.

56. Uncovering this scandal has required team members who have industry specific knowledge; and who also know the involved people in this business.

57. Class definition: Plaintiffs propose a class definition as follows:

(a) Any person or entity who brought one or more Mercedes Benz automobiles to Autobahn Motors, in Belmont, CA during the period of 2005-present; who received non-OEM/non-genuine/approved Mercedes Benz parts, supplies, and/or oil from Autobahn Motors without the customers' consent; and were invoiced for OEM parts at OEM prices;

(b) All Buyers of Certified Pre Owned (CPO) Mercedes Benz automobiles from Autobahn Motors during the period 2005-present who had zMAX or any other non OEM product put into their car;

(c) All Buyers of automobiles from any dealership of Autobahn Motors that places zMAX into the used or preowned car inventory during the period 2005-present who had zMAX or any other non OEM product put into their car.

58. A class action is a judicially efficient manner in proceeding with this type of claim. The respective value of claims, person by person, are inadequate to litigate on their own, and could only ever be brought as a practical matter as a class action.

## IV.
## DISCOVERY OF UNDERLYING FACTS RE OEM SCANDAL

59. Plaintiffs did not know of this OEM scandal until it was uncovered by Herman Franck and Mike Keynejad during the process of the lawsuit against Autobahn. The evidence came to

16

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

light during the May 20, 2015 deposition of eyewitness Mike Del Rosario. Del Rosario testified that he used to be a service tech [repair man] at Autobahn Motors from 2001-2012; and in that capacity had received from the parts department, parts that he could see were non-OEM, and installed those non-OEM parts into Autobahn Motors customers' vehicles.

60. The evidence was further firmed up when a series of document production from third party subpoenas in the *Maskay Inc. v. Autobahn* lawsuit during the period of May 2015-present [and ongoing]. The process of investigating and researching the OEM fraud when Autobahn Motors filed a motion for protective order to stop Herman Franck/Eurotech from taking the depositions of eyewitness Greg Graziani and Roopesh Chandra .

61. Plaintiffs learned when following Herman Franck and Eurotech's discovery of the evidence. Eurotech published evidence concerning the fraud on the Eurotech Facebook page.  Plaintiff Steve Ferrari was further notified through direct discussions with Mike Keynejad re the OEM scandal.

62. Steve Ferrari learned of the evidence approximately on July 19, 2015 when Herman Franck sent him that evidence.

63.  Mike Keynejad learned of this OEM scandal on May 20, 2015 at the deposition of Mike Del Rosario.

64. The other Plaintiffs learned in a similar way, but later, during approximately September 2015.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

65. Thus the date of discovery of Steve Ferrari should be July 19, 2015; for Mike Keynejad on May 20, 2015; and the discovery for other Plaintiffs should be September 2015.

66. Thus this action is timely.

## V.
## FACTS RE RELATION BACK

67. This action relates back to a similar action filed by Plaintiffs in the United States District Court, Northern district of California, entitled *Ferrari et al. v. Mercedes-Benz et al.*, Case No. 4:15-cv-04379-YGR.

68. That action was initially filed on September 24, 2015.

69. That action included a federal claim under RICO Action, 18 U.S.C. Section 1961 et seq., and state law claims of false advertising, fraud, negligent misrepresentation, negligence, violation of B&P Code section 17200. The federal case was dismissed by Order granting defendants Motions to Dismiss, dated December 12, 2016. The dismissal was based on the RICO claim only, and the District Court's unwillingness to retain supplemental jurisdiction over the state law claims absent a viable federal law claim. The Court's decision states:

18

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

""In short, the allegations of the SAC might state a simple claim for fraud[2] or unfair business practices by their respective companies, but they do not allege that the individual defendants participated in a pattern of racketeering acts by a RICO enterprise.

FN 2 The Court notes that the website printout referenced in the SAC, attached as Exhibit D, does not indicate that Autobahn only uses OEM parts, but that "[o]ur service center has access to OEM Certified auto parts and accessories." (SAC, Exh. D. ECF 66-1 at 25.) Further, the warranty information on the back of the invoice exemplar includes a separate statement of a "Parts Warranty for Non-Mercedes-Benz Parts" in the lower left corner of that page. (*Id.*, Exh. C.) Further, the alleged "newsletter" at Exhibit G to the SAC appears to be part of an owners' manual and part of a service form, neither of which appear false, much less to have been disseminated through the mails. Thus, the allegations lack plausibility even to allege garden variety fraud."

70. The US District Court previously ruled that the state law fraud claims against Autobahn Motors had been sufficiently stated, and DENIED Autobahn Motors' Motion to Dismiss the Fraud Claim. the District Court made the following finding in thitsi in its Order granting in part the series of motions to dismiss the initial complaint:

"As to the claims for fraud, fraudulent inducement, negligent misrepresentation, and negligence, Autobahn argues only that, as with the RICO claim, the allegations are insufficiently pleaded per the standards set forth in Rule 9(b). The Court does not agree. While Plaintiffs' Complaint is not a model of clarity, there are factual allegations in support of the claimed fraudulent and deceptive conduct by Autobahn which are pleaded

19

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

with sufficient particularity as to the nature of the false representations, made by whom, and when."

71. Mercedes Benz of USA removed the San Mateo Complaint to the United States District Court for the Northern District pursuant to Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715.

## VI.
## FIRST CLAIM FOR RELIEF FOR CPO FRAUD

72. This is a First claim for relief by Plaintiff Harold Fethe, and a class of all other purchasers of Certified Pre-Owned Automobiles, against Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn Motors"], Mercedes Benz of USA LLC ("MB USA}) Sonic Automotive Inc. ["Sonic Automotive"], Speedway Motorsports, Inc. ["SMI"], and  for fraud committed during the course of selling plaintiffs and other CPO buyers of Mercedes Benz automobiles from Autobahn Motors, pursuant to the CPO program published and administered by Mercedes Benz of USA, through its agency relationship with Autobahn Motors.

73. Mercedes Benz of USA has good reason to be proud of its CPO program. The program is advertised on the MB USA website, which states

20

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

(https://www.mbusa.com/mercedes/cpo#waypoint=cpo-

certification&!layout=/cpo/overview/certification):

74.    "To qualify for Pre-Owned Certification, a Mercedes-Benz vehicle must meet stringent

criteria and pass a rigorous inspection."

75. The MB USA website ((https://www.mbusa.com/mercedes/cpo#waypoint=cpo-

certification&!layout=/cpo/overview/certification):, and a MB USA published Youtube video

(https://www.youtube.com/watch?v=f7PzX4d50tY) describe the CPO program as a 155

point inspection regime covering all aspects of the automobile including: Fluid check; engine

components; electrical systems and functions; drivetrain and undercarriage; chassis and

body; road test; post road test inspection.  According the the youtube video (at 1:24), "it's a

vigorous regime of multiple multi point inspections."

76. The automobile is checked by Mercedes Benz factory trained techs. The cars are re-

conditioned with replacement parts as needed performed to  Mercedes Benz standards using

genuine Mercedes Benz parts. (Youtube video, at 2:03).

77. The youtube video states that "exceeding expectation is also what sets a certified preowned

Mercedes Benz apart from the rest. .. The youtube video also states Mercedes Benz CPO

program . . ." continues to lead the way . . ."

78. MB USA publishes a  CPO program guide which states:

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

a.  page 7 states: Quality Certified Mercedes-Benz Technicians perform repairs using only genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories.

b.  page 17 stated: the ICR and all reconditioning work must be performed on a qualifying vehicle to bring it up to MBCPO Standards using Mercedes-Benz Genuine Parts

c.  page 19 states: 3.16 Prior to vehicle sale: • Provide Inspection and Certification Report to Customer • Disclose any prior repair and service history • Provide supporting repair orders for CPO reconditioning

d.  page 21 states:  The ICR must be reviewed with the Customer prior to sale. o Items on the vehicle that are excluded from the MBUSA warranty because they are non-Mercedes-Benz or aftermarket components and/or accessories should be checked off by the Technician on the online form.

79. According to a written statement made by counsel for MB USA, Mr. Stephen Ernest, in San Mateo County Superior Court Action No. CIV525559 in its trial brief: "MBUSA's certification program is a promise (or certification) to the repair customer that the vehicle will be repaired with OEM parts and to MB standards (those which they had prior to the collision)."

80. The MB CPO program's promises are of a rigorous multiple multi point check system done by factory trained techs and reconditioning process using genuine MB USA parts only is further verbally told to prospective CPO car buyers through the dealership's sales associates.

22

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

81. California Vehicle Code Section 11713.18 makes it illegal to sell a certified automobile under certain circumstances, including:

(6)  Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected.

*** 

(9)  The term "certified" or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of subdivision (a) of Section 11713 of this code or Section 17200 or 17500 of the Business and Professions Code.

82. Consistent with these statutes, MB USA 's program guide states at page 19 and 21 that the inspection and certification report must be given to the customer .

83. The MB CPO program is issued by and administered by MB USA, but is actually done through an agency relationship with the authorized Mercedes Benz dealership. MB USA relies on its dealers to perform the inspections, fill out the certification reports and give them to the consumer. In this case, the authorized dealership is Autobahn Motors.

23

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1
2
3   84. As wonderful as this program appears on paper and in video, there is a major problem afoot
4       at Autobahn Motors. Autobahn Motors regularly, automatically, and intentionally places into
5       the entire CPO car inventory a series of non OEM non Genuine products, including one of
6       special note by the name of zmax. Zmax is an oil additive, is non genuine, non approved by
7       Mercedes Benz. According to Autobahn Motors General Manager Joe Cox, zmax is put into
8       all of the CPO cars for sale at Autobahn Motors, and at 17 other Sonic Automotive owned
9
10      dealerships in the Northern California area.
11  85. Zmax is a prohibited product for Mercedes Benz cars. Mercedes Benz publishes the
12      following statement at its website concerning the use of oil additives such as zmax:
13  86. "Up to now, Daimler AG has not approved any product that is allowed to be introduced or
14      mixed into approve, read-formulated lubricants for engines, transmissions, or major
15      assemblies in Mercedes-Benz vehicles as a special additive! The vehicle owner is solely
16      responsible if special additives are used in lubricants! If damage occurs the legal warranty
17      and guarantee claims may be limited."
18
19  87. Zmax is put into the engine, the transmission, the steering wheel, and the gas tank. By
20      placing it into the gas tank, the emissions standards set by California State law, and the
21      process of confirming compliance through smog testing, is altered and harmed. Zmax
22      increases the emissions because it is primarily a petroleum based mineral oil.
23
24  88. Mercedes Benz also publishes owners' manuals for its automobile which similarly prohibited
25      the use of oil additives.
26
27                                                                                          24
    *Ferrari v. Autobahn Motors.*
    Plaintiffs' First Amended Complaint
28

89. Autobahn Motors also places a variety of auto parts purchased from SSF Auto, a major supplier of Non Genuine Mercedes Benz parts. Plaintiffs have obtained documents through previous subpoenas from SSF auto showing virtually every type of Non Genuine auto part imaginable, from brake pads to shock absorbers and everything in between. According to Autobahn Motors General Manager Joe Cox, these parts were regularly used for the CPO cars.

90. Autobahn Motors also puts into the CPO cars other non genuine MB products produced or marketed by MOC Products. Plaintiff has obtained a list of such products through a previous subpoena to MOC Products, which includes the following non genuine liquids  put into CPO cars at Autobahn Motors:

     a.  zMAX sold to Autobahn Motors total quantity purchase# 2,520. bottle

     b.  MOC Brake fluid sold to Autobahn total quantity # 3,188. 32 oz bottle.

     c.  Automatic Transmission fluid conditioner quantity# 3,336.

     d.  Windshield washer solvent quantity # 40,560.

     e.  MOC company gave Autobahn some free advertising posters

     f.  MOC GEAR Guard 75w-140 quantity of # 2712.

     g.  Ultra power steer flush kit quantity # 2,856.

     h.  Power steering two-pack kit # 1,466.

91. According to the MB USA website, the proper approved brake fluid is described as follows:

     """We recommend using only products

     [https://bevo.mercedesbenz.com/bevolisten/331.0_en.html

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

25

1. which are distinctly marked with the label indicating the approval of Mercedes-Benz, e.g. MB-Approval 229.51" labels referring to MB 229.51 don't have the sn approval of Mercedes-Benz.

2. Which are listed in the current MB BeVo. Only listed products are tested and approved by Mercedes-Benz"

15. Plaintiff Mike Keynejad has examined documents describing the contents of the MOC brake fluid and the MB approved brake fluid, and has concluded that the MOC brake fluid is a lower level brake fluid. MOC Brake fluid is definitely not approved by MB USA, and is regularly used by Autobahn Motors to put into CPO cars. Mr. Keynejad has prepared a technical report describing further details of this CPO fraud issue, a copy of which is attached as Exhibit A hereto. The statements in that report are incorporated herein, and describe the series of misrepresentations, concealments, and proof of use of non genuine parts at Autobahn Motors on CPO cars.

92. Autobahn Motors General Manager Joe Cox testified in his deposition that Autobahn Motors places zmax into its CPO cars because its corporate owner, Sonic Automotive, instructs it to do so. Joe Cox follows these instructions.

93. Because MB USA has chosen to appoint Autobahn Motors as its agent in implementing the CPO program, and issuing the CPO Certificates, MB USA is charged with knowing as its agent has knowledge. Since Joe Cox and others at Autobahn Motors, including David Aldheim, Director of Fixed operations has actual knowledge that products placed into the

26

cars contradict the express mandates of the MB USA CPO program to use approved MB USA parts only, MB USA is charged with this same knowledge.

94. The CPO fraud alleged here is as follows: MB USA through its agent Autobahn Motors and with the connivance, assistance, and facilitation of Speedway Motorsports Inc., is willfully misrepresenting CPO cars as in compliance with the MB USA CPO program's mandates to use Genuine MB parts only. The true facts are that the CPO cars do not comply with the mandate of MB USA's CPO  program in that various Non Genuine parts such as zmax, MOC Brake Fluid, non OEM Parts from SSF auto, non OEM parts from Munich Auto Parts (oil filters, air filters, cabin filtrs, spark plugs, brake censors and other various parts) are regularly and systematically placed into the CPO cars during the CPO reconditioning process.

95. MB USA is further aware of this practice because plaintiffs counsel Herman Franck has explained it to MB USA's counsel Robert Hawk several times in face to face meetings and in telephonic meetings, and has asked Robert Hawk to make arrangements to have MB USA require or request Autobahn Motors to stop this conduct.  Under the CPO program guide, MB USA has expressly stated in writing that it has the right to terminate the CPO program to any dealership who refuses to comply with the program's rules.

96. MB USA has further actual knowledge of the practices of Autobahn Motors in using zmax and MOC Products in CPO automobiles because it comes up in vehicle repair history reports called VMI reports. Plaintiffs have collected up around 125 such VMI reports which show

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

the regular use of zmax and other non oem products. MB USA is the keeper of these reports, and as such has actual knowledge of the regular use of these non genuine products.

97. The fraud has substantial premeditation and willful falsification within it. As an example, there is the case of non party Shideh Ghajar, who purchased a CPO Car from Autobahn Motors During December 31, 2015. Plaintiff knows of this case because Ms. Ghajar has become a customer of Mike Keynejad automotive collision and repair shop in San Carlos California, by the name of Eurotech.

98. Her invoice shows that zmax and MOC Brake fluid products were placed into her car on December 31, 2015. That paperwork is further attached to the report of Michael Keynejad, Exhibit A hereto, as Exhibit 2 to that report. The car's VMI shows that it was deemed certified pre owned by MB USA, by and through its agency relationship with Autobahn Motors, on December 21 2015. When we showed Autobahn Motors counsel, Mr Bruce Nye, the involved invoice, he noted that the invoice showed that Autobahn Motors was the owner of the car at the time when the non OEM products were put in.

99. The chronology shows a pattern whereby the offending non OEM products are put into the CPO car after the CPO designation, and just before the car is given to the buyer. This premeditation is a method through which Autobahn Motors attempts to scam its way through a lack of compliance with the CPO program by deliberately placing the offending products into the CPO cars a few days after the cars are certified.

28

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1

2    100.        Autobahn Motors and MB USA further committed a CPO fraud by concealing the

3    facts of the use of the various non genuine parts from the consumer, by failing to adhere to

4    MB USA's CPO program guide's mandates, and the mandates of California Law, Vehicle

5    Code Section 11713.18 (quoted above) to provide the buyer with a signed CPO inspection

6    report. In fact, Autobahn Motors does not give this inspection report to its customers.

7

8    101.        Plaintiffs know this to be the case because Harold Fethe did not receive his

9    inspection report; non party Shideh Ghajar did not receive hers. Her report is attached to the

10   report of Michael Keynejad as Exhibit A, Exhibit 2 thereto, and is not signed by her. It also

11   fails to state the use of two non OEM products: MOC brake fluid and zmax.  Her VMI report

12   also states that the CPO car meets or exceeds Mercedes Benz standards, which is a false

13   statement inputted by Autobahn Motors after they placed non OEM brake fluid and non

14   OEM zmax. Former Autobahn Motors salesperson Paul Grewal (app. 2004-2014) has

15   explained that all of the sales people at Autobahn Motors were aware of the practice there of

16   placing zmax into all of the CPO cars. They all knew it was non genuine unapproved

17   product. They all collectively agreed to not tell customers about the use of zmax. Paul

18   Grewal explained the reasons he didn't tell customers such as Plaintiff Harold Fethe was that

19   "if I told him, he would have asked me what is zmax, and I didn't want to have to answer that

20   question."  Paul Grewal also states that when salespeople at Autobahn Motors were told to

21   fill the cars up with gas, they were told not to use premium gas as mandated by Mercedes

22   Benz, and instead to use cheaper gas. Plaintiff Harold Fethe purchased his CPO Mercedes

23   from Paul Grewal, and was among those customers not told that zmax had been placed into

24

25

26                                                                                      29

27   *Ferrari v. Autobahn Motors.*

28   Plaintiffs' First Amended Complaint

the car Harold Fethe purchased. Instead Harold Fethe was told by Paul Grewal that his car was being sold as part of the CPO program according to the CPO program rules. This was a false statement in that in fact the car was not compliant with program rules because the CPO program forbids the use of zmax or other non OEM products.  Had Harold Fethe known that zmax had been placed into his car, he wouldn't have purchased it.

102.     Autobahn Motors' conduct in failing to provide its customers with the certification inspection reports is a per se violation of Vehicle Code Section 11713.18, and constitutes fraudulent concealment.

103.     Autobahn Motors' conduct was a fraudulent concealment because it intentionally failed to disclose facts which, in light of the representations made in published accounts and/or by Autobahn Motors sales associates rendered those representations deceptive. The salespeople deliberately withheld the regular and automatic use of zmax into all the CPO cars, and represented the cars as being in compliance with the rigorous program rules of the CPO program.

104.     Autobahn Motors' conduct was a fraudulent concealment because it actively concealed an important fact about the use of non-genuine parts from plaintiffs and others similarly situated known only to Autobahn Motors and its principle, MB USA. The Autobahn Motors sales people learned of the regular use of zmax, and all acted similarly in not disclosing this to the customers such as Harold Fethe and other buyers of CPO cars.

30

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint


105.        Autobahn Motors' conduct was a fraudulent concealment because it too prevented plaintiffs and others similarly situated from discovering the true facts. This prevention of information disclosure continues on as Autobahn Motors refuses to show Plaintiffs the truth of the matter.

106.        Autobahn Motors intended to deceive plaintiffs by concealing the true facts regarding the systematic regular and automatic use of non genuine parts.

107.        Plaintiffs reasonably and detrimentally relied on the misrepresentations and deceptions of Autobahn Motors. Had Harold Fethe known there was zmax in his car, he wouldn't have purchased it. Now he suffers from having a car out of warranty; his warranty provider won't renew it; his warranty provider refused his request to clean out the zmax (called de sludging), on the basis that oil additives are not covered under the warranty. Autobahn Motors also placed zmax into his car later during repair/maintenance on his car, which violates the CPO program rules and constitutes a breach of the implied covenant of good faith and fair dealing, all of which was hidden from Harold Fethe. Autobahn Motors refused

108.        Plaintiffs were harmed in that they paid a higher price for the CPO designation, approximately $2000 - $3,000 per automobile, depending on the make and model, or such other higher price according to proof. Harold Fethe attempted to negotiate a lower price when he purchased his car, but salesman Paul Grewal wouldn't budge from the asking price,

31

and explained that it is worth the price because it is in the CPO program and is covered by the CPO warranty.

109.        Plaintiffs were further harmed because the use of the non-genuine parts is not covered under the MB USA CPO warranty, or other third party warranties. This coverage issue places the warranty into an actual jeopardy as any damage to the automobile caused by the use of such non genuine parts is not covered by the MB USA warranty. Harold Fethe's warranty repair to de sludge his car from the zmax problem was rejected during around November 2016, just before his warranty expired.

110.        Defendant Autobahn Motors misrepresentations and concealments were a substantial factor in causing plaintiffs harm.

111.        MB USA is liable for this harm and damages because the conduct of Autobahn Motors in misrepresenting and concealing the use of Non-genuine parts was done as part of the MB USA CPO program in the name of MB USA, but actually done pursuant to an agency assignment by MB USA to Autobahn Motors.

112.        Defendant Sonic Automotive is liable for this harm and damages because it is the corporate owner of Autobahn Motors and aided and abetted the conduct of Autobahn Motors by expressly directing Autobahn Motors through its General Manager, Joe Cox, and David Aldheim, its fixed operations director, to use zmax, MOC Products, SSF Auto Parts products, Munich Auto parts non genuine parts, and other non genuine parts from suppliers not as of

32

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

this writing known by plaintiffs on the CPO cars at Autobahn Motors. General Manager Joe Cox testified in a deposition that the reason zmax is placed into all CPO cars is because management of Sonic Automotive, owner of Autobahn Motors, told him to place zmax into all CPO cars, and Joe Cox followed that directive.

113.        Defendant Speedway Motors is liable for this harm and damages because it is a related entity to Sonic Automotive, founded by the founder of Sonic Automotive O. Bruton Smith, and facilitated the use of zmax and MOC products by arranging for a distribution of zmax and MOC products through MOC Products company. As a result of its direct involvement, zmax and other MOC Products known by Speedway Motors to be non genuine were regularly delivered to Autobahn Motors and placed in automobiles designated as CPO cars.

114.        Defendants conduct was willful, premediated, done with substantial planning and intentional wrongful conduct, was known to be concealed by the public, was willfully concealed to plaintiffs in violation of the express rules of the MB CPO program and California Vehicle Code 11713.18 , was done in disregard of plaintiffs rights as purchasers of the CPO cars, was done fraudulently oppressively and wantonly, knowing that plaintiffs would thereby be harmed, which constitutes a basis for punitive damages pursuant to California Civil Code Section 3294 in an amount according to proof.

115.   Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable,

33

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

because Defendants are expected to continue to wrongfully market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

116. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors and MB USA to cease the distribution, sale and use of zMAX products in Mercedes Benz CPO Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

117. Plaintiffs request equitable remedies of disgorgement of profits; restitution; an accounting; and other equitable relief as available.

### VII
### SECOND CLAIM FOR TRESPASS TO CHATTEL
### [AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC AUTOMOTIVE, INC.; SPEEDWAY MOTORSPORTS, INC.]

118.   This is a second claim for relief by all Plaintiffs against Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn Motors"], Sonic Automotive Inc. ["Sonic Automotive"], and Speedway Motorsports, Inc. ["SMI"] for Trespass to Chattel.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

119.    Defendants each committed the intentional tort of trespass to chattels against each
plaintiff and other plaintiffs similarly situated by the following conduct.

120.    During the period 2005-present, and continuing, Autobahn Motors regularly, repeatedly,
and automatically poured in and installed various non-genuine/non-approved/non-OEM
products into customers such as plaintiffs having their automobiles at Autobahn Motors for
repairs or service.

121.    The following list of non-OEM/approved/MB genuine parts is a list currently known by
plaintiffs:

122.    A group of products purchased by Autobahn Motors from Munich Parts, including oil
filters, air filters, spark plugs, brake sensors, summarized by the following chart:

1. MUNICH PARTS

Qty Shipped: 61,230

Total: $580,679.31

Total Dealer Net: $772,527.20

Total Saved:  $191,847.89

2. MUNICH OIL FILTERS

Qty Shipped: 17,795

Total:  $127,082.00

35

Total Dealer Net: $174,120.00

Total Saved: $ 47,038.00

3. MUNICH FILTERS

Qty Shipped: 318

Total:  $12,339.06

Total Dealer Net:  $16,646.00

Total Saved:  $ 4,306.94

4. ALL FILTERS (except Oil Filter)

Qty Shipped: 7853

Total: $144,970.96

Total Dealer Net:  $187,284.60

Total Saved:  $42,313.64

The dollar amounts sold by Munich Auto Parts to Autobahn are as follows: $174,120 in oil filters; $75,280.00 in spark plugs [13,670 units]; $1,816 in motor mounts; $16,484.50 in V-Belts; $18,358.50 in gaskets; $3,868.00 in engine mounts; $22,709.90 in battery units [5024 units]; $20,109.50 in brake sensors [5024 units]; $28,570.00 in ignition cables;  $330.00 in tightener pulleys; $30,736.00 in air mass sensors; $19,857.50 in fuel filters; $22,649.00 in part kits filters; $7,460.00 in trans oil filters; $14,556.20 in cabin filters; $19,898.50 in air filters; $60,303.00 in filter elements;  adding up to a total of $537,106.60 non-genuine/approved parts.

123.    A group of parts purchased from SSF Imported Auto Parts. There were roughly 3650 pages of instances whereby Autobahn Motors purchased a non-OEM part from SSF Imported

36

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

Auto Parts.  The parts are described in the SSF Imported Auto Parts documentation and cover the full gambit of almost every part made by Mercedes Benz.

124.     An oil additive called zMAX, which is produced and marketed by Speedway Motorsports, Inc., a company related to Sonic Automotive, publically referred to as the "recommender" of zMAX, and controlled by the founder of Sonic Automotive, Mr. O. Bruton Smith.

125.     Mercedes Benz website excerpts confirm that such oil additives are prohibited under the MB USA warranty, and cause injury and damage to the car.

> "Up to now, Daimler AG has not approved any product that is allowed to be introduced or mixed into approve, read-formulated lubricants for engines, transmissions, or major assemblies in Mercedes-Benz vehicles as a special additive! The vehicle owner is solely responsible if special additives are used in lubricants! If damage occurs the legal warranty and guarantee claims may be limited."

126.     A group of products distributed by MOC Products Company, Inc. ["MOC"]. According to documents produced by MOC, the following non-OEM/approved/genuine MB products were sold to Autobahn Motors:

        a.   zMAX sold to Autobahn Motors total quantity purchase# 2,520. bottle

        b.   MOC Brake fluid sold to Autobahn total quantity # 3,188. 32 oz bottle.

        c.   Automatic Transmission fluid conditioner quantity# 3,336.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

37

d.   Windshield washer solvent quantity # 40,560.

e.   MOC company gave Autobahn some free advertising posters

f.   MOC GEAR Guard 75w-140 quantity of # 2712.

g.   Ultra power steer flush kit quantity # 2,856.

h.   Power steering two-pack kit # 1,466.

127.   According to the MB USA website, the proper approved brake fluid is described as

follows:

""We recommend using only products

[https://bevo.mercedesbenz.com/bevolisten/331.0_en.html

1. which are distinctly marked with the label indicating the approval of Mercedes-Benz,

e.g. MB-Approval 229.51" labels referring to MB 229.51 don't have  an approval of

Mercedes-Benz.

2. Which are listed in the current MB BeVo. Only listed products are tested and approved

by Mercedes-Benz"

128.   None of the plaintiffs consented to the placement of non-OEM/non-genuine/non-

approved MB parts into their automobiles.

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

129.    The placement of these non-OEM parts is done in a secret, concealed and deceptive

manner, is done purposely by Autobahn Motors as part of a program put into place by the

management of Autobahn Motors' owner, Sonic Automotive.

130.    The non-OEM parts placed into plaintiffs automobile proximately caused damage and

injury to their automobiles.

131.    The damages are as follows:

132.    With respect to the non-OEM/Genuine/approved products sold to Autobahn Motors by

Munich Parts Warehouse, these products were placed into cars secretly, without the

customer's knowledge or consent, and were keyed into the invoices with OEM part numbers,

to make it appear that the parts put in were in fact OEM. The OEM parts cost significantly

more than the non-OEM parts, often by a factor of double. Plaintiffs went to the Autobahn

Dealership with the expectation that only OEM parts would be used. Defendant Autobahn

Motors secretly installed the non-OEM parts, and then invoiced the customers as though

OEM parts were used at OEM prices.

133.    Plaintiffs are not present when the non-OEM parts are placed in. This placement of non

OEM parts occurs in the repair service area of Autobahn Motors, a place where customers

are generally not allowed.

39

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

134.     With respect to the zMAX product, the use of this oil additive has damaged the car. MB USA's website confirms this damage, as stated above. In addition, Ray Gapasin has had actual damage to his car, in the form of a buildup of "gunk" from the zMAX, which has infiltrated his entire automobile engine, steering column, and transmission.

135.     The use of the zMAX product has caused a present damage and injury to plaintiffs cars in that (a) the zMAX product has caused a physical injury to the car; (b) the zMAX product has caused a present jeopardy to the MBUSA warranty, which excludes coverage for any damage to the car caused by the use of a prohibited oil additive such as zMAX. Plaintiffs service warranties issued by MBUSA, through its agent Autobahn Motors, are thus in present jeopardy.

136.     The use of the series of MOC products has caused a present damage and injury to plaintiffs cars in that (a) the MOC products have caused a physical injury to the car; (b) the MOC product have caused a present jeopardy to the MBUSA warranty, which excludes coverage for any damage to the car caused by the use of non-OEM products such as those produced by MOC. Plaintiffs service warranties issued by MBUSA, through its agent Autobahn Motors, are thus in present jeopardy. The MOC brake fluid is a lower grade brake fluid.

137.     Defendant Autobahn Motors conduct was intentional in that it knowingly placed these non-OEM/non-approved/non-genuine parts into plaintiffs' cars and others similarly situated, knowing that the plaintiffs did not consent or want such parts.

40

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

138.   Defendant Sonic Automotive is sued herein based on its conduct in aiding and abetting the conduct of Autobahn Motors. Sonic Automotive intentionally aided and abetted this conduct by the following conduct: According to Autobahn Motors General Manager Joe Cox, the zMAX was placed into plaintiffs cars because of a directive from its owner, Sonic Automotive. Autobahn Motors followed this directive, and according to that directive placed the non-OEM products described above into plaintiff and other similarly situated cars. This placement of a non-OEM product further violated the rules for Certified Pre-Owned ["CPO"] Mercedes and the MBUSA CPO Warranty. According to the MB USA Warranty program, only OEM parts are to be used in the process of reconditioning and issuing a CPO designation and warranty.

139.   The MB USA CPO Warranty guides states at the following pages:

    a.   Page 1: "How You can Make your star Shine", stating in part: "Additional pre-owned sales of warranty-backed vehicles also can help keep Customers loyal to Dealers for maintenance and service. Optional Extended Limited Warranties also present profit opportunities for your Dealership. All of this can help improve our overall competitiveness – and your potential gross profits.

    b.   page 7 states: You may wish to include one of the MBCPO Extended Limited Warranties as a Dealer-added option in the advertised price of your MBCPO vehicles. Many Dealers have successfully maximized profits in this way.

41

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

c. page 7 states: Quality Certified Mercedes-Benz Technicians perform repairs using only genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories.

d. page 8 states: 2.1 MBCPO Limited Warranty 2.1.1 The MBCPO Limited Warranty is not a mirror or an extension of the New Vehicle Limited Warranty 2.1.2 The MBCPO Limited Warranty is included with the vehicle as a part of its MBCPO certification and must be included in the base price of the vehicle; the MBCPO Limited Warranty cannot be sold as a separate line item, and the Customer does not sign any contracts for the Warranty 2.1.3 Provided and administered by MBUSA

e. page 9 stated:  2.3 MBCPO Warranty Exclusions: 2.3.6 Damage caused by other than original equipment parts

f. page 12: 4.2 MBCPO Limited Warranty or MBCPO Extended Limited Warranty recorded in MBUSA's VMI system

g. page 17 stated: the ICR and all reconditioning work must be performed on a qualifying vehicle to bring it up to MBCPO Standards using Mercedes-Benz Genuine Parts

h. The consequences of noncompliance with MBCPO Standards are stated in Section H of this manual. Consult Sections D and E for MBCPO mechanical and appearance reconditioning standards. The Dealership Service Department's Workshop Information System (WIS) should be consulted for the latest information and standards for inspection and repair procedures, tools, materials, and safety procedures for specific models and model years

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

i.  The Service Manager signs the ICR that establishes the vehicle as certified according to MBCPO Standards.

j.  Page 18 states: NetStar automatically flags MBCPO vehicles that must be recertified and prevents data entry of the vehicle as an MBCPO sale

k.  page 19 states: 3.16 Prior to vehicle sale: • Provide Inspection and Certification Report to Customer • Disclose any prior repair and service history • Provide supporting repair orders for CPO reconditioning

l.  page 21 states: o The ICR must be reviewed with the Customer prior to sale. o Items on the vehicle that are excluded from the MBUSA warranty because they are non-Mercedes-Benz or aftermarket components and/or accessories should be checked off by the Technician on the online form. o The online ICR must include (in the "Notes" section) any body repairs of a cumulative value in excess of 10 percent of the vehicle's current market value. For a vehicle to be certified, the appropriate ICR and all reconditioning work must be performed on a qualifying vehicle to bring it up to MBCPO standards using Mercedes-Benz Genuine Parts, exchange units, and factory-approved accessories. The original completed, signed technical ICR and supporting repair orders (ROs) must be maintained in Dealer Service files. The consequences of noncompliance with MBCPO standards are stated in Section H of this manual. Consult your shop's Workshop Information System (WIS) for the latest information and standards for inspection and repair procedures, tools, materials, and safety procedures for specific models and model years.

43

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

m.  Page 27 states: 1.1.5 The Service Department will make repairs using only Genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories.

n.  Page 27: "Reconditioning is a Team Effort," stating in pertinent part: "The service Department will make repairs using only Genuine Mercedes-Benz parts."

o.  Page 28 states & explain managements responsibilities: Service Manager • Designating one person to administer the entire Service Department process • Expediting the vehicle through the process • Keeping the Pre-Owned Manager or designated person informed of the current status of the vehicle while it is in the process • Approving repairs in a timely fashion • Performing the required inspection on each vehicle presented for reconditioning and reporting to the Pre-Owned Manager or designated person the extent and estimated costs of the repairs • Ensuring MBCPO-quality repairs • Returning the vehicle to the Pre-Owned Department or Detail Department, as directed, immediately upon completion of repairs • Ensuring that the Pre-Owned Manager or designated person receives the actual reconditioning costs when receiving the vehicle

p.  page 39 states: Consult your shop's Workshop Information System (WIS) for the latest information and standards for inspection and repair procedures, tools, materials, and safety procedures for specific models and model years.

q.  Page 49 states: 2.1.3 Carcannon Reporting Reviews—Depending on the results of the periodic Carcannon Consultations, a PIR may be scheduled with the dealer. Vehicle file reviews will be conducted by MBUSA as well as inspection of certified vehicles in dealer inventory.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

r.   2.2.2.1Certification Training Review—The Reviewer determines whether the current Pre-Owned Manager, Service Manager, and F&L Manager have completed appropriate MBCPO online training. The Reviewer also determines if the appropriate Dealership Representatives who sell new vehicles, pre-owned vehicles, or both are trained and certified according to MBCPO Standards.

s.   Page 50 states:• Vehicle, process, and overall Dealership compliance scores • Top five noncompliant vehicle categories; if less than five categories are noncompliant, those categories are listed • Vehicle file and documentation findings (documentation present, etc.) • Vehicle inspection graphs for exterior appearance, interior appearance, and mechanical • Electronic Extended Limited Warranty (number of days from delivery to DDR, Customer signature, etc.) • Inventory reconciliation • Reasons vehicle was unavailable for inspection by PIR Reviewers • Training certification report • Pre-owned capacity report • Point-of-sale (POS) materials report • Top 25 problem categories • Vehicle level reporting (individual vehicle condition report).

t.   page 54: Noncompliance with any of the MBCPO Training and Certification Standards can result in the Dealership losing the right to participate in the MBCPO Program.

140.   The MB USA checklist likewise states: "The following items are to be specifically bought to the attention of the customer because they are non-Mercedes-Benz or aftermarket components. These items are excluded from the Mercedes-Benz certified pre-owned limited Warranty. These items may however carry warranty from

45

141.    A document in the service advisor's office area kept at Autobahn Motors also falsely states that all automobiles are repaired according to factory guidelines. Mercedes Benz factory guidelines specify that only MB Genuine/OEM/approved parts are to be used.

142.    One such service advisor, Mr. Steve Meade has testified that: "I think zMAX got to a point where it wasn't so much me selling it. it got to a point where the technicians were just told to use it, and it wasn't – there wasn't' any option given to the client."

143.    Sonic Automotive knew that in so directing Autobahn Motors, it would cause Autobahn Motors to intentionally harm plaintiffs. Sonic Automotive knew that in so directing Autobahn Motors, it would cause Autobahn Motors to intentionally harm plaintiffs.

144.    Former parts advisers from Autobahn Motors parts department who gave out the non-OEM products to the repair techs for placement in the cars state that they did what they did, including keying in the OEM part numbers on non-OEM products, at the direction of Autobahn Motors management. Autobahn Motors in turn was directed to act from directives of its corporate owner, Sonic Automotive.

145.    Defendant Speedway Motor Sports is sued herein based on its conduct in intentionally aiding and abetting the conduct of Autobahn Motors. Sonic Automotive intentionally aided and abetted this conduct by the following conduct: According to former Sonic Automotive Regional Manager and current Autobahn Motors General Manager Joe Cox, the zMAX was

46

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

placed into plaintiffs cars because of a directive from Sonic Automotive. The product zMAX is distributed and marketed by Speedway Motor Sports, which is a related entity to Sonic Automotive. Sonic Automotive founder O. Bruton Smith is the CEO of Speedway Motor Sports, and has published a letter on the zMAX website that falsely states:

"Improving fuel mileage, reducing engine wear and emissions, increasing horsepower and helping vehicles to last longer and run smoother, are where zMAX ® micro-lubricant really demonstrates its capabilities.

***

With the high prices at the pump today, the annual potential to save thousands of dollars per vehicle in fuel consumption alone is more than worth your while!  These savings go right to the profit line on your corporate balance sheet, something all business owners and managers can appreciate"

146.    Further noted on the zMax website is the statement: "zMAX does not void manufacturer's warranties".

147.    Autobahn Motors followed this directive from its corporate owner Sonic Automotive, and according to that directive received the zMAX from MOC company, placed the non-OEM products described above into the pre owned car inventory at Autobahn Motors. In addition, the 133 other dealerships owned by Sonic Automotive have received a similar directive to put zMAX, MOC and other non-OEM products into all of the pre owned cars in inventory, and into the repair customers cars, in a manner that is repetitive, automatic, and done without the knowledge or consent of the customer.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

148.    Sonic Automotive knew that in so directing Autobahn Motors, it would cause Autobahn Motors to intentionally harm plaintiffs.  Former parts advisers from Autobahn Motors parts department who gave out the non-OEM products to the repair techs for placement in the cars state that they did what they did, including keying in the OEM part numbers on non-OEM products, at the direction of Autobahn Motors management. Autobahn Motors in turn was directed to act from directives of its corporate owner, Sonic Automotive.

149.    Defendant Speedway Motorsports, Inc. ["SMI"] is sued herein based on its conduct in intentionally aiding and abetting the conduct of Autobahn Motors. SMI intentionally aided and abetted this conduct by the following conduct: According to Autobahn Motors General Manager Joe Cox, zMAX was placed into plaintiffs cars because of a directive from Sonic Automotive. The product zMAX is distributed and marketed by SMI, which is a related entity to Sonic Automotive. SMI is the company directly involved in the process of marketing and arranging for the actual delivery of zMAX products to Autobahn Motors.

150.    As a proximate result of defendants' trespass to chattels, and aiding and abetting the trespass to chattels, plaintiffs have been damaged in an amount according to proof.

151.    Defendants conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the rights of plaintiffs, which warrants the imposition and award of punitive damages in an amount according to proof.

48

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

152.    Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of regularly placing non-OEM products into plaintiffs' cars without plaintiffs' consent.

WHEREFORE plaintiffs pray for judgment as set forth below.

**VIII**
**THIRD CLAIM FOR RELIEF FOR FRAUD**
**[AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC AUTOMOTIVE, INC, AND SPEEDWAY MOTORSPORTS, INC.**

153.    This is a Third claim for relief by all Plaintiffs against Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn Motors"] Sonic Automotive Inc. ["Sonic Automotive"] and Speedway Motorsports, Inc. ["SMI"] for fraud pursuant to California Civil Code section 1710.

154.    The allegations of paragraphs 1 through 152 of this Complaint are incorporated herein.

155.    Autobahn Motors made the following misrepresentations, concealment, and promises without the intent to perform:

156.    Autobahn Motors has a website that has published statements during the period 2005-present concerning its use of OEM/genuine MB parts at its Belmont, California location.

49

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

157.    A chart summarizing those statements prepared by Plaintiff's counsel, based on a review

of Autobahn Motors web archives, is as follows:

| Year | Statement |
|------|-----------|
| 2005 | Not currently available |
| 2006 | Not currently available |
| 2007 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2008 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2009 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2010 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2011 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2012 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2013 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2014 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2015 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |

158.    The court previously noted its concern that the forgoing statements include general

statements that genuine parts are used, and with the exception of the years 2014 and 2015, do

not commit Autobahn Motors to using only genuine parts. Plaintiffs now supply the court

50

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

with the following missing link showing that indeed the express misrepresentation by Autobahn Motors is that only MB genuine parts will be used.

159.    Autobahn Motors publishes a repair manual that is kept for display in the service advisors work area. The service advisor is the person who meets with the repair customer and guides them through the various repair options. The booklet published by Autobahn Motors knowingly falsely states: "Our maintenance schedule meets or exceeded the manufacturer's recommended recommendations for vehicle maintenance. .." Mercedes Benz manufacturers recommendations are to always use MB genuine parts.

160.    The forgoing statement is false because the true facts are that Autobahn Motors maintenance schedule does not meet or exceed MB's recommendations, because MB 's recommendations are that only MB Genuine parts are used. Autobahn Motors instead includes the regular use of non-OEM/genuine/approved products such as zMAX, MOC products, oil filters, and the other parts described above.

161.    Plaintiffs do not know who wrote the website. Autobahn Motors' General Manager Joe Cox and Fixed Operations Director David Ahlheim are directly involved in overseeing the process of writing, modifying, and publishing the Autobahn Motors website.

162.    Autobahn Motors and Mercedes Benz makes a promise every time a pre-owned Mercedes is sold under the Mercedes-Benz pre-owned certification process. The CPO program is one done and administered by MBUSA and Autobahn Motors. The warranty is given by MB USA, but is actually issued through a Principle agency relationship between MB USA and Autobahn Motors, whereby Autobahn Motors actually performs the entire pre

51

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

owned car reconditioning and certification process, and issues a MB USA CPO warranty on behalf of MB USA.

163.    Under the Mercedes Benz/Autobahn Motors CPO program rules, published at the MB USA website, only OEM parts are to be used in the re-conditioning process. The MB USA guidebook states at page 7:  "Quality Certified Mercedes-Benz Technicians perform repairs using only genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories."

164.    Automobile Dealerships such as Autobahn Motors are regulated by the California Department of Motor Vehicles (DMV). DMV issues dealerships such as Autobahn Motors a dealership license, which grants them the privilege of doing business in California as a retail seller of automobiles. DMV statutes have some specifications regarding the designation of pre owned cars as Certified. Vehicle Code Section 11713.18 mandate states

"It is a violation of this code . . . to advertise for sale a used vehicle as "certified" …if any of the  following apply:

***

(6) Prior to the sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected.

***

(8) The term "certified" or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of subdivision (a) of Section 11713 of this code or section 17200 or 17500 of the Business and Professions Code."

52

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

165.    zMAX and MOC are both advertised in the booklet published by Autobahn Motors. The products are deliberately misrepresented to be MB OEM/Genuine/approved in that booklet, because they are placed in a booklet having the MB logo, and are contained in a book stating that the maintenance is per the manufacturers recommendations.

166.    Defendant Sonic Automotive is sued herein based on its conduct in aiding and abetting the fraudulent conduct of Autobahn Motors.  The people from Sonic Automotive involved in perpetrating this fraud are: O. Bruton Smith, Executive Chairman, Director B. Scott Smith Chief Executive Officer, President, Director.

167.    Sonic Automotive intentionally aided and abetted this conduct by the following conduct: According to Sonic Automotive General Manager Joe Cox, the zMAX was placed into plaintiffs cars because of a directive from its owner, Sonic Automotive. Autobahn Motors followed this directive, and according to that directive placed the non-OEM products described above into plaintiff and other similarly situated cars.

168.    This placement of a non-OEM product further violated the rules for Certified Pre Owned Mercedes and the MB USA CPO Warranty. According to the MB USA Warranty program, only OEM parts are to be used in the process of reconditioning and issuing a CPO designation and warranty.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

169.   A document in the service advisor's office area kept at Autobahn Motors also falsely states that all automobiles are repaired according to factory guidelines. Mercedes Benz factory guidelines specify that only MB Genuine/OEM/approved parts are to be used. \

170.   Defendant Sonic Automotive is sued herein based on its conduct in aiding and abetting the fraudulent conduct of Autobahn Motors.  The people from Sonic Automotive involved in perpetrating this fraud are: O. Bruton Smith, Executive Chairman, Director B. Scott Smith Chief Executive Officer, President, Director.

171.   Sonic Automotive intentionally aided and abetted this conduct by the following conduct: According to Sonic Automotive General Manager Joe Cox, the zMAX was placed into plaintiffs cars because of a directive from its owner, Sonic Automotive. Autobahn Motors followed this directive, and according to that directive placed the non-OEM products described above into plaintiff and other similarly situated cars.

172.   One such service advisor, Mr. Steve Meade has testified that "I think zMAX got to a point where it wasn't so much me selling it. it got to a point where the technicians were just told to use it, and it wasn't – there wasn't' any option given to the client."

173.   Sonic Automotive knew that in so directing Autobahn Motors, it would cause Autobahn Motors to intentionally defraud and harm plaintiffs.

174.   Former parts advisers from Autobahn Motors parts department who gave out the non-OEM products to the repair techs for placement in the cars state that they did what they did,

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

including keying in the OEM part numbers on non OEM products, at the direction of Autobahn Motors management.

175.   Autobahn Motors in turn was directed to act in this fraudulent manner from directives of its corporate owner, Sonic Automotive.

176.   Defendant Speedway Motor Sports is sued herein based on its conduct in intentionally aiding and abetting the conduct of Autobahn Motors. Sonic Automotive intentionally aided and abetted this conduct by the following conduct: According to former Sonic Automotive Regional Manager and current Autobahn Motors General Manager Joe Cox, that zMAX was placed into plaintiffs cars because of a directive from Sonic Automotive. The product zMAX is distributed and marketed by Speedway Motor Sports, which is a related entity to Sonic Automotive. Sonic Automotive founder O. Bruton Smith is CEO and founder of Speedway Motorsports, Inc., which arranges the production, distribution and use of zMAX among Sonic Automotives' 133 owned dealerships.

177.   Mr. Smith, on behalf of both Speedway Motorsport and Sonic Automotive, also arranged with MOC Products Company, Inc. ["MOC"] to have MOC distribute zMAX along with a series of other non-OEM products to Autobahn Motors, and some or all of the other 133 automobile dealerships owned by Sonic Automotive.

178.   Mr. Smith and has published a letter on the zMAX website that falsely states:

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

"Improving fuel mileage, reducing engine wear and emissions, increasing horsepower and helping vehicles to last longer and run smoother, are where zMAX ® micro-lubricant really demonstrates its capabilities.

*** 

With the high prices at the pump today, the annual potential to save thousands of dollars per vehicle in fuel consumption alone is more than worth your while!  These savings go right to the profit line on your corporate balance sheet, something all business owners and managers can appreciate"

179.   The letter is false because MBUSA has made very clear statements in the owners' manual of its cars, and in its website, that oil additives are prohibited, and that damage to the car from the use of oil additives will be excluded from MBUSA warranty coverage on the automobile.

180.   Autobahn Motors followed this directive from its corporate owner Sonic Automotive, and according to that directive received the zMAX from MOC, placed the non-OEM products described above into the pre owned car inventory at Autobahn Motors.

181.   In addition, the 133 other dealerships owned by Sonic Automotive have received a similar directive to put zMAX, MOC and other non-OEM products into all of the pre owned cars in inventory, and into the repair customers cars, in a manner that is repetitive, automatic, and done without the knowledge or consent of the customer. This directive came from Sonic Automotive working together with its related entity Speedway Motorsports, Inc. through the

56

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

actual and direct conduct of O. Bruton Smith, Executive Chairman, Director B. Scott Smith Chief Executive Officer, President, Director.

182.    Autobahn Motors and defendants Sonic Automotive and SMI further committed deceit by concealment, by hiding from plaintiffs the fact that (a) zMAX and MOC products are non-OEM; that the MB warranty excludes non-OEM products; that the MB Warranty and owners manual states that oil additives are prohibited and are not covered under the MBUSA warranty; that zMAX will injure the car [a fact stated in the MBUSA website prohibiting the use of oil additives: "Up to now, Daimler AG has not approved any product that is allowed to be introduced or mixed into approve, read-formulated lubricants for engines, transmissions, or major assemblies in Mercedes-Benz vehicles as a special additive! The vehicle owner is solely responsible if special additives are used in lubricants! If damage occurs the legal warranty and guarantee claims may be limited"]; that Autobahn Motors, at the direction of its corporate owner Sonic Automotive, regularly places non-OEM/non-genuine products into repair customers and CPO buyers cars without advising them.

183.    Further concealment misconduct by defendants includes: intentional failure to disclose the important facts about use of non-OEM/genuine parts and its impact on the MBUSA warranty; by disclosing other facts such as on the website of Autobahn Motors regarding the use of genuine products, and by disclosing other facts such as the repair manual stated above that all repairs are done according to factory guidelines. In fact, factory guidelines are not met, because factory guidelines call for the use of OEM/genuine parts only.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

184.    Further concealment misconduct by defendants includes: intentional concealment of a fact only known by defendants. Plaintiffs are not allowed into the area where cars are repaired or where the cars go through the CPO reconditioning process. Autobahn Motors has its own people in these places who put in the non-genuine parts, which plaintiffs are not aware of when it happens, and which could not have been discovered by plaintiffs.

185.    Further concealment misconduct by defendants include: Defendants have actively concealed the above described facts, and have kept and prevented plaintiffs from discovering the facts, by refusing to provide CPO checklist documents showing the use of Non Genuine products as described above and as mandated by California Vehicle Code Section 11713.18. Plaintiffs have made numerous requests for this information from defendants, and all defendants have steadfastly refused to provide such information.

186.    Defendants have committed a fraud by a false promise without the intent to perform, as follows: According to a written statement made by counsel for MB USA, Mr. Stephen Ernest, in San Mateo County Superior Court Action No. CIV525559 in its trial brief: "MBUSA's certification program is a promise (or certification) to the repair customer that the vehicle will be repaired with OEM parts and to MB standards (those which they had prior to the collision)."

187.    This promise is further made in the CPO Reconditioning Guide, which states that only MB Genuine parts will be used.

58

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

188.    This promise is a fundamental aspect of the CPO program, and is made without the intent to perform it. The reason for this is that Autobahn Motors regularly uses non-OEM/non-genuine/non-approved products, as described above, which directly contradicts the promise.

189.    As a proximate result of defendants' fraudulent conduct, and aiding and abetting the fraudulent conduct, plaintiffs have been damaged in an amount according to proof.

190.    Defendants conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the rights of plaintiffs, which warrants the imposition and award of punitive damages in an amount according to proof.

191.    Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of regularly placing non OEM product into plaintiffs' cars without plaintiff's consent.

## IX.
## FOURTH CLAIM FOR RELIEF FOR FRAUD
### [AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC AUTOMOTIVE, INC.; MERCEDES BENZ USA, LLC]

192.    This is a fourth claim for relief by all Plaintiffs against Defendant This is a cause of action for fraud by all plaintiffs against Defendants Sonic Automotive, Mercedes Benz of USA LLC, and Autobahn Motors. Speedway Motorsport is not a defendant in this action.

193.    The allegations of paragraphs 1 - 191 are incorporated herein as though set forth in full.

59

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

194.    Defendants Sonic Automotive, Mercedes Benz of USA LLC, and Autobahn Motors have committed a further fraud on plaintiffs by falsely stating that Mercedes Benz genuine parts have numerically designated longevity than non-OEM parts.

195.    These advertisements take the form of brochures mailed out and given out to consumers, and statements on MB USA's website.

196.    Defendant Sonic Automotive authorizes the advertisements done by Autobahn Motors, its wholly-owned subsidiary. Mercedes Benz USA LLC provides content for the ads. Autobahn Motors has the advertisement prepared and disseminated either through direct mailers and e-blasts.

197.    The ads have taken the following form:

   a.   MB USA's website states the following:

         i.   "Using only Genuine Mercedes-Benz Parts affords you measurable differences every mile you travel. Longevity, safety and warranty are just a few of many reasons to buy Genuine Parts."

         ii.   "Being history's first car company has afforded us the time and expertise to instill durability into our parts. For example, our fleece oil filter lasts up to 45% longer than conventional filters, minimizing engine wear."

   b.   A brochure mailed out by Autobahn Motors containing statements made by MB USA states:

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

60

    i.  Oil filters: "can last 45% longer than other aftermarket oil filters."

    ii.  Air filters: "lasts at least 40,000 miles. Other aftermarket filters might need to be replaced at 12,000 miles." and "capture 28% more soot over their lifetime than most brands."

    iii.  Cabin filters: "are 36% more effective at filtering soot than tested aftermarket filters."

    iv.  Wiper blades: "can provide up to 800,000 more wiping cycles than other aftermarket brands."

    v.  Brakes: "tested lower in vibration versus other aftermarket brands."

198.    These statements are materially false. The true facts are that the so-called non-OEM parts are also produced by the same manufacturers that produce the OEM parts. For example, Mann Filter Company makes the Genuine oil filter for Mercedes Benz. That filter has the Mercedes Benz star on it. Mann Filter also makes a non-MB/OEM filter, that does not have the Mercedes Benz star on it.

199.    Mann Filter company's website states:

"MANN+HUMMEL is not only a leading development partner and OE supplier to the international automotive industry, but also supplies world-famous <u>MANN-FILTER</u> brand products in the aftermarket to fit most vehicles around the world. The <u>MANN-FILTER</u> range of products also meets the highest standards of quality and service demanded by our OE customers."

61

200.    These Mann non-OEM filters are among the filters sold to some or all of plaintiffs and other similarly-situated from Munich Parts Warehouse. According to Mann Filters, the non-OEM products are in every way as good performance-wise as the OEM products.

201.    Another example is Bosch spark plugs. Bosch makes an OEM spark plug for Mercedes Benz. It has the Mercedes Benz star on it. Bosch also makes a non-OEM spark plus, which are in every way as good performance wise as the OEM spark plugs.

202.    MBUSA's statements about the longevity are not mere puffery, but instead are based on a factual statement using a numerical designation to describe MB genuine parts as having better longevity than non–OEM parts.

203.    Autobahn Motors knows for sure this is an untrue statement, as it has stated in Court papers in the previous federal RICO case that it should not be held liable for fraud because plaintiffs cannot show damages, because the parts they received are every bit as good as the OEM parts.

204.    Plaintiffs believe this position of Autobahn Motors to be true with respect to the various non-OEM products sold to Autobahn Motors from Munich Parts Warehouse. Plaintiffs claim of harm with these products are that (a) they were charged an OEM and higher price for these products, and in fact received a lower priced non-OEM, and thus suffered the real damage. In addition, the non-OEM parts are not covered by MB USA warranty, which is a further real damage suffered by Plaintiffs.

62

205.    Plaintiffs state that zMAX is not the same as any designated by MBUSA because there is

no OEM version of an oil additive. MBUSA has published a document stating that oil

additives should not be used. MBUSA's position is it has recommended a high-performance

motor oil for its cars, and that customers should simply use the designated motor oil. That

motor oil is Mobil 1 Synthetic, which is a top-grade oil.

206.    Plaintiffs state that the MOC products are not the same as the similar items designated by

MBUSA because they are of a lower grade, and is sold by Autobahn Motors as though they

were MBUSA approved.

207.    MBUSA knowingly causes these brochures to be sent out in bulk mail to customers,

knowing them to be false, because it knows just like Autobahn Motors knows that many

capable producers of OEM products also make the same exact product as a Non  OEM,

where the only actual difference is one has a MB star, and the other doesn't have the MB

star.

208.    Defendants concealed from plaintiffs the true facts, and kept plaintiffs from knowing

these true facts, and made statements about OEM products that are rendered untrue and

misleading by concealing these true facts, and by hiding facts which are known by

defendants, and not allowing plaintiffs to discover those facts. The true facts are that non-

OEM products produced by the same manufacturers of the OEM products are every bit as

good as the OEM products.

63

*Ferrari v. Autobahn Motors.*

Plaintiffs' First Amended Complaint

209.    As a proximate result of defendants' fraudulent conduct, and aiding and abetting the fraudulent conduct, plaintiffs have been damaged in an amount according to proof.

210.    Defendants conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the rights of plaintiffs, which warrants the imposition and award of punitive damages in an amount according to proof.

211.    Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of falsely stating that MB genuine parts have numerically designated longevity over non-OEM parts.

212.    The MBUSA advertisement at its website, and the MBUSA/Autobahn Motors/Sonic Automotive brochures mailed out could be made honest by adding the word "sometimes" after the longevity numerical designation. For example, it is true that there are some non-OEM parts producers that make a part that does not last as long as the MB genuine part. But it is also true that there are non-OEM part makers, such as Mann Filters and Bosch, that make non-OEM parts that are every bit as good performance wise as the MB genuine parts.

WHEREFORE plaintiffs pray for judgment as set forth below.

64

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1
2
3
4
5

**X.**
**FIFTH CLAIM FOR RELIEF FOR NEGELIGENT MISREPRESENTATION**
**[AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC**
**AUTOMOTIVE, INC.; SPEEDWAY MOTORSPORTS, INC.; MERCEDES BENZ USA,**
**LLC]**

213.    Plaintiffs assert this fifth claim for relief against all Defendants for negligent misrepresentation concerning the use of Non Genuine MB USA parts on plaintiffs' automobiles.

214. The allegations of paragraphs 1-212 above are incorporated herein as though set forth in full.

215. Defendants negligently misrepresented, concealed, and made false promises as alleged in the forgoing cause of action.

216. Plaintiffs reasonably relied on the Defendants misrepresentations to their detriment by either purchasing a CPO automobile from Autobahn Motors, and/or brought their automobiles into Autobahn Motors.

217. As a proximate result of defendants' fraudulent conduct, and aiding and abetting the fraudulent conduct, plaintiffs have been damaged in an amount according to proof.

218. Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of

65

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1    regularly placing non OEM product into plaintiffs' cars without plaintiff's consent.

2

3    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

4

5

6                                        **XI.**
7               **SIXTH CLAIM FOR RELIEF FOR NEGLIGENCE**
          **[AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC**
8    **AUTOMOTIVE, INC.; SPEEDWAY MOTORSPORTS, INC.; MERCEDES BENZ USA,**
                                        **LLC]**
9

10   219.    Plaintiffs assert this sixth claim for relief for negligence against all Defendants for

11         negligence.

12

13   220. The allegations of paragraphs 1-218 above are incorporated herein as though set forth in

14         full.

15

16   221.    Defendants' conduct was careless, reckless, and in breach of Defendants' duty owed to

17         Plaintiffs, and in violation of California Civil Code 1714(a).

18   222. Defendants negligently each and all took steps to conceal the true facts about the use of

19         zMAX and other non-OEM/non-genuine products on MBUSA CPO warranties, and similar

20         warranties given by Third Parties.

21

22   223. Autobahn Motors, Sonic Automotive, Speedway Motorsports, have breached the duty of

23         due care owed pursuant to Civil Code Section 1714(a) by negligently and wrongfully

24         marketing, distributing, selling, and placing zMAX into automobiles, knowing that in so

25         doing, the manufacturer's certified pre-owned warranties, or such similar warranties issued

26         by third parties, are thereby rendered void or voidable at the option of the warrantor.  One

27   *Ferrari v. Autobahn Motors.*

     Plaintiffs' First Amended Complaint

28

such warrantor and beneficiary of this negligence is Defendant MB USA, who, if it stands by and does nothing, gets the advantage of the equivalent of a get out of jail free card, in the form of an option to deem its previously given CPO warranty void, due to the prohibited use of zMAX.

224. MBUSA was negligent in that it knew full well through VMI reports, and the pendency of this very litigation, that Sonic Automotive, Speedway Motorsports, and dealers owned by Sonic Automotive are actively, selling, and marketing zMAX in a manner that is expressly prohibited by the automobile manufacturers; warranty and which by the terms of the warranty is rendered void or voidable at the option of MB USA and/or any third party warrantor.

225. An exemplar of a third part pre-owned car warranty is Easy Care Warranty, which is a warranty product offered for sale through Sonic Automotive.  This warranty held by Harold Fethe states:

"YOU must follow YOUR VEHICLE manufacturer's maintenance guidelines to avoid denial of a claim because of improper maintenance."

226. MB USA is the party issuing a CPO warranty, at a time when it simultaneously receives actual knowledge through the VMI process that at a time either before the sale of a car, or during the pendency of the warranty, zMAX was added into the car by Autobahn Motors [as in the case of Gapasin and Fethe] or to customers at any of the other 133 dealerships owned by Sonic Automotive.

227. MB USA further had a duty, because Autobahn Motors was using the benefit of the MB trademark star and name to market a product as though it were approved by MB USA.  Mercedes Benz breached this duty of due care by failing to take appropriate steps to correct

the circumstances by mandating to Sonic Automotive and/or directly to the MB Authorized dealerships owned by Sonic to stop putting zMAX in Mercedes Benz Automobiles.  Instead MB USA has joined forces with Autobahn Motors and Sonic to squelch any attempt to bring the truth of zMAX widespread use by dealerships owned by Sonic Automotive.

228. MBUSA is motivated by its own economic interest, because, as described above, it is a beneficiary of the scheme and benefits from standing idly by while its certified pre-owned warranties become void or voidable at its options.

229. Individuals who have unknowingly received zMAX in their car either as (a) it was placed in the car as a CPO from Autobahn; or (b) at one of the Sonic dealerships owned by Sonic; or (c) was placed in the car as part of the repair process, have suffered the following harm proximately caused by all Defendants:

230. The people who received zMAX in their car, had their certified pre-owned warranties issued by MBUSA or other third party warrantors, rendered void and/or voidable at the option of MBUSA or other third party warrantor.  The warranty was thereby transformed from a solid and enforceable, to that of warranty enforceable at the option of the warrantor.  The status/ existence/nature/and pendency of a pre-owned automobile's warranty is extremely significant aspect concerning the value of that car.

231. The same impact and damage as described above with respect to zMAX applies equally to Plaintiffs through receipt of non-approved, non-OEM, non genuine oil.

232. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to negligently and wrongfully market and sell zMAX

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

as described above; and other non-OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

233. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

234. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XII.
## SEVENTH CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17500
## [AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC AUTOMOTIVE, INC.; SPEEDWAY MOTORSPORTS, INC.; MERCEDES BENZ USA, LLC]

235. Plaintiffs assert this Seventh claim for relief for violation of Business & Professions Code section 17500 against all Defendants.

69

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

236. The allegations of paragraphs 1-234 above are incorporated herein as though set forth in full.

237.    The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, is set out in the first, third, fourth and fifth claims for relief for fraud, which are also incorporated into this claim for relief.

238. Defendants' conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500, which provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

239.  Plaintiffs request all available equitable remedies under Business & Professions Code section 17500, including injunctive relief requiring the Defendants to stop their OEM Auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction requiring Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements; or such other injunctive relief as the court deems just and appropriate.

240.  Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XIII.
## EIGHTH CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200
## [AGAINST DEFENDANTS AUTOBAHN, INC. DBA AUTOBAHN MOTORS; SONIC AUTOMOTIVE, INC.; SPEEDWAY MOTORSPORTS, INC.; MERCEDES BENZ USA, LLC]

241.    Plaintiffs assert this eighth claim for relief for violation of Business & Professions Code section 17200 against all Defendants.

242. The allegations of paragraphs 1-240 above are incorporated herein as though set forth in full.

71

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

243. The allegations of fraudulent conduct, including the specification of the ads and use of non-OEM products and how they were done in a fraudulent knowing manner, set out in the first, third, fourth and fifth causes of action for fraud, which are also incorporated into this claim for relief.

244. Defendants Autobahn Motors, MB USA, Sonic Automotive, and SMI's conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500.

245. Plaintiffs request all available equitable remedies under Business & Professions Code section 17200, including injunctive relief requiring the Defendants to stop their OEM auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction require Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements in such ads they make a new ad stating; or such other injunctive relief as the court deems just and appropriate.

246. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to wrongfully market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

247. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

248. Plaintiffs request equitable remedies of disgorgement of profits; restitution; an accounting; and other equitable relief as available.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XIV.
## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS pray for relief as follows:

1. For compensatory and consequential damages as to each claim for relief allowing damages, as described above, in an amount according to proof.

2. For prejudgment interest in an amount according to proof.

3. For exemplary damages against each and every Defendant pursuant to CC Section 3294 based on the intentional, oppressive, and fraudulent misconduct described above.

4. For injunctive relief as to each claim for relief allowing for injunctive relief, as requested above, or such other injunctive relief as the court deems just and proper.

5. Plaintiffs request injunctive relief for violation of B&P Code section 17500 as requested above.

6. Plaintiffs request the following equable remedies for their claims of violation of B & P Code Section 17200, as requested above, including without limitation disgorgement of profits,

73

return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate

7. For Defendants Autobahn Motors, Speedway Motorsports, Sonic Automotive to provide an accounting of all profits earned as a result of their mutual transactions pursuant to CCP section 872.140 and B&P Code Section 17200.

8. For attorneys fees as to the Seventh claim for relief  [violation of B & P Code Section 17200]. The request for reimbursement/payment of attorneys fees is based on the common fund doctrine in an amount according to proof

9. For costs of suit.

10. For such other relief as the Court deems just and appropriate.


Respectfully submitted,

/s/ Herman Franck

_____                          Date: January 25, 2017

Herman Franck, Esq.
Franck & Associates
Attorney for Plaintiffs
STEVE FERRARI and MIKE KEYNEJAD,
individually and as a representative of the
Class of Persons similarly Situated;
HOOSHANG JOWZA, CELSO FRAZAO,
RENUKA NARAYAN,GERTRUD FRANKRONE,
ERNEST SALINAS, KALKHUSAN SAREEN,
HOSSEIN JALALI, RON WOLFE,
SOHRAB RAHIMZADEH, FRED GRANT,
ESTER GRANT, VINCENT LEUNG, KEN WONG,
JESSICA LANGRIDGE, TONY NICOLOSI,
DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ,
HAROLD FETHE, RAY GAPASIN

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1

## XV.

2

## JURY DEMAND

3

4
PLAINTIFFS demand a trial by jury as to all claims for relief triable before a jury.

5

6
Respectfully submitted,

7
/s/ Herman Franck

_____                    Date: January 25, 2017

8
Herman Franck, Esq.
Franck & Associates

9
Attorney for Plaintiffs
STEVE FERRARI and MIKE KEYNEJAD,

10
individually and as a representative of the
Class of Persons similarly Situated;

11
HOOSHANG JOWZA, CELSO FRAZAO,
RENUKA NARAYAN,GERTRUD FRANKRONE,

12
ERNEST SALINAS, KALKHUSAN SAREEN,
HOSSEIN JALALI, RON WOLFE,

13
SOHRAB RAHIMZADEH, FRED GRANT,
ESTER GRANT, VINCENT LEUNG, KEN WONG,

14
JESSICA LANGRIDGE, TONY NICOLOSI,
DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ,

15
HAROLD FETHE, RAY GAPASIN

16

17

18

19

20

21

22

23

24

25

26
                                                                                      75

27
*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

28

1

Exhibit A: Mike Keynejad Technical Report on CPO Fraud with the following exhibits:

2

Exhibit 1 Series of Exhibits as referenced and described in the Report

3

Exhibit 2 is a collection of documents attached to the Report

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

76

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Ferrari v. Autobahn Motors.*
Plaintiffs' First Amended Complaint