Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
**FRANCK & ASSOCIATES**
910 Florin Road, Suite 212
Sacramento, CA 95831
Tel. (916) 447-8400; Fax (916) 447-0720

Janet R. Varnell, (Admitted Pro Hac Vice)
Brian W. Warwick, (Admitted Pro Hac Vice)
David Lietz (Admitted Pro Hac Vice)
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL 32158
Tel. (352) 753-8600; Fax (352) 504-3301

Attorneys for Plaintiffs Steve Ferrari, Mike Keynejad et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE FERRARI, MIKE KEYNEJAD, PATRICIA RUBIN, JOHN DIAZ, AND RAY GAPASIN; individually and as representatives of the Class of Persons Similarly Situated; and individual Plaintiffs HAROLD FETHE, HOOSHANG JOWZA, CELSO FRAZAO, RENUKA NARAYAN, GERTRUD FRANKRONE, ERNEST SALINAS, KALKHUSAN SAREEN, HOSSEIN JALALI, RON WOLFE, SOHRAB RAHIMZADEH, FRED GRANT, ESTER GRANT, VINCENT LEUNG, JESSICA LANGRIDGE, TONY NICOLOSI, DONALD LYANG, and ARTUR SEMICHEV, <br><br> Plaintiffs, <br><br> v. <br><br> AUTOBAHN, INC. DBA AUTOBAHN MOTORS; MERCEDES-BENZ USA, LLC; AND SONIC AUTOMOTIVE, INC. <br><br> Defendants | Case No. 17-CV-00018-YGR <br><br> **THIRD AMENDED COMPLAINT FOR** <br> 1. **BREACH OF CONTRACT** <br> 2. **VIOLATION OF CIVIL CODE SCTION 1770 (CONSUMERS LEGAL REMEDIES ACT)** <br> 3. **VIOLATION OF B&P CODE SECTION 17200 (UNFAIR COMPETITION ACT)** <br> 4. **VIOLATION OF B&P CODE SECTION 17500 (MISLEADING ADVERTISING)** <br> 5. **TRESPASS TO CHATTEL** <br> 6. **NEGLIGENCE** <br> 7. **UNJUST ENRICHMENT** <br> 8. **COMMON LAW FRAUD** <br> 9. **NEGLIGENT MISREPRESENTATION** <br> 10. **BREACH OF CONTRACT** <br> 11. **VIOLATION OF B&P CODE SECTION 17200 (UNFAIR COMPETITION ACT)** <br> 12. **VIOLATION OF B&P CODE** |

1

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

SECTION 17200 (CAL. VEH. CODE 11713.18)
13. VIOLATION OF B&P CODE SECTION 17500 (MISLEADING ADVERTISING)
14. NEGLIGENCE
15. UNJUST ENRICMENT

DEMAND FOR JURY TRIAL

Named Class Plaintiffs Steve Ferrari, Mike Keynejad, Patricia Rubin, John Diaz, and Ray Gapasin, along with individual Plaintiffs Harold Fethe, Hooshang Jowza, Celso Frazao, Renuka Narayan, Gertrud Frankrone, Ernest Salinas, Kalkhusan Sareen, Hossein Jalali, Ron Wolfe, Sohrab Rahimzadeh, Fred Grant, Ester Grant, Vincent Leung,  Jessica Langridge, Tony Nicolosi, Donald Lyang, and Artur Semichev, submit this Third Amended Complaint for Breach of Contract; Violation of Civil Code Section 1770 (Consumers Legal Remedies Act); B&P Code Section 17200 (Unfair Competition Act); Violation of B&P Code Section 17200 (Unfair Competition Law and California Vehicle Code 11713.18); Violation of B&P Code Section 17500 (Misleading Advertising); Trespass to Chattel;  Negligence; Unjust Enrichment; Common Law Fraud  (individually) and Negligent Misrepresentation (individually).

In support of these claims, Plaintiffs allege and state as follows:

## INTRODUCTION

1.     This case involves three systematic and intentional schemes to manipulate and deceive Mercedes-Benz customers regarding to the sale or non-sale of "Genuine Mercedes-Benz" auto parts.  Together, these schemes bilked millions of dollars from unknowing consumers and potentially voided thousands of warranties.

2.     First, between 2004 and 2015, Defendant Autobahn Motors, a Mercedes-Benz certified auto dealer located in Northern California, regularly invoiced its maintenance and repair customers for Genuine Mercedes-Benz Parts.  Unbeknownst to the customers, however, Autobahn installed non-Genuine parts and pocketed the difference as additional hidden profit.  Regular maintenance items such as air filters, oil filters, oil, spark plugs, etc., were routinely invoiced as Genuine Mercedes-Benz Parts, but customers were actually provided cheaper non-Genuine versions.

3.     Second, Sonic and Autobahn orchestrated a scheme to force their customers to purchase the oil additive "zMAX" as a non-negotiable component a standard oil change at any Sonic Dealership, including but not limited to Autobahn.  Not only did customers not request zMAX, but zMAX caused harm to the internal components of the engine and voided the manufacturers' warranty on thousands of vehicles.

4.     Third, Defendants have engaged in a well-documented marketing campaign promoting Genuine Mercedes-Benz parts as being superior to non-Genuine parts without exception.  However, many non-Genuine parts are manufactured by the same companies that supply these products to Mercedes-Benz as Genuine Parts.  Accordingly, these non-Genuine Parts are identical to many Genuine Parts but cost only one third the cost.  As a result of this marketing campaign, Plaintiffs and the Class paid more for Genuine Parts when identical non-Genuine parts are readily available.

5.     Plaintiffs, on their own behalf and on behalf of all those similarly situated, assert the claims set forth herein against Defendants arising from these three unlawful schemes.

## JURISDICTION AND VENUE

6.      This case was re-filed in San Mateo Superior Court, after this United States District Court dismissed Plaintiffs' RICO claims, and declined to retain jurisdiction over the remaining state law claims.  Plaintiffs then re-filed this action in the San Mateo County Superior Court, asserting a series of state law claims.  Defendant Mercedes-Benz USA subsequently removed this case back to the United States District Court, on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1453, and 1711–1715.

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.      The Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d), and Cal. Code Civ. P. § 410.10, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, from transactions between the Plaintiffs with Autobahn Motors in Belmont, California.

## PARTIES

10.      Defendant, Autobahn, Inc. dba Autobahn Motors ("Autobahn" or "Autobahn Motors") is a California Corporation with a principal place of business in Los Angeles, CA and doing business as Autobahn Motors in Belmont, San Mateo, California. Autobahn Motors is a Mercedes Dealership and is wholly owned and operated by Defendant, Sonic Automotive. Autobahn is sued based upon its direct participation in the unlawful conduct described herein.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

11.     Defendant, Sonic Automotive, Inc. ("Sonic" or "Sonic Automotive") is a Fortune 500 corporation organized under the laws of the state of Delaware, with its principal place of business in Charlotte, North Carolina.  Sonic is among the largest automotive retailers in the United States.  It operates over 100 dealerships in 14 states, including the Autobahn Motors Mercedes-Benz dealership located in Belmont, California.  Sonic is sued based upon its direct participation and involvement in the unlawful conduct described herein.

12.     Defendant Mercedes-Benz USA, LLC ("MB USA") is a Delaware Limited Liability Company, with a principal place of business in Atlanta, Georgia. MB USA is sued herein based on its direct participation in the unlawful conduct described herein and based upon the actions of its agents, Autobahn and Sonic.

13.     Plaintiff Steve Ferrari has taken his vehicles in for regular maintenance service at Autobahn Motors.  Although Plaintiff Ferrari was charged for Genuine Mercedes Parts, Defendants installed non-Genuine parts into his vehicle(s).  He was invoiced for Genuine Mercedes Benz parts, and suffered compensable damages as a proximate result.  He is a resident of Woodside, California, located in San Mateo County, California.

14.     Plaintiff Mike Keynejad has taken his vehicles in for regular maintenance service at Autobahn Motors during which non-Genuine parts were installed into his vehicle(s).  He was invoiced for Genuine Mercedes Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Hillsborough, California, located in San Mateo County.

15.     Plaintiff Patricia Rubin has taken her vehicles in for regular maintenance service at Autobahn Motors during which non-Genuine parts were installed into her vehicle.  She was invoiced for Genuine Mercedes Benz parts, and suffered compensable damages as a proximate

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

1  result.   She is a citizen of the State of California and a resident of Woodside, CA, located in San

2  Mateo County.

3  16.    Plaintiff John Diaz brought one or more Mercedes-Benz automobiles into

4  Autobahn Motors for repairs, received non-Genuine and non-OEM parts during those repairs, was

5  invoiced for Genuine and OEM parts, and suffered compensable damages as a proximate result.

6  He is a citizen of the State of California and a resident of San Francisco, California, located in San

7  Francisco, County.

8  17.    Plaintiff Harold Fethe purchased a 2005 S12 Mercedes-Benz as a Certified Pre-

9

10  Owned (CPO) vehicle from Autobahn Motors in 2009.  The CPO vehicle purchased by Plaintiff

11  Fethe contained non-Genuine parts in violation of the Mercedes-Benz CPO Program including but

12  not limited to zMAX.  He is a citizen of the State of California and a resident of Half Moon Bay,

13  California, located in San Mateo County.

14  18.    Plaintiff Ray Gapasin had zMAX added to his engine by Defendants without his

15

16  knowledge and the engine subsequently contained oil sludge caused by the zMAX, damaging the

17  vehicle.  He is a citizen of the State of California and a resident of Campbell, California, located

18  in Santa Clara County.

19  19.    Plaintiff Hooshang Jowza brought one or more Mercedes-Benz automobiles into

20  Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs,

21  was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a

22  proximate result.  He is a citizen of the State of California and a resident of San Mateo, California,

23  located in San Mateo County.

24  20.    Plaintiff Celso Frazao brought one or more Mercedes-Benz automobiles into

25

26  Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs,

27  *Ferrari v. Autobahn Motors.*

Third Amended Complaint

28

6

was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Palo Alto California, located in Santa Clara County.

21.     Plaintiff Renuka Narayan brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result. She is a citizen of the State of California and a resident of San Mateo, California, located in San Mateo County.

22.     Plaintiff Gertrud Frankrone brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is a citizen of the State of California and a resident of San Mateo, California, located in San Mateo County.

23.     Plaintiff Earnest Salinas brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Oakland, California, located in Glenn County.

24.     Plaintiff Kalkhusan Sareen brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

25.     Plaintiff Hossein Jalali brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Menlo Park, California, located in San Mateo County.

26.     Plaintiff Ronald Wolfe brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of Colorado.

27.     Plaintiff Sohrab Rahimzadeh brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Atherton, California, located in San Mateo County.

28.     Plaintiff Fred Grant brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Redwood City, California, located in San Mateo County.

29.     Plaintiff Ester Grant brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

proximate result.  She is a citizen of the State of California and a resident of Redwood City, California, located in San Mateo County.

30.     Plaintiff Vincent Leung brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Foster City, California, located in San Mateo County.

31.     Plaintiff Jessica Langridge brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is a citizen of the State of California and a resident of San Mateo, California, located in San Mateo County.

32.     Plaintiff Tony Nicolosi brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of Redwood City, California, located in San Mateo County.

33.     Plaintiff Donald Lyang brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs, was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.

34.     Plaintiff Artur Semichev brought one or more Mercedes-Benz automobiles into Autobahn Motors for maintenance or repairs, received non-Genuine parts during those repairs,

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is a citizen of the State of California and a resident of San Mateo, California, located in San Mateo County.

## COMMON FACTUAL ALLEGATIONS
## ALLEGATIONS REGARDING DEFENDANTS' USE OF NON-GENUINE PARTS

35.    Autobahn Motors is a Mercedes Dealership located in Belmont, California. Autobahn is a highly successful dealership selling thousands of vehicles per year in the profitable Northern California market.  As part of its state-of-the-art facility, Autobahn services thousands of Mercedes brand vehicles every year.  As a certified repair facility and dealership, Autobahn represents to its customers that its Mercedes Certified Technicians will install and use Genuine Mercedes-Benz Parts in the repair and maintenance of the vehicles it services.

36.    The Autobahn Motors website for the period 2005 through the present states as follows concerning its use of OEM/genuine Mercedes-Benz parts at its Belmont, California location:

| Year | Statement |
|------|-----------|
| 2005 | Not currently available |
| 2006 | Not currently available |
| 2007 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2008 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2009 | We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2010 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

| 2011 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2012 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2013 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2014 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2015 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-Genuine parts. |
| 2017 | "When work is performed on your vehicle, it's important that the technicians are Mercedes-Benz factory-trained and are using genuine Mercedes-Benz parts." |

37.     Autobahn Motors also publishes a repair manual that is used by its Service Advisors and is kept for use and display in the Service Advisors' work area. The Service Advisor is the person who meets with the repair customer and guides them through the various repair options. The repair manual published by Autobahn Motors states: "Our maintenance schedule meets or exceeded the manufacturer's recommended recommendations for vehicle maintenance..." Mercedes-Benz recommends that Genuine Mercedes-Benz parts are always to be used.

38.     However, these statements are untrue, as Autobahn secretly places non-Genuine parts into the vehicles it services and repairs in order to make hidden profit at the expense of its customers.

39.     Autobahn's secret non-Genuine parts scandal was first uncovered during the May 20, 2015 deposition of Mike Del Rosario in an unrelated matter. Mr. Del Rosario testified that as a former Service Tech for Autobahn Motors from 2001 to 2012, he and other service techs were

instructed to and did install non-Genuine parts into thousands of Autobahn customer vehicles. Critically, those customers were charged for Genuine Mercedes Parts and were not informed that Autobahn was surreptitiously using cheaper non-Genuine parts in the vehicles it serviced and repaired, pocketing the difference as additional profit.

40.     The Del Rosario testimony was further supported by a series of documents produced via third-party subpoenas in the *Maskay Inc. v. Autobahn* lawsuit.  According to these documents, Autobahn Motors placed a variety of auto parts purchased from SSF Auto, a major supplier of non-Genuine Mercedes-Benz parts, into its used car inventory and into thousands of customer vehicles.   It was also discovered that from 2004 to May 2015, Autobahn Motors installed virtually every type of non-Genuine auto part sold by SSF Auto, from brake pads to shock absorbers and everything in between.

41.     Autobahn Motors' Parts Manager, Roopesh Chandra, confirmed that the non-Genuine parts purchased by Autobahn from SSF Auto covered virtually every auto part available for Mercedes-Benz automobiles.  These non-Genuine parts were routinely installed in Autobahn's used car inventory and into the vehicles if its maintenance/repair customers without the customer's knowledge or consent.

42.     Autobahn Motors also installed into its used car inventory and into maintenance/repair customer vehicles non-Genuine products sold by MOC Products.   Non-Genuine products purchased by Autobahn from MOC Products for use in customer vehicles includes the following:

- •     2,520 bottles of non-OEM zMAX

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

- 3,188 32 oz. bottles of non-OEM MOC brake fluid

- 3,336 bottles of MOC non-OEM automatic transmission fluid conditioner

- 40,560 bottles of non-OEM windshield washer solvent

- 2,712 bottles of non-OEM MOC Gear Guard 75w-140

- 2,856 units of non-OEM ultra-power steering flush kit, and

- 1,466 units of non-OEM power steering two-pack kits.

43.    Upon information and belief, the MOC brake fluid and other MOC products are of a lower quality and do not constitute Genuine Mercedes-Benz approved products.  For example, MOC Brake fluid is not approved by MB USA, but was regularly used by Autobahn Motors in maintenance-customer vehicles.

44.    Autobahn also used non-Genuine parts purchased from Munich Auto Parts. According to data obtained from Munich Auto Parts, Autobahn purchased 17,795 non-Genuine oil filters during the class period.  These non-Genuine oil filters were used in the maintenance and repair Autobahn Motors' customer vehicles such as Plaintiffs herein.

45.    In addition to oil filters, between 2005 and 2010, Autobahn Motors purchased 69,431 additional non-Genuine parts from Munich Auto Parts Warehouse.

46.    The dollar amounts sold by Munich Auto Parts to Autobahn are as follows: $174,120 in non-Genuine oil filters; $75,280.00 in non-Genuine spark plugs (13,670 units); $1,816 in non-Genuine motor mounts; $16,484.50 in non-Genuine V-Belts; $18,358.50 in non-Genuine gaskets; $3,868.00 in non-Genuine engine mounts; $22,709.90 in non-Genuine battery units (5024 units); $20,109.50 in non-Genuine brake sensors (5024 units); $28,570.00 in non-Genuine ignition cables;  $330.00 in non-Genuine tightener pulleys; $30,736.00 in non-Genuine air mass sensors; $19,857.50 in non-Genuine fuel filters; $22,649.00 in non-Genuine part kits filters; $7,460.00 in

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

non-Genuine trans oil filters; $14,556.20 in non-Genuine cabin filters; $19,898.50 in non-Genuine air filters; $60,303.00 in non- OEM filter elements;  adding up to a total of $537,106.60 in non-Genuine parts.

47.     Thousands of customers bring their automobiles to Autobahn Motors for regular maintenance, and Autobahn Motors installed non-Genuine parts in their vehicles without permission.  The number of class members that had their vehicles serviced by Autobahn during the class period likely exceeds 12,000.  It was Autobahn's practice to routinely invoice customers for Genuine Mercedes-Benz parts although they were not receiving Genuine Mercedes-Benz parts. The customers were never informed that they were receiving non-Genuine parts at the time of service, and they were not given the opportunity to refuse the non-Genuine parts or to insist on Genuine Mercedes parts.

48.     Plaintiff and putative class representative Steve Ferrari purchased one or more Mercedes-Benz vehicles from Autobahn Motors, and has taken his vehicle(s) to Autobahn for regular maintenance service during the class period.  Although Plaintiff Ferrari was charged and paid for Genuine Mercedes-Benz Parts, Defendants installed non-Genuine parts into his vehicle.

49.     Plaintiff and putative class representative Mike Keynejad purchased one or more Mercedes-Benz vehicles from Autobahn Motors, and has taken his vehicle(s) to Autobahn for regular maintenance service during the class period.  Although Plaintiff was charged and paid for Genuine Mercedes-Benz Parts, Defendants installed non-Genuine parts into his vehicle.

50.     Plaintiff and putative class representative Patricia Rubin purchased one or more Mercedes-Benz vehicles from Autobahn Motors, and has taken her vehicle(s) into Autobahn for regular maintenance service during the class period.  Although Plaintiff was charged and paid for Genuine Mercedes-Benz Parts, Defendants installed non-Genuine parts into her vehicle.

51.     Plaintiff and putative class representative John Diaz brought one or more Mercedes-Benz vehicles to Autobahn Motors for repairs and/or service.  Although Plaintiff was charged and paid for Genuine Mercedes-Benz Parts, Defendants installed non-Genuine parts into his vehicle.

52.     Plaintiff Hooshang Jowza is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is not purporting to act as a class representative in this action.

53.     Plaintiff Celso Frazao is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is not purporting to act as a class representative in this action.

54.     Plaintiff Renuka Narayan is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is not purporting to act as a class representative in this action.

55.     Plaintiff Gertrud Frankrone is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  She is not purporting to act as a class representative in this action.

56.     Plaintiff Earnest Salinas is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  H is not purporting to act as a class representative in this action.

57.     Plaintiff Kalkhusan Sareen is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

58.     Plaintiff Hossein Jalali is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

59.     Plaintiff Ronald Wolfe is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

60.     Plaintiff Sohrab Rahimzadeh is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and

16

suffered compensable damages as a proximate result. He is not purporting to act as a class representative in this action.

61. Plaintiff Fred Grant is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result. He is not purporting to act as a class representative in this action.

62. Plaintiff Ester Grant is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result. She is not purporting to act as a class representative in this action.

63. Plaintiff Vincent Leung is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result. He is not purporting to act as a class representative in this action.

64. Plaintiff Jessica Langridge is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period. She received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result. She is not purporting to act as a class representative in this action.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

65.     Plaintiff Tony Nicolosi is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

66.     Plaintiff Donald Lyang is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

67.     Plaintiff Artur Semichev is an individual who brought one or more Mercedes-Benz automobiles into Autobahn Motors for repairs or service during the class period.  He received non-Genuine parts during those repairs but was invoiced for Genuine Mercedes-Benz parts, and suffered compensable damages as a proximate result.  He is not purporting to act as a class representative in this action.

## ALLEGATIONS REGARDING zMAX

68.     zMAX is an oil additive manufactured by non-party Speedway Motorsports Inc. Speedway Motorsports was founded by O. Burton Smith, who is also the former President and current Chairman of Sonic Automotive.

69.     Sonic Automotive founder, O. Burton Smith, is the CEO of Speedway Motor Sports, and has published a letter on the zMAX website that falsely states:

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

"Improving fuel mileage, reducing engine wear and emissions, increasing horsepower and helping vehicles to last longer and run smoother, are where zMAX ® micro-lubricant really demonstrates its capabilities.

***

With the high prices at the pump today, the annual potential to save thousands of dollars per vehicle in fuel consumption alone is more than worth your while! These savings go right to the profit line on your corporate balance sheet, something all business owners and managers can appreciate"

70.    Further noted on the zMAX website is the statement: "zMAX does not void manufacturer's warranties."

71.    According to sworn deposition testimony in an unrelated matter, Mr. Smith instructed all the General Managers of the more than 100 Sonic Automotive Dealerships throughout the country, including Autobahn Motors, to actively market zMAX to their customers and to automatically place zMAX into all of vehicles in the dealerships pre-owned inventory, including CPO Program vehicles.

72.    Upon information and belief, Mr. Smith gave this directive regarding zMAX in order to increase the profits of Speedway Motorsports, thereby enriching himself.

73.    Autobahn Motors, along with and through the actions of former Sonic Automotive Executive and Autobahn Motors General Manager Joe Cox, enforced and followed this directive by Mr. Smith, and from approximately 2004 to the present, regularly caused zMAX to be placed into all pre-owned vehicles and into every vehicle that had its oil changed by Autobahn.

74.    Based upon the testimony of Autobahn Motors General Manager Joe Cox, approximately 12,000 vehicles had zMAX placed in them.

75.    Former Autobahn Motors salesperson Paul Grewal (employed 2004-2014) explained that all of the sales people at Autobahn Motors were aware of the practice of placing

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

zMAX into its CPO vehicles. They all knew it was non-genuine unapproved product. They collectively agreed not to tell customers about the use of zMAX.

76.    One Autobahn Service Advisor, Mr. Steve Meade testified that: "I think zMAX got to a point where it wasn't so much me selling it.  It got to a point where the technicians were just told to use it, and it wasn't – there wasn't any option given to the client."

77.    Sonic Automotive knew that in so directing Autobahn Motors, it would cause Autobahn Motors to intentionally harm customers and their vehicles.

78.    Paul Grewal explained the reason he did not tell customers that zMAX was optional is because "if I told him, he would have asked me what is zMAX, and I didn't want to have to answer that question."

79.    zMAX is a prohibited product for Mercedes-Benz vehicles.  Mercedes-Benz publishes the following statement at its website concerning the use of oil additives such as zMAX:

> "Up to now, Daimler AG has not approved any product that is allowed to be introduced or mixed into approve, read-formulated lubricants for engines, transmissions, or major assemblies in Mercedes-Benz vehicles as a special additive! The vehicle owner is solely responsible if special additives are used in lubricants! If damage occurs the legal warranty and guarantee claims may be limited."

80.    Mercedes-Benz also publishes owners' manuals for its automobiles which uniformly prohibit the use of oil additives such as zMAX.

81.    Furthermore, by placing zMAX into the gas tanks of its used vehicle fleet and customer vehicles, compliance with the emissions standards set by California State law is diminished, and the process of confirming compliance through smog testing is altered and harmed. zMAX increases the emissions because it is primarily a petroleum based mineral oil.

20

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

82.     Defendants' unfettered use of zMAX in order to increase the profits of Speedway Motorsports and to pad the pockets of Sonic's Chairman has caused damage to thousands of vehicles and potentially voided the warranties covering thousands of vehicles.   Some class members have already had warranty claims denied as a result of using zMAX.  As indicated above, MB USA clarifies that it will deny such warranty claims if zMAX is used.  Accordingly, Sonic and its dealership, Autobahn, were intentionally adding a product to customer vehicles that they knew or should have known would detrimentally affect the customers' Mercedes-Benz warranty.

83.     Plaintiff Ray Gapasin is an individual who purchased a pre-owned Mercedes–Benz from non-party Peter Pan Motors, a BMW dealership located in Burlingame, CA. His vehicle had been sold to the previous owner by Autobahn Motors.  His VMI report shows that zMAX was placed into the vehicle's engine by Autobahn Motors, when the vehicle was brought to Autobahn for repairs.   Without Plaintiff Gapasin's consent, Autobahn added zMAX to his engine on September 30, 2010.

84.     Plaintiff Gapasin's automobile is an example of zMAX causing damage to the vehicle in the form of oil sludge that is now throughout the engine. Repairing the vehicle to remove engine sludge will require that the entire engine be cleaned piece by piece.  Plaintiff Gapasin only first discovered the use of zMAX in 2015 when he took the vehicle in for repairs.

85.     Plaintiff and putative class representative Ray Gapasin seeks to represent all those who purchased a pre-owned vehicle from a Sonic Automotive dealership, including but not limited to Autobahn Motors, in which zMAX was placed between 2004 and the present.

### ALLEGATIONS REGARDING THE SUPERIORITY AND LONGEVITY OF GENUINE MERCEDES-BENZ PARTS

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

86.     Defendants have falsely represented in a longtime advertising campaign that Genuine Mercedes-Benz Parts have numerically designated greater longevity and are of superior quality when compared to non-Genuine parts.

87.     Among others, these advertisements take the form of promotional brochures mailed out and given out to consumers, and statements on MB USA's website.

88.     Defendant Sonic Automotive authorizes the advertisements issued by Autobahn Motors, its wholly-owned subsidiary.

89.     MB USA provides content for the ads and makes its own representations regarding the higher quality of Genuine Parts.

90.     Autobahn Motors prepares and disseminates these statements through direct mailers and email-blasts.

91.     Among others, the ads take the following general approach:

a.     MB USA's website states:

"Using only Genuine Mercedes-Benz Parts affords you measurable differences every mile you travel.  Longevity, safety and warranty are just a few of many reasons to buy Genuine Parts."

"Being history's first car company has afforded us the time and expertise to instill durability into our parts. For example, our fleece oil filter lasts up to 45% longer than conventional filters, minimizing engine wear."

b.     A brochure mailed and the MB USA link to Autobahn Motors quotes statements made by MB USA:

Oil filters: "can last 45% longer than other aftermarket oil filters."

Air filters: "lasts at least 40,000 miles. Other aftermarket filters might need to be replaced at 12,000 miles." and "capture 28% more soot over their lifetime than most brands."

Cabin filters: "are 36% more effective at filtering soot than tested aftermarket filters."

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

Wiper blades: "can provide up to 800,000 more wiping cycles than other aftermarket brands."

Brakes: "tested lower in vibration versus other aftermarket brands."

92.     These statements are materially false when the so-called non-Genuine "aftermarket" parts are produced by the same manufacturers that produce Genuine Parts for Mercedes-Benz.

93.     For example, Mann Filter Company makes Genuine oil filters for Mercedes-Benz. That filter has the Mercedes-Benz star logo emblazoned upon it.  However, Mann Filter also sells non-Genuine versions of the same oil filters that are identical to the Genuine oil filter in all respects other than having the Mercedes-Benz logo.   Critically, the Genuine Mann filter costs approximately three times the price of same non-Genuine Mann oil filter without the logo.  The only actual difference between the Genuine and non-Genuine oil filters manufactured by Mann Filter Company is the logo.

94.     Mann Filter company's website states:

> "MANN-FILTER is not only a leading development partner and OE
> supplier to the international automotive industry, but also supplies world-
> famous MANN-FILTER brand products in the aftermarket to fit most
> vehicles around the world. The MANN-FILTER range of products also
> meets the highest standards of quality and service demanded by our OE
> customers."

95.     According to Mann Filters, the non-Genuine products are in every way as good performance-wise as the Genuine Mercedes products.

96.     These Mann non-Genuine filters are among the filters sold to Plaintiffs and members of the class, albeit at the higher Genuine Parts price.

23

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

97.     Another example is Bosch spark plugs.  Bosch makes a Genuine spark plugs for Mercedes-Benz which contain the Mercedes-Benz logo.  Bosch also makes a non-Genuine spark plug that is identical to the Genuine spark plugs, for a fraction of the cost.

98.     MB USA's statements about the longevity of its Genuine parts are not mere puffery, but instead are based on factual statements using a numerical designation to describe MB Genuine parts as having better longevity than non–Genuine parts.

99.     Autobahn Motors knows this is an untrue statement, as it has stated in court papers in the previous federal RICO case that it should not be held liable for fraud because Plaintiffs were not damaged by receiving non-Genuine parts because the parts they received were of the same quality as Genuine parts.

100.    Plaintiffs believe that the position of Autobahn Motors to be true with respect to the various non-Genuine products sold to Autobahn Motors from Munich Parts Warehouse.  This is not inconsistent with Plaintiffs' other claims of harm from these products, in that Plaintiffs were charged for Genuine Mercedes parts at the Genuine Mercedes parts (or higher) price for these products, and in fact received lower priced non-Genuine parts, and thus suffered actual damage. If the Genuine products are found not to be of superior quality, then Defendants engaged in unlawful conduct by charging higher amounts for Genuine Parts.  In addition, the non-Genuine parts are not covered by MB USA warranty, which is a further actual damage suffered by Plaintiffs.

101.    MB USA knowingly causes its advertising brochures to be sent out in bulk mail to customers, knowing them to be false, because it knows (just like Autobahn Motors knows) that many producers of its own Genuine Mercedes products also make the same exact product as a non-Genuine alternative, and that the only actual difference is one has a Mercedes-Benz logo, and the other does not.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

24

102.    MB USA disseminates its false superiority and longevity claims through statements on its website, and also through the use of displays physically placed inside Mercedes-Benz dealerships throughout the state of California.   There are approximately 50 Mercedes-Benz authorized dealerships within the state of California.   Plaintiffs believe that this display advertisement, which takes the form of a stand-alone monument, is placed in each dealership.

103.    This Mercedes-Benz display is entitled "Why Genuine Mercedes-Benz Parts," and is placed in a prominent place in lobby area of Autobahn Motors.

104.    Autobahn Motors knew that the display monument ad contained false factual statements, as described above, and yet knowingly and willfully accepted the display monument ad.  Autobahn Motors knowingly and willfully co-published this ad with MB USA by placing it in its lobby.

105.    Further, MB USA publishes information about its claims of superiority and longevity on its MB USA website.   Its website currently shows the following further false statement about its parts:

> "Genuine New Parts - They don't merely perform. They endure.
> Quality doesn't simply reside in how well a part functions at the get-go: it's a function of how well it performs over time. And Genuine Parts endure because they're engineered specifically for your car—they fit like no other parts can, they're engineered to work with the other parts and systems, and they´re made with the finest materials available."

Web link for above quote:  https://www.mbusa.com/mercedes/service_and_parts/genuine_parts

106.    Mercedes-Benz also publishes several YouTube videos concerning the benefits of Genuine Parts over non-Genuine parts.

107.    Defendants knowingly concealed from Plaintiffs and members of the class the true facts regarding non-Genuine parts in order to cause them to purchase only Genuine Parts despite

25

virtually identical parts made by the same manufacturer being available at reduced prices. Defendants also kept Plaintiffs from knowing these true facts, and made statements about Genuine products that are rendered untrue and misleading by concealing these true facts, and by hiding facts which are known to Defendants.

108.    The true facts are that non-Genuine products produced by the same manufacturers of Genuine products are every bit as good and any statements to the contrary are demonstrably false.

109.    The misrepresentations and false statements of Mercedes-Benz about the superiority and longevity of genuine Mercedes parts and products were part of an extensive and long-term advertising campaign, a campaign that included (without limitation) all the advertising media detailed above (i.e. bulk mail brochures, website, physical displays including monument ads, YouTube videos, etc.), as well as television advertisements.  For the last several years, Mercedes Benz' advertising tagline has been "The Best or Nothing…"  This campaign solidifies the superior nature of Mercedes Benz vehicles and the parts that go into them.  As a result, any consumer interested in purchasing a Mercedes Benz vehicle has been exposed, on multiple occasions, to the Mercedes Benz marketing campaign touting their vehicles as "the best" when compared to their competition.

110.    Putative class representatives Diaz, Ferrari, Rubin, and Keynejad, as well as all class members, were all repeatedly exposed to Mercedes-Benz's extensive and long-term advertising campaign, touting the alleged superiority of Mercedes vehicles and the superiority and longevity of genuine Mercedes parts and products.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

111.     While putative class representative Diaz, Ferrari, Rubin, and Keynejad cannot point to any specific advertisement or advertising media, all of these individuals were made aware of Mercedes-Benz's claims of alleged superiority and longevity of genuine Mercedes parts and products, via Mercedes-Benz's extensive and long-term advertising campaign.  These Plaintiffs took their vehicles to a Mercedes Benz dealership for maintenance and ordered Genuine Mercedes parts believing them to be superior to non-genuine parts.

## CLASS ACTION ALLEGATIONS

112.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, and adequacy requirement of Rule 23(a) as well as the predominance, and superiority requirements of Rule 23(b).

### Class Definition(s)

113.     Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a); and (b)(3) on behalf of themselves and all others similarly situated as members of the following Subclasses (collectively, the "Class"); on their federal and state claims.

114.     Plaintiffs propose the following class definitions:

(a)     **Non-Genuine Parts Class:**   Any person or entity who brought one or more Mercedes-Benz automobiles to any Autobahn Motors dealership in the state of California for service, repair, or maintenance from January 1, 2005 to the date that Notice issues to the Class, who received non-OEM/non-genuine/approved Mercedes-Benz parts, supplies, and/or oil from Autobahn Motors, and were invoiced for Genuine Mercedes-Benz parts.

**zMAX Subclass**:  All members of the Non-Genuine Parts Class that had zMAX added to their vehicle as part of Autobahn's regular maintenance program.

27

**(b) Genuine Parts Class:**  All consumers within the state of California that paid for Genuine Mercedes-Benz spark plugs, oil filters, air filters, brake pads and/or wiper blades from any California Mercedes Benz dealership between September 24, 2011 and the date the Notice issues to the class.

### Numerosity and Ascertainability

115.    Federal Rule of Civil Procedure 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."

116.    As set forth above, Autobahn purchased tens of thousands of non-Genuine parts from various retailers during the proposed class period of January 1, 2005 to the present.  These parts were all installed in thousands of customer vehicles.

117.    Based upon the testimony of Autobahn Motors General Manager, Joe Cox, Autobahn placed zMAX into approximately 12,000 vehicles during the class period.  Furthermore, the size and location of Autobahn indicates that it services hundreds of vehicles each month. During the class period, each of those service customers was charged for Genuine Mercedes-Benz parts, but received non-Genuine parts instead.

118.    Accordingly, the members of the Classes set forth above are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

119.    The precise number and identities of Class members may be ascertained from Autobahn Motors' repair records as such records are maintained for each Mercedes vehicle and shared nationally with all Mercedes dealerships.  For example, all Mercedes-Benz dealerships use a Vehicle Master Inquiry ("VMI") database to track service and repairs of Mercedes vehicles.  The VMI database also tracks which dealer performed which services and the specific parts used.  This

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

information can be used to identify and track class members and to calculate damages and/or restitution.

**Commonality**

120.    Federal Rule of Civil Procedure 23(a)(2) requires that "there are questions of law or fact common to the class."

121.    The claims advanced herein are based upon common courses of conduct by Defendants.

122.    First, Autobahn's employees have testified that during the class period Autobahn regularly and routinely used non-Genuine parts to service and repair customer vehicles, while charging their customers for Genuine Mercedes-Benz parts.  The legality of this routine practice is common for all class members as the decision will turn on common evidence.

123.    Second, the legality of Defendants' practice of using zMAX in customer vehicles without request or permission as part of routine maintenance will also turn on common claims.  If Defendants' conduct in this manner is found to be illegal in the transactions of the named class representatives, it will be the same for each member of the putative class.

124.    Third, the determination regarding whether Mercedes-Benz's advertising program misrepresented the superiority and longevity of Genuine Parts when compared to the same parts sold by the same manufacturers is a common representation that will turn on common evidence.

125.    Since only one common issue of law or fact is required under Rule 23(a)(2), this second requirement is easily established by the common conduct of the Defendants.

**Typicality**

29

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

126.   Rule 23(a)(3) requires that "the claims of defenses of the representative parties are typical of the claims or defenses of the class."

127.   The named Plaintiffs' claims are typical of the nature and types of claims held by members of the class.  They are all owners of Mercedes-Benz automobiles that had their vehicles serviced and/or repaired Autobahn Motors, received non-Genuine parts, and were invoiced for Genuine Mercedes-Benz parts at elevated prices.  Plaintiffs wished to have Genuine Parts installed in their vehicles because MB USA's advertising campaign represented Genuine Mercedes-Benz Parts as being of superior quality to all other aftermarket parts.

128.   Multiple Plaintiffs had zMAX installed in their vehicles by Autobahn Motors.  The representative Plaintiffs, like all Class members, have been damaged by Defendants' misconduct in that they have incurred similar or identical losses relating to the use of non-Genuine parts and products in the Class vehicles. Furthermore, the factual bases of Defendants' misconduct are common to all Class members and represent a common thread of misconduct resulting in injury to all Class members.

### Adequate Representation

129.   Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class.  This inquiry focuses on the named representatives and putative class counsel.

130.   Named Plaintiff Steve Ferrari is a longtime Mercedes-Benz owner with multiple vehicles regularly serviced by Autobahn Motors.  He was given non-Genuine parts during those service appointments and was charged for Genuine Mercedes-Benz parts.  He has no interest antagonistic to the class members he seeks to represent.

131.    Plaintiff Mike Keynejad has taken his vehicles in for regular maintenance service at Autobahn Motors during which non-Genuine parts were installed into his car.   Plaintiff Keynejad has been instrumental in receiving news and evidence of the non-Genuine parts scandal, and the production of documents.  Plaintiff Keynejad is a skilled mechanic whose shop, Eurotech, has become a clearinghouse for Autobahn's former technicians.  Plaintiff Keynejad is also an expert concerning Mercedes-Benz repair procedures, and the interrelationships that form the Mercedes-Benz auto repair business.  He has no interest antagonistic to the class members he seeks to represent.

132.    Plaintiff John Diaz is a prospective class representative on non-Genuine parts claims. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles. He also is an owner of a pre-owned Mercedes-Benz automobile which was brought in for service at Autobahn Motors.  He has no interests antagonistic to the class members he seeks to represent.

133.    Plaintiff Ray Gapasin is a proposed class representative for individuals who own a vehicle in which zMAX and other non-Genuine products were placed, during the class period. Plaintiff Gapasin purchased a preowned Mercedes-Benz that was previously sold by Autobahn Motors, and that had zMAX placed into the car by Autobahn Motors, when it sold the car to the previous owner.  Again in September 2010 when the car was taken into Autobahn for a repair zMAX was added again to the vehicle without request or permission from Gapasin.  Ray Gapasin is an auto enthusiast who has a substantial level of knowledge concerning the operation of automobiles generally, and his own Mercedes-Benz.  Plaintiff Gapasin's vehicle was damaged by zMAX (sludge in the engine) as described above.  He has no interest antagonistic to the class members he seeks to represent.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

**Adequacy of Class Counsel**

134.     Plaintiffs have retained Herman Franck, Esq. of Franck & Associates to prosecute this claim.  Attorney Franck and Franck and Associates will serve as class counsel, and have the following credentials to show that they will be adequate counsel for the class.  Attorney Franck is a Georgetown University Law Center Graduate (Juris Doctorate 1985) with a Masters of Economics (1985) and a BA (honors) in Political Economy from UC Berkeley (1981).  Mr. Franck has been a member of the California State Bar since 1986 (SBN 123476), and has owned and operated Franck & Associates in Sacramento since the year 2000. Mr. Franck represents an auto body shop in San Mateo by the name of Eurotech in a lawsuit against Autobahn and MB USA concerning an ad co-op scheme, illegal tying arrangement, and price fixing (*Maskay Inc. dba Eurotech vs Autobahn Motors Inc. dba Autobahn Motors; MB USA; Rick Ali, Bobby Ali, AW Collision Inc.* San Mateo Superior Court Case No. CIV525559).

135.     Plaintiffs have also engaged and partnered with the consumer class action law firm of Varnell & Warwick, P.A. to assist in the representation of the class. Varnell & Warwick, P.A. and its partners Janet R. Varnell and Brian W. Warwick have substantial experience in consumer class actions and have prosecuted dozens of consumer class actions in state and federal courts across the United States.

**Predominance of Common Questions**

136.     Once all the requirements of Rule 23(a) have been established, the two additional requirements of Rule 23(b), predominance and superiority, must also be met.

137.     There are numerous questions of law and fact common to Plaintiffs and Class members that predominate over any question affecting only individual Class members. The answers to these common questions will advance the adjudication or resolution of the litigation as to all Class members.

32

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

138.    The predominating common legal and factual questions include:

a.    Whether Defendants charged customers for Genuine Mercedes-Benz parts, but installed non-Genuine parts without the customers' knowledge;

b.    Whether Defendants breached their contracts with customers by charging for Genuine Mercedes-Benz parts but installing non-Genuine parts;

c.    Whether Defendants breached their contracts with service customers by automatically installing zMAX as part of a routine maintenance;

d.    Whether Defendants violated the Consumer Legal Remedies Act by selling non-Genuine Parts to unknowing consumers or by representing Genuine Parts as superior and longer lasting than non-Genuine parts made from the same manufacturer;

e.    Whether Defendants' practices of using non-Genuine parts without informing their customers is an unfair and/or deceptive trade practice in violation of  California Vehicle Code 11713.18, thereby violating California Code section 17200;

f.    Whether Defendants' practice of automatically installing zMAX without a request from the customer constitutes an unfair and/or deceptive practice in violation of California Vehicle Code 11713.18, thereby violating California Code section 17200;

g.    Whether Defendants' practice of charging for Genuine parts but installed non-Genuine parts violates Business & Professions Code Section 17500;

h.    Whether Defendants' advertising campaign misrepresents Genuine Mercedes-Benz Parts and being superior to all other aftermarket parts;

i.    Whether Defendants were unjustly enriched by charging for Genuine Mercedes-Benz parts while providing customers non-Genuine parts; and

j.    Whether Defendants negligently breached their duty to provide Genuine Mercedes-Benz parts to customers.

### Superiority

139.    Defendants' scheme treated consumers as a class of uniformly deceived.  However, the individual damages suffered by each class member are most often to be the difference between

33

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

what was promised and what was received, which will be a relatively modest amount. Plaintiffs and Class members have all suffered and will continue to suffer economic harm and damage as a result of Defendants' unlawful and wrongful conduct, which was directed toward Class members and the public as a whole, rather than specifically or uniquely against any individual Class members.

140.    Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. The respective value of the claims, person by person, are inadequate to litigate on their own. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to incur damages, and Defendants' misconduct will continue unchecked and without an effective remedy.

141.    Class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication by providing common answers to the common questions of knowledge, conduct, duty and breach, that predominate in this action.

142.    Accordingly, the disposition of the claims of Class members in a single action will provide substantial benefits to all parties and to the Court. Class members may be readily notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice. Accordingly, a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## TOLLING OF THE STATUTES OF LIMITATIONS

### Discovery Rule

143.    As discussed above, the Defendants hid their practice of using non-Genuine parts from their customers.  Unlike vehicles of the past, the vehicles of today can only be serviced by trained technicians with appropriate computers, tools and knowledge.  As a result, the vast majority of class members remain completely unaware that Defendants were using non-Genuine parts in the service and repair of their vehicles.

144.    Defendants' unlawful conduct was elaborate and well concealed.  Autobahn Motors actively concealed the true character, quality, and nature of the non-Genuine parts and products, and knowingly made material omissions regarding the quality, reliability, characteristics, and performance of the non-Genuine parts and products.

145.    Plaintiffs and Class members had no realistic ability to discover the presence of the non-Genuine parts or products, or to otherwise learn of the unlawful conduct.

146.    Any statutes of limitation otherwise-applicable to any claims asserted herein have been tolled by the discovery rule.

### Intentional Concealment

147.    All applicable statutes of limitation have also been tolled by Autobahn Motor's knowing, active and ongoing fraudulent concealment of the facts alleged herein.

148.    Defendants have known of the non-Genuine parts and products installed in the Class Vehicles since at least 2004 when Autobahn Motors began installing them. Since then Autobahn Motors has intentionally concealed from or failed to notify Plaintiffs, Class members, and the public of the non-Genuine parts and products in the Class vehicles.

149.     Autobahn Motors installed the non-Genuine parts in order to charge Mercedes Genuine parts prices for lower-priced non-Genuine parts, installed zMAX as part of a concerted scheme with Sonic Automotive to market and sell the unapproved oil additive zMAX, and sold CPO vehicles with non-Genuine parts and products installed.

150.     Despite knowing about the non-Genuine parts and products (including zMAX), Defendants did not acknowledge the problem, and in fact actively concealed it, until after it was discovered in separate litigation beginning in or about May 2015.

151.     Any otherwise-applicable statutes of limitation have therefore been tolled by Defendants' exclusive knowledge and Autobahn Motors' active concealment of the facts alleged herein.

### Estoppel

152.     Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the non-Genuine parts and products installed in the Class vehicles. Instead, Autobahn Motors actively concealed the true character, quality, and nature of the non-Genuine parts and products, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the non-Genuine parts and products.

153.     Plaintiffs and Class members reasonably relied upon Autobahn Motors' knowing and affirmative misrepresentations and/or active concealment of these facts.

154.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

### RELATION BACK

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

155.     This action relates back to a similar action filed by Plaintiffs in the United States District Court, Northern district of California, entitled *Ferrari et al. v. Mercedes-Benz et al.*, Case No. 4:15-cv-04379-YGR, initially filed on September 24, 2015.

156.     That action included a federal claim under RICO Action, 18 U.S.C. Section 1961 et seq., and state law claims of false advertising, fraud, negligent misrepresentation, negligence, violation of B&P Code section 17200. The federal case was dismissed by Order granting defendants Motions to Dismiss, dated December 12, 2016.

157.     The dismissal was based on the RICO claim only, and the District Court's unwillingness to retain supplemental jurisdiction over the state law claims absent a viable federal law claim. The Court's decision states:

> "In short, the allegations of the SAC might state a simple claim for fraud[2] or unfair business practices by their respective companies, but they do not allege that the individual defendants participated in a pattern of racketeering acts by a RICO enterprise.

> FN 2 The Court notes that the website printout referenced in the SAC, attached as Exhibit D, does not indicate that Autobahn only uses OEM parts, but that "[o]ur service center has access to OEM Certified auto parts and accessories." (SAC, Exh. D. ECF 66-1 at 25.) Further, the warranty information on the back of the invoice exemplar includes a separate statement of a "Parts Warranty for Non-Mercedes-Benz Parts" in the lower left corner of that page. (*Id.*, Exh. C.) Further, the alleged "newsletter" at Exhibit G to the SAC appears to be part of an owners' manual and part of a service form, neither of which appear false, much less to have been disseminated through the mails. Thus, the allegations lack plausibility even to allege garden variety fraud."

158.     This Court previously ruled that the state law claims against Autobahn Motors had been sufficiently stated, and DENIED Autobahn Motors' Motion to Dismiss the Fraud Claims. This Court made the following finding in its Order granting in part the series of motions to dismiss the initial complaint:

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

37

"As to the claims for fraud, fraudulent inducement, negligent misrepresentation, and negligence, Autobahn argues only that, as with the RICO claim, the allegations are insufficiently pleaded per the standards set forth in Rule 9(b). The Court does not agree. While Plaintiffs' Complaint is not a model of clarity, there are factual allegations in support of the claimed fraudulent and deceptive conduct by Autobahn which are pleaded with sufficient particularity as to the nature of the false representations, made by whom, and when."

**COUNT I**
**BREACH OF CONTRACT**
**(Class Action Claim Against All Defendants)**

159.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

160.    Plaintiffs assert breach of contract claims in connection with each Class defined above.

161.    The members of the Non-Genuine Parts Class entered into a contract with Sonic and its agent, Autobahn, when they brought their vehicles to Autobahn for service and/or repair. As part of that contract, Autobahn represented that Genuine Mercedes-Benz Parts were to be used in the repair or service of customer vehicles. Autobahn breached its contract with the Non-Genuine Parts Class members by installing and using non-Genuine parts in the repair or service of class member vehicles. Members of the Non-Genuine Parts Class have been damaged by Autobahn's breach in that did not receive the benefit of their bargain and received goods that were not specified and were of lesser quality. Defendants' conduct caused actual damage to Non-Genuine Class members in the form of the difference in price between the Genuine Mercedes-Benz parts and products specified and the non-Genuine parts and products that were actually used.

162.    Members of the zMAX Subclass entered into contracts with Autobahn, a Mercedes qualified service center and dealership, to have their vehicles serviced with products approved by Mercedes. Autobahn breached its contracts with these class members by installing zMAX as part

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

of its routine oil change and service because zMAX is not part of Mercedes' maintenance program and is not approved by Mercedes and may void the Mercedes Warranty.  Further, Autobahn breached its contract with the zMAX Subclass members by automatically adding zMAX to the service without the customer's knowledge or permission.

163.    As a direct and proximate result of the Defendants' breaches described above, Plaintiffs and Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, restitution, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

164.    WHEREFORE Plaintiffs pray for judgment as set forth below.

## COUNT II
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
## CIVIL CODE § 1750, et seq.

### (Class Action Claim Against All Defendants)

165.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

166.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CLRA"), because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

167.    Plaintiff and each member of the Class are consumers as defined by Cal. Civ. Code § 1761(d).

168.    Cal. Civ. Code § 1770(a)(1), (2), (3), (5), (7), and (8) lists the following as prohibited unlawful acts which have been violated by Defendants as follows:

**(1) Passing off goods or services as those of another.**  Defendants violate this provision by passing off non-Genuine Parts as Genuine Mercedes-Benz Parts when used in the maintenance and/or repair of customer vehicles.

**(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.**  Defendants violate this provision by mispresenting the source, sponsorship and approval of non-Genuine Parts as if they were Genuine Mercedes-Benz Parts when used in the maintenance and/or repair of customer vehicles.  Defendants also violate this provision by making unfounded superiority and longevity claims regarding Genuine Parts as described herein.

**(3) Misrepresenting the affiliation, connection, or association with, or certification by, another.**  Defendants violate this provision by mispresenting the source, sponsorship and approval of non-Genuine Parts as if they were Genuine Mercedes-Benz Parts when used in the maintenance and/or repair of customer vehicles.  Defendants also violate this provision by making unfounded superiority and longevity claims regarding Genuine Parts as described herein.

**(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …**  Defendants violate this provision by mispresenting the source, sponsorship and approval of non-Genuine Parts as if they were Genuine Mercedes-Benz Parts when used in the maintenance and/or repair of customer vehicles.  Defendants also violate this provision by making unfounded superiority and longevity claims regarding Genuine Parts as described herein.  Defendants use of zMAX also violates this provision because zMAX is not approved by Mercedes-Benz to be used in any Mercedes vehicles.

**(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.**  Defendants violate this provision by mispresenting the source, sponsorship and approval of non-Genuine Parts as if they were Genuine Mercedes-Benz Parts when used in the maintenance and/or repair of customer vehicles.  Defendants also violate this provision by making unfounded superiority and longevity claims regarding Genuine Parts as described herein.  Defendants use of zMAX also violates this provision because zMAX is not approved by Mercedes-Benz to be used in any Mercedes vehicles.

**(8) Disparaging the goods, services, or business of another by false or misleading representation of fact.**  Defendants violate this provision by making unfounded superiority and longevity claims regarding Genuine Parts, as alleged herein, when compared to aftermarket parts sold by the same Genuine Parts manufacturer.

169.   On or about November 14, 2017, Plaintiffs notified Defendants in writing, by certified mail, of the CLRA violations alleged herein and demanded that Defendant remedy those violations.

40

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

170.    Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above after being provided notice on November 14, 2017.

171.    As of February 6, 2018, Defendants have continued to deny any wrongdoing and failed to take any steps to remedy the CLRA violations set forth herein.

172.    Accordingly, pursuant to § 1782 of the CLRA, Plaintiffs seek actual, punitive, and statutory damages pursuant to the CLRA for the unlawful, unfair and deceptive conduct alleged herein.

173.    Plaintiffs and the Class also seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution, disgorgement, statutory damages, and any other relief that the Court deems proper.

174.    Defendants' conduct is malicious, unlawful, deceptive and wanton in that Defendants intentionally and knowingly provide misleading information to the public and charge consumers for items not delivered and without their consent.

175.    Pursuant to Cal. Civ. Code §§ 1780 and 1781, Plaintiffs and Class Members hereby request certification of Plaintiffs' Class, injunctive relief, and attorneys' fees, costs, and expenses.

176.    WHEREFORE Plaintiffs pray for judgment as set forth below.

**COUNT III**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW,**
**BUSINESS AND PROFESSIONS CODE SECTION 17200**
**(Class Action Claim Against Defendants Sonic and Autobahn)**

177.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

41

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

178.    Business & Professions Code § 17200, et seq., the Unfair Competition Law ("UCL"), prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . .."

179.    As set forth above, Defendants have engaged in several unfair, deceptive and unlawful actions through the use of Non-Genuine Parts and the undisclosed use of zMAX as alleged herein.

180.    The members of the Non-Genuine Parts Class suffered damages when Autobahn installed non-Genuine parts in the repair or service of class member vehicles, while charging for Genuine Mercedes-Benz parts.  As a result of this unlawful, unfair and deceptive business practice, Plaintiffs and members of the Non-Genuine Parts Class received goods that were not as specified and/or which were of lesser quality.  Defendants' conduct caused actual damage to Non-Genuine Class members in the form of the difference in price between the Genuine Mercedes-Benz parts and products specified and the non-Genuine parts and products that were actually used.

181.    Members of the zMAX subclass were also damaged by Autobahn's unlawful, unfair and  deceptive business practice of installing zMAX in their vehicles as part of its routine oil change and service without the customer's knowledge or permission.  Customers were never informed that zMAX is not part of Mercedes' regular maintenance program and is not approved by Mercedes and may void the Mercedes Warranty.

182.    Members of the Genuine Parts Class suffered damages as a result of the Mercedes Benz advertising campaign depicting Genuine Mercedes Parts as lasting longer and being of superior quality to all aftermarket products, when many aftermarket products cost significantly less and are identical to the Genuine Parts and sold by the same manufacturer.

183.   Defendant Sonic Automotive is liable for this harm and damages because it is the corporate owner of Autobahn Motors, and because it actively aided and abetted the conduct of Autobahn Motors by expressly directing Autobahn Motors (through its General Manager, Joe Cox, and David Ahlheim, its Fixed Operations Director) to use zMAX, MOC Products, SSF Auto Parts products, Munich Auto parts non-genuine parts, and other non-genuine parts.

184.   Defendants' conduct was willful, premediated, done with substantial planning and intentional wrongful conduct, was known to be concealed by the public, was willfully concealed from Plaintiffs, was done in disregard of Plaintiffs' rights, was done oppressively and wantonly, with knowledge that Plaintiffs would be harmed, which constitutes a basis for punitive damages pursuant to California Civil Code Section 3294 in an amount according to proof.

185.   Pursuant to Cal. Civ. Code § 1780, any consumer who suffers damage as a result of the use or employment of any act or practice declared unlawful by § 1770, may recover actual damages, restitution, punitive damages and injunctive relief.

186.   Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm that is undetected and undetectable, because Defendants are expected to continue to wrongfully market and sell zMAX and other non-Genuine parts as described above.  Injunctive relief is therefore necessary in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing Plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX.

187.   Plaintiffs further request an injunction preventing Defendants from installing non-Genuine parts on customer maintenance/repair vehicles without express written permission of the customer.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

43

188.	Plaintiffs request actual damages and restitution, including without limitation any overpayments made for non-Genuine parts at OEM prices, actual out of pocket expenses for repair costs paid as a consequence of voided warranties, and the increased price paid for Genuine Parts where identical aftermarket parts were available at a reduced price.

189.	WHEREFORE Plaintiffs pray for judgment as set forth below.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**BUSINESS & PROFESSIONS CODE SECTION 17500**
**(Class Action Claim Against All Defendants)**

190.	Plaintiffs incorporate by reference paragraphs 1 through 158, above as if fully set forth herein.

191.	Plaintiffs assert this claim for relief for violation of Business & Professions Code section 17500 against all Defendants.

192.	The allegations of fraudulent conduct, including the publication of advertisements and how they were done in a fraudulent and knowing manner, are set out in the factual allegation sections above, which are also incorporated into this claim for relief.

193.	Defendants' conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500, which provides:

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of

reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

194.    Defendants violated § 17500 by representing on its invoices delivered to customers that its repair and/or maintenance customers were receiving Genuine Mercedes-Benz parts when, in fact, they were receiving non-Genuine parts.  It is also a misrepresentation to conceal from customers the fact that non-Genuine parts were being used.  These representations took place on the invoices provided to all customers.  Genuine parts codes were used and Defendants never informed customers that non-Genuine parts were being used or could be used or and Defendants never obtained customer approval before installing and using non-Genuine parts.  Customers were not given option of choosing non-Genuine versus Genuine parts.

195.    Defendant Sonic Automotive is liable for this harm and damages because it is the corporate owner of Autobahn Motors, and because it actively aided and abetted the conduct of Autobahn Motors by expressly directing Autobahn Motors (through its General Manager, Joe Cox, and David Ahlheim, its fixed operations director) to use zMAX, MOC Products, SSF Auto Parts products, and Munich Auto parts non-genuine parts.

196.    Members of the Genuine Parts Class suffered damages as a result of Defendants' advertising campaign depicting Genuine Mercedes Parts as lasting longer and being of superior quality to all aftermarket products, when many aftermarket products cost significantly less and are identical to the Genuine Parts and sold by the same manufacturer.

197.    Defendants' conduct was willful, premediated, done with substantial planning and intentional wrongful conduct, was known to be concealed by the public, was done oppressively

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

and wantonly, knowing that Plaintiffs would thereby be harmed, which constitutes a basis for punitive damages pursuant to California Civil Code Section 3294 in an amount according to proof.

198.    Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm that is undetected and undetectable, because Defendants are expected to continue to wrongfully market and sell zMAX and other non-Genuine parts as described above.  Injunctive relief is therefore necessary in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing Plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX,

199.    Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Autobahn Motors and MB USA to cease the distribution, sale and use of zMAX products in any automobile in which the manufacturers or other third-party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

200.    Plaintiffs also request restitution for non-Genuine parts being provided at Genuine Parts prices, and for the inflated cost of Genuine Parts when identical aftermarket parts are available.

201.    WHEREFORE Plaintiffs pray for judgment as set forth below.


## COUNT V
## CLAIM FOR TRESPASS TO CHATTELS
### (Class Action Claim Against Defendants Sonic and Autobahn)

202.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

203.     This is a claim for relief by all Plaintiffs Non-Genuine class members against Defendants Autobahn, Inc. dba Autobahn Motors ("Autobahn") and Sonic Automotive Inc. ("Sonic") for Trespass to Chattel.

204.     Under California law, a trespass to chattels claim lies where an intentional interference with the possession of personal property has proximately caused injury.  In cases of interference with possession of personal property not amounting to conversion, the owner has a cause of action for trespass, and may recover actual damages suffered by reason of the impairment of the property.

205.     Autobahn and Sonic committed the intentional tort of trespass to chattels against each named Plaintiff and the Non-Genuine Parts Class in several ways.

206.     From approximately January 1, 2005 to the present, Autobahn Motors regularly, repeatedly, and automatically used and installed various non-Genuine parts and products into service and repair customers' vehicles without the customer's knowledge or permission.

207.     None of the Plaintiffs consented to the placement of non-Genuine parts into their vehicles.

208.     The placement of these non-Genuine parts is done in a secret, concealed and deceptive manner, and is done purposely by Autobahn Motors at the direction of its owner, Sonic Automotive.

209.     The non-Genuine parts placed into Plaintiffs' automobiles proximately caused damage to the vehicles in the form of cheaper and non-approved parts.

210.     Defendant Autobahn Motors secretly installed the non-Genuine parts, and then invoiced the customers as though the parts were Genuine Mercedes-Benz parts and charged for Genuine parts.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

211.    Plaintiffs and members of the Class are not present when the non-Genuine parts are placed into their vehicles.  This placement of non-Genuine parts occurs in the repair service area of Autobahn Motors, a place where customers are generally not allowed.

212.    With respect to the zMAX product, the use of this oil additive damaged the vehicles of Plaintiffs and the Class.  MB USA's website confirms this damage, as stated above.

213.    In addition, Plaintiff Ray Gapasin's vehicle sustained actual damage in the form of sludge or "gunk" caused by the use of zMAX, which infiltrated his entire automobile engine.

214.    The use of the zMAX product has caused a present damage and injury to the vehicles of Plaintiffs, the named Plaintiffs and the putative class members in that (a) the zMAX product has caused a physical damage to the vehicle; (b) the zMAX product jeopardizes the MB USA warranty, which excludes coverage for any damage to the car caused by the use of a prohibited oil additive such as zMAX.  Plaintiffs service warranties issued by MB USA, through its agent Autobahn Motors, are thus in present jeopardy.

215.    The use of the series of other non-Genuine products has also caused a present damage to the vehicles of Plaintiffs, named Plaintiffs and the Class members in that (a) non-Genuine products have caused a physical damage to the value of the vehicle because it contains unapproved parts and products; (b) the use of these non-Genuine products jeopardizes the MB USA warranty, which excludes coverage for any damage to the vehicle caused by non-Genuine products.

216.    Defendant Autobahn Motors' conduct was intentional in that it knowingly placed these non-Genuine parts and products into the vehicles of Plaintiffs, named Plaintiffs and members of the Class, knowing that they consent to or request non-Genuine parts.

217.    Defendant Sonic Automotive is sued herein based on its conduct in aiding and abetting the conduct of Autobahn Motors. Sonic Automotive intentionally aided and abetted this conduct by directing that zMAX be placed into customer vehicles.

218.    As a proximate result of these two Defendants' trespass to chattels, and aiding and abetting the trespass to chattels, Plaintiffs, named Plaintiffs and putative class members have suffered actual damage in an amount according to proof.

219.    These two Defendants' conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the rights of Plaintiffs, which warrants the imposition and award of punitive damages in an amount according to proof.

220.    Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of regularly placing non-Genuine products into Plaintiffs' cars without Plaintiffs' consent.

221.    WHEREFORE Plaintiffs pray for judgment as set forth below.

## COUNT VI
## NEGLIGENCE
### (Class Action Claim against All Defendants)

222.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

223.    Plaintiffs assert this claim for relief for negligence against all Defendants.

224.    Defendants' conduct was careless, reckless, and in breach of Defendants' duty owed to Plaintiffs, and in violation of California Civil Code 1714(a).

225.    Defendants negligently each and all took steps to conceal the true facts about the use of zMAX and other non-OEM/non-genuine products on MB USA warranties, and similar warranties given by third parties.

49

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

226.     Autobahn Motors and Sonic Automotive have breached the duty of due care owed pursuant to Civil Code Section 1714(a) by negligently and wrongfully marketing, distributing, selling, and placing zMAX into automobiles, knowing that in so doing, the manufacturer's certified pre-owned warranties, or such similar warranties issued by third parties, are thereby rendered void or voidable at the option of the warrantor.  One such warrantor and beneficiary of this negligence is Defendant MB USA, who, if it stands by and does nothing, gets the advantage of voiding any warranty claims due to the prohibited use of zMAX.

227.     MB USA committed negligence based on its ICRs, and by failing to enforce its own policies and procedures regarding repairs, the use of non-Genuine Mercedes parts by authorized Mercedes dealerships, and the use of an oil additive (zMAX) by authorized Mercedes dealerships.

228.     MB USA had a legal duty pursuant to Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiffs and putative class members.

229.     MB USA breached this duty by the conduct described in the common allegations of fact above.

230.     MB USA was further negligent in that it knew full well through VMI reports, and the pendency of this very litigation, that Sonic Automotive, Speedway Motorsports, and dealers owned by Sonic Automotive were and still are actively, selling, and marketing zMAX in a manner that is expressly prohibited by the automobile manufacturers' warranty.

231.     The Defendants' use of zMAX renders both Mercedes warranties and third-party warranties void or voidable at the option of MB USA and/or any third-party warrantor, by the express terms of the warranties.

232.     MB USA receives actual knowledge through the VMI process that during the pendency of the warranty, zMAX was added into the car by Autobahn Motors (as in the case of

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

Gapasin and Fethe) or to customers at any of the other 133 dealerships owned by Sonic Automotive.

233.    MB USA further had a duty, because Autobahn Motors was using the benefit of the MB trademark star and name to market a product as though it were approved by MB USA. Mercedes-Benz breached this duty of due care by failing to take appropriate steps to correct the circumstances by mandating to Sonic Automotive and/or directly to the MB Authorized dealerships owned by Sonic to stop putting zMAX in Mercedes-Benz Automobiles.  Instead MB USA has joined forces with Autobahn Motors and Sonic to squelch any attempt to bring the truth of zMAX widespread use by dealerships owned by Sonic Automotive.

234.    Autobahn Motors had a legal duty pursuant to California Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiffs.

235.    Autobahn Motors has brought forward an objectively reasonable expectation by its repair customers that genuine Mercedes-Benz parts will be used and that non-approved parts will not be used. By virtue of this legal duty, Autobahn Motors has an affirmative duty to inform customers, including Plaintiffs, of the use of non-genuine parts. Autobahn Motors has a legal duty not to use non-approved fuel additives like zMAX and MOC products.

236.    Autobahn Motors creates this reasonable expectation by the use of the Mercedes-Benz name and trademark throughout the dealership. When customers go there for repairs, they naturally and reasonably expect that genuine parts only will be used.

237.    Autobahn Motors knew or should have known that its customers expected and trusted that it would use genuine/OEM parts only.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

238.     Autobahn Motors breached this duty of reasonable care by not living up to its customers' objectively reasonable expectations and trust, by regularly placing zMAX, MOC products, and other non-genuine parts into customers' cars, including Plaintiffs' cars.

239.     Sonic Automotive had a legal duty pursuant to Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiffs.

240.     Sonic Automotive knew or should have known that its customers expected and trusted that it would use genuine/approved parts only.  Mainly, Sonic Automotive directed Autobahn Motors and other Sonic-owned dealerships, to regularly use zMAX, MOC, and other non-genuine parts in customers' cars, including Plaintiffs' vehicles. This conduct constitutes Sonic's breach of the reasonable duty of care.

241.     Sonic Automotive further breached its duty of reasonable care by requiring Autobahn Motors to regularly purchase and use various non-genuine parts in all repairs at Autobahn Motors.

242.     Individuals who have unknowingly received zMAX in their car either (a) at one of the Sonic dealerships owned by Sonic; or (b) when it was placed in the car as part of the repair process, have suffered the following harm proximately caused by all Defendants.

243.     The people who received zMAX in their car, had their warranty rendered void and/or voidable at the option of MB USA or third-party warrantor.  The warranty was thereby transformed from a solid and enforceable, to that of warranty enforceable at the option of the warrantor.  The status/ existence/nature/and pendency of a pre-owned automobile's warranty is extremely significant aspect concerning the value of that car.

244.     The same impact and damage as described above with respect to zMAX applies equally to Plaintiffs through receipt of non-approved, non-genuine oil.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

245.    Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs and the absent class members will suffer irreparable harm that is undetected and undetectable, because Defendants are expected to continue to negligently and wrongfully market and sell zMAX and other non-Genuine parts, as described above.  Injunctive relief is therefore necessary in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing Plaintiffs further irreparable harm in the probability of an undetected use of zMAX.

246.    Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendants Sonic Automotive, and Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes-Benz Automobiles, and in any automobile in which the manufacturers or other third-party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

247.    Plaintiffs further seek such other relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

248.    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## COUNT VII
## UNJUST ENRICHMENT
### (Class Action Claim Against Defendants Autobahn and Sonic)

249.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

250.    Defendants Autobahn Motors and Sonic Automotive have benefitted from selling and installing non-Genuine parts and products at genuine-part prices, and from concealing their

53

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

use and sale of non-genuine parts and products, and Plaintiffs and Class members overpaid for repairs and maintenance on their vehicles.

251.    Defendants Autobahn Motors and Sonic Automotive have received and retained unjust benefits from the Plaintiffs and Class members, and inequity has resulted.

252.    It is inequitable and unconscionable for these Defendants to retain these benefits.

253.    Because these two Defendants concealed their unlawful conduct, Plaintiffs and Class

members were not aware of the true facts concerning the maintenance and repair of their vehicles and did not benefit from Defendants' misconduct.

254.    Defendants Autobahn and Sonic knowingly accepted the unjust benefits of their unlawful conduct.

255.    As a result of these two Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and Class members, in an amount to be proven at trial.

256.    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

**COUNT IX**
**COMMON LAW FRAUD**
**(Individual Claim by Plaintiffs against All Defendants)**

257.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

258.    This is a non-class claim for relief by all Plaintiffs against Defendants Sonic Automotive, Mercedes-Benz USA, LLC, and Autobahn Motors.

54

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

259.    As a proximate result of defendants' fraudulent conduct involving the installation and use of non-Genuine parts when Genuine Parts were specified, the use of zMAX in Mercedes-Benz vehicles, and the misrepresentations regarding the longevity and superiority of Genuine Parts, as set forth more fully herein, Plaintiffs have been damaged in an amount according to proof.

260.    Defendants engaged in the fraudulent conduct described herein in order to entice consumers to enter into transactions involving higher priced Genuine Mercedes-Benz Parts, and Plaintiffs Diaz, Ferrari, Rubin, and Keynejad relied on these representations and were damaged as a result.  Plaintiffs paid for Genuine Parts they did not receive, paid for zMAX as if it were an approved product, and were led to believe that Genuine Parts were of superior quality when compared to all other aftermarket parts.

261.    Plaintiff Ferrari gave deposition testimony where he testified that he remembered "seeing a sign at the entrance that, you know, would dictate the parts that they used were factory parts and the life spans between the two parts and what you were --- the benefits of going with Mercedes parts."

262.    In making their decisions to service their vehicles at Autobahn Motors (an authorized Mercedes repair facility), Plaintiffs Diaz, Ferrari, Rubin, and Keynejad all relied upon Mercedes' misrepresentations and false statements about the alleged superiority and longevity of genuine Mercedes parts.

263.    Plaintiffs Diaz, Ferrari, Rubin, and Keynejad relied to their detriment on the misrepresentations and false statements of Mercedes about the alleged superiority and longevity of genuine Mercedes parts, and suffered injury as a direct and proximate result of their reliance, in the form of paying more for genuine Mercedes parts that were neither superior nor which had any greater longevity.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

264.    Defendants' conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the rights of Plaintiffs, which warrants the imposition and award of punitive damages in an amount according to proof.

265.    Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of falsely stating that MB genuine parts have numerically designated longevity over non-Genuine parts, and request and injunction prohibiting the use of non-Genuine parts when Genuine parts are specified on the invoice.

266.    WHEREFORE Plaintiffs pray for judgment as set forth below.

**COUNT X**
**NEGELIGENT MISREPRESENTATION**
**(Individual Claim Against All Defendants)**

267.    Plaintiffs incorporate by reference paragraphs 1 through 158, and paragraphs 258 to 265 as if fully set forth herein.

268.    Defendants negligently misrepresented, concealed, and made false promises as alleged in paragraphs 1 through 158 above.

269.    MB USA committed a negligent misrepresentation based on its CPO publications and ICRs, by representing that all Certified Pre-Owned Mercedes were reconditioned with Genuine Mercedes parts.

270.    MB USA committed a negligent misrepresentation by publishing false and misleading statements about the longevity and superiority of its Genuine Mercedes parts.

56

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

271.    MB USA had no reasonable grounds for believing that the representations it made about the CPO program and its genuine parts longevity superiority were true when it made the representations.

272.    Defendant MB USA intended that Plaintiffs would rely on the representations.

273.    In making their decisions to service their vehicles at Autobahn Motors (an authorized Mercedes repair facility), Plaintiffs Diaz, Ferrari, Rubin, and Keynejad all relied upon Mercedes' misrepresentations and false statements about the alleged superiority and longevity of genuine Mercedes parts.

274.    Plaintiff Ferrari gave deposition testimony where he testified that he remembered "seeing a sign at the entrance that, you know, would dictate the parts that they used were factory parts and the life spans between the two parts and what you were --- the benefits of going with Mercedes parts."

275.    Plaintiffs Diaz, Ferrari, Rubin, and Keynejad relied to their detriment on the misrepresentations and false statements of Mercedes about the alleged superiority and longevity of genuine Mercedes parts, and suffered injury as a direct and proximate result of their reliance, in the form of paying more for genuine Mercedes parts that were neither superior nor which had any greater longevity.

276.    Plaintiffs Diaz, Ferrari, Rubin, and Keynejad reasonably relied on the Defendants' misrepresentations to their detriment by either purchasing but not receiving Genuine Parts during a maintenance visit, and/or by bringing their automobiles into Autobahn Motors for repairs.

277.    Defendants also negligently misrepresented that all aftermarket products were inferior to Genuine Parts when, in fact, several of its own manufacturers sell the identical product at lower prices.

57

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

278.     As a proximate result of Defendants' negligent conduct, Plaintiffs Diaz, Ferrari, Rubin, and Keynejad have been damaged in an amount according to proof.

279.     Plaintiffs will be irreparably harmed and are without a remedy at law unless injunctive relief is granted. Plaintiffs seek an injunction stopping defendants from this pattern and practice of regularly placing non-Genuine product into Plaintiffs' cars without Plaintiffs' consent.

280.     WHEREFORE Plaintiffs pray for relief as set forth below in the Prayer for Relief.

### FACTUAL ALLEGATIONS REGARDING THE CPO PROGRAM
### AS THEY PERTAIN TO PLAINTIFF HAROLD FETHE[1]

281.     Autobahn's common practice of using non-Genuine parts to make hidden profit bled over into the Mercedes-Benz Certified Pre-Owned Program ("CPO").  According to Autobahn Motors General Manager Joe Cox, between December 2004 to May 2015, there were thousands of non-Genuine parts placed into Autobahn Motors pre-owned fleet, including automobiles that were eventually sold under the CPO Program.

282.     Apart from the allegations herein, Mercedes-Benz USA has good reason to be proud of its CPO program. The program is advertised on the MB USA website as having strict compliance standards: "To qualify for Pre-Owned Certification, a Mercedes-Benz vehicle must meet stringent criteria and pass a rigorous inspection." [2]

283.     The website and a YouTube video published by MB USA describe the CPO Program as "a 155-point inspection regime covering all aspects of the automobile including: Fluid check; engine components; electrical systems and functions; drivetrain and undercarriage;

---

[1]  Plaintiffs acknowledge that Counts X through XV are stayed, as Plaintiff Fethe's claims were referred to arbitration by Court Order dated 1/18/18 (DE 117).  The allegations are contained here so as not to confuse the class allegations asserted by other Plaintiffs.

[2] https://www.mbusa.com/mercedes/cpo#waypoint=cpocertification&!layout=/cpo/overview/certification

58

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

chassis and body; road test; post road test inspection." According to the YouTube video (at 1:24), "it's a vigorous regime of multiple multi point inspections." [3]

284.     Under the CPO Program, the vehicle is supposed to be checked by Mercedes-Benz factory trained techs, and qualifying vehicles are to be re-conditioned with genuine Mercedes-Benz parts. (YouTube video, at 2:03).

285.     The YouTube video further states that "exceeding expectation is also what sets a certified pre-owned Mercedes-Benz apart from the rest..." The YouTube video also states that the Mercedes -Benz CPO program ". . .continues to lead the way . . ."

286.     In addition, MB USA publishes a CPO "Program Guide" which states:

• "Quality Certified Mercedes-Benz Technicians perform repairs using only genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories." Id. p. 7.

• "The ICR and all reconditioning work must be performed on a qualifying vehicle to bring it up to MB CPO Standards using Mercedes-Benz Genuine Parts." Id. p. 17.

• "Prior to vehicle sale: Provide Inspection and Certification Report to Customer - Disclose any prior repair and service history - Provide supporting repair orders for CPO reconditioning." Id. p. 19.

• "The ICR must be reviewed with the Customer prior to sale. o Items on the vehicle that are excluded from the MB USA warranty because they are non-Mercedes-Benz or aftermarket components and/or accessories should be checked off by the Technician on the online form. Id. p. 21.

---

[3]  https://www.youtube.com/watch?v=f7PzX4d50tY

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

287.    The Service Manager signs the Inspection and Certification Report ("ICR") that establishes the vehicle as certified according to MBCPO Standards, as stated in the vehicle manuals:

• Page 18 states: NetStar automatically flags MBCPO vehicles that must be recertified and prevents data entry of the vehicle as an MBCPO sale

- page 19 states: 3.16 Prior to vehicle sale: • Provide Inspection and Certification Report to Customer • Disclose any prior repair and service history • Provide supporting repair orders for CPO reconditioning

- page 21 states: The ICR must be reviewed with the Customer prior to sale. o Items on the vehicle that are excluded from the MB USA warranty because they are non-Mercedes-Benz or aftermarket components and/or accessories should be checked off by the Technician on the online form. The online ICR must include (in the "Notes" section) any body repairs of a cumulative value in excess of 10 percent of the vehicle's current market value. For a vehicle to be certified, the appropriate ICR and all reconditioning work must be performed on a qualifying vehicle to bring it up to MBCPO standards using Mercedes-Benz Genuine Parts, exchange units, and factory-approved accessories. The original completed, signed technical ICR and supporting repair orders (ROs) must be maintained in Dealer Service files. The consequences of noncompliance with MBCPO standards are stated in Section H of this manual. Consult your shop's Workshop Information System (WIS) for the latest information and standards for inspection and repair procedures, tools, materials, and safety procedures for specific models and model years.

- Page 27 states: 1.1.5 The Service Department will make repairs using only Genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories.

60

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

- Page 27: "Reconditioning is a Team Effort," stating in pertinent part: "The service Department will make repairs using only Genuine Mercedes-Benz parts."

- Page 28 states & explain managements responsibilities: Service Manager • Designating one person to administer the entire Service Department process • Expediting the vehicle through the process • Keeping the Pre-Owned Manager or designated person informed of the current status of the vehicle while it is in the process • Approving repairs in a timely fashion • Performing the required inspection on each vehicle presented for reconditioning and reporting to the Pre-Owned Manager or designated person the extent and estimated costs of the repairs • Ensuring MBCPO-quality repairs • Returning the vehicle to the Pre-Owned Department or Detail Department, as directed, immediately upon completion of repairs • Ensuring that the Pre-Owned Manager or designated person receives the actual reconditioning costs when receiving the vehicle.

- Page 39 states: Consult your shop's Workshop Information System (WIS) for the latest information and standards for inspection and repair procedures, tools, materials, and safety procedures for specific models and model years.

- Page 49 states: 2.1.3 Carcannon Reporting Reviews—Depending on the results of the periodic Carcannon Consultations, a PIR may be scheduled with the dealer. Vehicle file reviews will be conducted by MB USA as well as inspection of certified vehicles in dealer inventory.

- 2.2.2.1Certification Training Review—The Reviewer determines whether the current Pre-Owned Manager, Service Manager, and F&L Manager have completed appropriate MBCPO online training. The Reviewer also determines if the appropriate

61

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

Dealership Representatives who sell new vehicles, pre-owned vehicles, or both are trained and certified according to MBCPO Standards.

- Page 50 states:• Vehicle, process, and overall Dealership compliance scores • Top five noncompliant vehicle categories; if less than five categories are noncompliant, those categories are listed • Vehicle file and documentation findings (documentation present, etc.) • Vehicle inspection graphs for exterior appearance, interior appearance, and mechanical • Electronic Extended Limited Warranty (number of days from delivery to DDR, Customer signature, etc.) • Inventory reconciliation • Reasons vehicle was unavailable for inspection by PIR Reviewers • Training certification report • Pre-owned capacity report • Point-of-sale (POS) materials report • Top 25 problem categories • Vehicle level reporting (individual vehicle condition report).

- page 54: Noncompliance with any of the MBCPO Training and Certification Standards can result in the Dealership losing the right to participate in the MBCPO Program.

288.     The MB USA checklist likewise states: "The following items are to be specifically brought to the attention of the customer because they are non-Mercedes-Benz or aftermarket components. These items are excluded from the Mercedes-Benz certified pre-owned limited Warranty.

289.     A document in the service advisor's office area kept at Autobahn Motors also states that all automobiles are repaired according to factory guidelines. Mercedes-Benz factory guidelines specify that only MB Genuine/OEM/approved parts are to be used.

290.     Former parts advisers from Autobahn Motors' have explained that they keyed in the Genuine part numbers for non-Genuine products, at the direction of Autobahn Motors

62

management.  On information and belief, Autobahn Motors in turn was directed to act from directives of its corporate owner, Sonic Automotive.

291.    The MB USA CPO program further advertises in the form of website publications by its dealerships, including Autobahn Motors, in which the following false statement is made:

"Maintenance performed by Mercedes-Benz trained technicians using Genuine Mercedes-Benz parts. Potential increase in resale value."

292.    This ad, or a similar one, has been published on the Autobahn Motors' website, as part of the Mercedes-Benz CPO program, and in the name of Mercedes-Benz USA.

293.    Plaintiffs accordingly plead and allege against MB USA that it is responsible for not only false statements that occurring during the initial sale of the CPO Program vehicles, but also during the ensuing maintenance and/or repair after the sale.

294.    Plaintiff Harold Fethe purchased a CPO Program vehicle from Autobahn which included an ICR reports which stated at page 1: "This report shows that your newly acquired pre-owned Mercedes-Benz vehicle has been inspected and when required reconditioned to our exacting standards. Further, it is our assurance that you will receive the same considerate customer service that we provide to our new vehicle owners."

295.    In a brief filed by MB USA in San Mateo County Superior Court Action No. CIV525559, MB USA stated: "MB USA's certification program is a promise (or certification) to the repair customer that the vehicle will be repaired with OEM parts and to MB standards (those which they had prior to the collision)."

296.    MB USA, through its agent Autobahn Motors, and with the connivance, assistance, and facilitation of Sonic Automotive, willfully misrepresented CPO vehicles sold by

Autobahn Motors as being in compliance with the MB USA CPO Program's mandates to use only Genuine Mercedes-Benz parts in the re-conditioning of CPO Program vehicles.

297.    However, CPO vehicles sold by Autobahn Motors did not comply with the Program mandate as non-Genuine parts were routinely used in the refurbishment of the CPO Program vehicles.  Various parts, including but not limited to: zMAX, MOC products, non-Genuine Parts from SSF auto, non-Genuine parts from Munich Auto Parts (oil filters, air filters, cabin filters, spark plugs, brake censors and other various parts) were regularly and systematically placed into the Autobahn Motors CPO Program vehicles during the CPO reconditioning process.

298.    MB USA's actual knowledge of Autobahn Motors' practice of using zMAX and MOC Products in CPO Program vehicles is evident from a review of the vehicle repair history reports called "VMI reports."  These VMI reports show the regular use of zMAX and other non-Genuine products in vehicles represented as CPO compliant by Autobahn.  MB USA is the keeper of these reports, and as such has actual knowledge of the regular use of these non-Genuine products in CPO Program vehicles sold and or serviced by Autobahn Motors.

299.    Many of these non-Genuine products fail to meet Mercedes' own internal requirements.  For example, the MB USA website states that the proper approved brake fluid is described as follows: "We recommend using only products which are distinctly marked with the label indicating the approval of Mercedes-Benz, e.g. MB-Approval 229.51" [4]

300.    Autobahn Motors and MB USA concealed the use of various non-Genuine parts from consumers by failing to adhere to MB USA's CPO Program's mandates, and the mandate

---

[4] https://bevo.mercedesbenz.com/bevolisten/331.0_en.html

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

of California Law, Vehicle Code Section 11713.18, by failing to provide customers with a signed CPO inspection report detailing the non-compliant parts.

301.     Plaintiff Harold Fethe purchased a 2005 S12 Mercedes-Benz as a Certified Pre-Owned (CPO) vehicle from Autobahn Motors in 2009.  The VMI report on the repair and purchase history of the 2005 S12 shows that zMAX was put into the vehicle by Autobahn Motors.

302.     Former Autobahn Parts Advisor Roopesh Chandra testified that Autobahn placed zMAX in all of its pre-owned vehicles during Chandra's 10-year term of employment.

303.     The VMI Report for Plaintiff Fethe's vehicle, reviewed for the first time in 2016, indicates that Autobahn placed zMAX into the vehicle's engine block during a repair service that took place on or about May 14, 2012 and January 30, 2013.

304.     Plaintiff Harold Fethe did not learn of the underlying facts of the deceptive and unfair conduct of the Defendants until approximately April 2016, when he contacted Maskay, Inc. dba Eurotech in connection with the repair of his vehicle.  Plaintiff Fethe did not receive an Inspection and Certification Report or other writing when he purchased the vehicle advising him that certain non-Genuine parts or liquids such as zMAX had been used in his vehicle.

305.     Plaintiff Harold Fethe could not have learned of these claims before April 2016, even exercising reasonable diligence, due to Autobahn's practice of concealing its use of non-Genuine parts and liquids in Plaintiff Fethe's vehicle.

**COUNT X**
**BREACH OF CONTRACT**
**(Individual Claim of Plaintiff Harold Fethe)**

306.     Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

65

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

307.    Plaintiff Harold Fethe entered into a contract with Defendants to purchase a vehicle that was compliant with the Mercedes-Benz Certified Pre-Owned Program, including being re-conditioned with only Genuine Mercedes-Benz Parts.  Defendants breached their contract with Plaintiff Fethe by re-conditioning his CPO Vehicle with non-Genuine parts contrary to the CPO Program directives.  Plaintiff Fethe was damaged in that he did not receive the benefit of his bargain.  He was to receive a vehicle that had been re-conditioned with Genuine Mercedes-Benz parts.  He was also damaged by the inclusion of zMAX in his CPO Program vehicle as it is not a Mercedes approved product and may void the extended warranty that comes with CPO Program vehicles.

308.    As a direct and proximate result of the Defendants' breaches described above, Plaintiff Fethe has been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

309.    WHEREFORE Plaintiffs pray for judgment as set forth below.

**COUNT XI**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**CIVIL CODE § 1750, et seq.**

**(Individual Claim of Plaintiff Harold Fethe Against All Defendants)**

310.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

311.    This individual cause of action is brought pursuant to the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CLRA"), because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

312.    Plaintiff Harold Fethe is a consumer as defined by Cal. Civ. Code § 1761(d).

313.    Cal. Civ. Code § 1770(a)(2), (3), (5) and (7) ists the following as prohibited unlawful acts which have been violated by Defendants as follows:

**(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.**  Defendants violated this provision by selling a vehicle to Plaintiff Fethe a as qualified CPO Program vehicle, when the vehicle was not reconditioned with Genuine Parts and in violation of Mercedes-Benz factory standards as required by the CPO Program.

**(3) Misrepresenting the affiliation, connection, or association with, or certification by, another.**  Defendants violated this provision by selling a vehicle to Plaintiff Fethe as a qualified CPO Program vehicle, when the vehicle was not reconditioned with Genuine Parts as required by the CPO Program.

**(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …**  Defendants violated this provision by selling a vehicle to Plaintiff Fethe as a qualified CPO Program vehicle, when the vehicle was not reconditioned with Genuine Parts as required by the CPO Program.

**(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.**  Defendants violated this provision by selling a vehicle to Plaintiff Fethe as a qualified CPO Program vehicle, when the vehicle was not reconditioned with Genuine Parts as required by the CPO Program.

314.    On or about November 14, 2017, Plaintiffs notified Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations.

315.    Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of receipt of

67

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

Plaintiff's written notice pursuant to § 1782 of the CLRA.  Plaintiff Fethe therefore claims actual, punitive, and statutory damages pursuant to the CLRA.  Plaintiff Fethe also seeks a Court order for restitution, disgorgement, statutory damages, and any other relief that the Court deems proper.

316.    Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to the public and charged consumers such as Plaintiff Fethe without their consent.

317.    WHEREFORE Plaintiffs pray for judgment as set forth below.

## COUNT XII
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE SECTION 17200
#### (Individual Claim of Plaintiff Harold Fethe Against All Defendants)

318.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

319.    Business & Professions Code § 17200, et seq., the Unfair Competition Law ("UCL"), prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . .."

320.    As set forth above, Defendants have engaged in several unfair, deceptive and fraudulent actions through the CPO Program Fraud as alleged herein.

321.    Plaintiff Fethe was damaged by Autobahn's unlawful, unfair, deceptive and fraudulent business practice of re-conditioning CPO Program Vehicles with non-Genuine parts contrary to the CPO Program directives.  Plaintiff Fethe was damaged in that they did not receive the benefit of his bargain.  He was to receive a vehicle that had been re-conditioned with Genuine Mercedes-Benz parts.  He was also damaged by the inclusion of zMAX in his CPO Program vehicle as it is not a Mercedes approved product and identified by MB USA to be a detrimental

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

product that may void the extended warranty that comes with CPO Program vehicles.  Defendants Autobahn and Sonic knowingly and intentionally hid from Plaintiff Fethe their use of non-Genuine parts in CPO Program vehicles.

322.   MB USA is liable for this harm and damages suffered by Plaintiff Fethe because the conduct of Autobahn Motors in misrepresenting and concealing the use of non-genuine parts was done as part of the MB USA CPO program in the name of MB USA, but actually done pursuant to an agency assignment by MB USA to Autobahn Motors.

323.   Defendant Sonic Automotive is liable for this harm and damages because it is the corporate owner of Autobahn Motors, and because it actively aided and abetted the conduct of Autobahn Motors by expressly directing Autobahn Motors (through its General Manager, Joe Cox, and David Ahlheim, its Fixed Operations Director) to use zMAX, MOC Products, SSF Auto Parts products, Munich Auto parts non-genuine parts, and other non-genuine parts in the CPO cars at Autobahn Motors.

324.   Defendants' conduct was willful, premediated, done with substantial planning and intentional wrongful conduct, was known to be concealed by the public, was willfully concealed from Plaintiff Fethe in violation of the express rules of the MB CPO program and California Vehicle Code 11713.18 , was done in disregard of Plaintiff Fethe's rights as a purchaser of a CPO cars, was done fraudulently oppressively and wantonly, knowing that Plaintiff Fethe would thereby be harmed, which constitutes a basis for punitive damages pursuant to California Civil Code Section 3294 in an amount according to proof.

325.   Pursuant to Cal. Civ. Code § 1780, any consumer who suffers damage as a result of the use or employment of any act or practice declared unlawful by § 1770, may recover actual damages, restitution, punitive damages and injunctive relief.

326.   Plaintiff Fethe requests actual damages and restitution, including without limitation any diminution of value (both actual value and resale value for his CPO Vehicle).

327.   WHEREFORE Plaintiffs pray for judgment as set forth below.

## COUNT XIII
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROVESSIONS CODE SECTION 17200
### FOR VIOLATIONS OF CALIFORNIA VEHICLE CODE SECTION 11713.18
#### (Individual Claim of Plaintiff Harold Fethe Against All Defendants)

328.   Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

329.   Business & Professions Code § 17200, et seq., the UCL, prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200, as including any "any unlawful, unfair or fraudulent business act or practice . . .."

330.   California Vehicle Code Section 11713.18 makes it illegal to sell a certified automobile under certain circumstances, including as follows:

It is a violation of this code for the holder of any dealer's license issued under this article to advertise for sale or sell a used vehicle as "certified" or use any similar descriptive term in the advertisement or the sale of a used vehicle that implies the vehicle has been certified to meet the terms of a used vehicle certification program if any of the following apply:

\*\*\*

(6)  Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected.

\*\*\*

(9)  The term "certified" or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of

70

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

subdivision (a) of Section 11713 of this code or Section 17200 or 17500 of the Business and Professions Code."

331.     A violation of § 11713.18 is *per se* actionable under the California Unfair Competition Law Section 17200.

332.     Plaintiff Fethe falls within the above definition, having purchased a CPO Program vehicle from Defendants.

333.     In violation of § 11713.18(6), Autobahn failed to provide buyers of CPO Program vehicles like Plaintiff Fethe with the required inspection report indicating the components inspection and listing any non-Genuine parts.  Thus, the sales transaction with Plaintiff Fethe was made in violation of § 11713.18(6).

334.     Furthermore, Autobahn at the direction of Sonic, also used the term "certified" in an untrue and misleading manner by presenting the vehicle sold to Plaintiff Fethe as compliant with the MB USA CPO Program, while knowing that non-Genuine parts were installed in the re-conditioning process in direct violation of the CPO Program directives.

335.     The CPO program is administered by MB USA through its agents, Autobahn Motors and Sonic.  The warranty is given by MB USA, but is actually issued through its agent(s) Autobahn Motors, whereby Autobahn Motors actually performs the entire CPO vehicle reconditioning and certification process, and issues a MB USA CPO warranty on behalf of MB USA.

336.     Under the Mercedes-Benz/Autobahn Motors CPO program rules, published at the MB USA website, only OEM parts are to be used in the re-conditioning process. The MB USA guidebook states at page 7:  "Quality Certified Mercedes-Benz Technicians perform repairs using only genuine Mercedes-Benz Parts, exchange units, and factory-approved accessories."

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

337.   In addition to simply installing non-conforming non-Genuine parts, Defendants deliberately misrepresent that zMAX was a Genuine Mercedes-Benz approved product when placed into CPO Program vehicles.

338.   Sonic Automotive is sued herein based on its conduct in aiding and abetting the fraudulent conduct of Autobahn Motors and its other California dealerships in misrepresenting the CPO Program vehicle sold to Plaintiff Fethe.

339.   MB USA clearly states in its the owners' manuals and on its website, that oil additives are prohibited, and that damage to the car from the use of oil additives will be excluded from MB USA warranty coverage on the automobile.

340.   Defendants intentionally concealed the use of non-Genuine parts in the CPO Program vehicle sold to Plaintiff Fethe and the impact on the MB USA warranty.

341.   Defendants have actively concealed the above described facts, and have prevented Plaintiff Fethe from discovering the truth, by refusing to provide CPO checklist documents showing the use of Non-Genuine products as described above and as mandated by California Vehicle Code Section 11713.18.

342.   As a proximate result of Defendants' conduct described herein, Plaintiff Fethe has been actually damaged in an amount according to proof.

343.   Defendants conduct was willful, deceptive, fraudulent, and was done with premeditation, and deliberate indifference to the statutory obligations placed upon them and the rights of Plaintiff Fethe, which warrants the imposition and award of punitive damages in an amount according to proof.

344.   WHEREFORE Plaintiffs pray for judgment as set forth below.

**COUNT XIV**

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

**NEGLIGENCE**
**(Individual Claim of Plaintiff Harold Fethe against All Defendants)**

345.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

346.    Defendants' conduct was careless, reckless, and in breach of Defendants' duty owed to Plaintiff Fethe, and in violation of California Civil Code 1714(a).

347.    Defendants negligently each and all took steps to conceal the true facts about the use of zMAX and other non-OEM/non-genuine products on MB USA warranties, and similar warranties given by third parties.

348.    Autobahn Motors and Sonic Automotive have breached the duty of due care owed pursuant to Civil Code Section 1714(a) by negligently and wrongfully marketing, distributing, selling, and placing zMAX into automobiles, knowing that in so doing, the manufacturer's certified pre-owned warranties, or such similar warranties issued by third parties, are thereby rendered void or voidable at the option of the warrantor.  One such warrantor and beneficiary of this negligence is Defendant MB USA, who, if it stands by and does nothing, gets the advantage of voiding any warranty claims due to the prohibited use of zMAX.

349.    MB USA committed negligence based on its ICRs, and by failing to enforce its own policies and procedures regarding repairs, the use of non-Genuine Mercedes parts by authorized Mercedes dealerships, and the use of an oil additive (zMAX) by authorized Mercedes dealerships.

350.    MB USA had a legal duty pursuant to Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiff Fethe.

351.    MB USA breached this duty by the conduct described in the common allegations of fact above.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

352.    MB USA was further negligent in that it knew full well through VMI reports, and the pendency of this very litigation, that Sonic Automotive, Speedway Motorsports, and dealers owned by Sonic Automotive were and still are actively, selling, and marketing zMAX in a manner that is expressly prohibited by the automobile manufacturers' warranty.

353.    The Defendants' use of zMAX renders both Mercedes warranties  and third-party warranties void or voidable at the option of MB USA and/or any third-party warrantor, by the express terms of the warranties.

354.    An exemplar of a third party pre-owned car warranty is Easy Care Warranty, which is a warranty product offered for sale through Sonic Automotive.  This Easy Care warranty held by Plaintiff Harold Fethe states:

> "YOU must follow YOUR VEHICLE manufacturer's maintenance guidelines to avoid denial of a claim because of improper maintenance."

355.    MB USA is the party issuing a CPO warranty, at a time when it simultaneously receives actual knowledge through the VMI process that at a time either before the sale of a car, or during the pendency of the warranty, zMAX was added into the car by Autobahn Motors (as in the case of Fethe).

356.    MB USA is motivated by its own economic interest, because, as described above, it is a beneficiary of the scheme and benefits from standing idly by while its certified pre-owned warranties become void or voidable at its options.

357.    Autobahn Motors had a legal duty pursuant to California Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiff Fethe.

358.    Autobahn Motors has brought forward an objectively reasonable expectation by its CPO customers and repair customers that genuine Mercedes-Benz parts will be used and that non-

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

approved parts will not be used. By virtue of this legal duty, Autobahn Motors has an affirmative duty to inform customers, including Plaintiff Fethe, of the use of non-genuine parts. Autobahn Motors has a legal duty not to use non-approved fuel additives like zMAX and MOC products.

359.    Sonic Automotive had a legal duty pursuant to Civil Code section 1714(a) to use reasonable care to prevent harm to Plaintiff Fethe.

360.    Sonic Automotive breached its duty of reasonable care by requiring Autobahn Motors to regularly purchase and use various non-genuine parts in the CPO reconditioning process, including in the CPO vehicle sold to Plaintiff Fethe.

361.    Plaintiff Fethe, who unknowingly received zMAX as it was placed in the car he purchased as a CPO from Autobahn suffered the following harm proximately caused by all Defendants:  Plaintiff Fethe had his Certified Pre-owned warranties issued by MB USA or other third-party warrantors, rendered void and/or voidable at the option of MB USA or other third-party warrantor.  The warranty was thereby transformed from a solid and enforceable, to that of warranty enforceable at the option of the warrantor.  The status/ existence/nature/and pendency of a pre-owned automobile's warranty is extremely significant aspect concerning the value of that car.

362.    Plaintiff Fethe seeks statutory damages, and such other relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, or such other equitable relief as the Court deems appropriate.

363.    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## COUNT XV
## UNJUST ENRICHMENT
### (Individual Claim of Plaintiff Harold Fethe Against All Defendants)

364.    Plaintiffs incorporate by reference paragraphs 1 through 158 as if fully set forth herein.

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

365.    All Defendants have benefitted from selling and leasing CPO Class vehicles whose value was artificially inflated by Defendants' concealment of the non-OEM parts and products installed in the vehicles, and Plaintiff Fethe overpaid for his CPO vehicle.

366.    All Defendants have received and retained unjust benefits from Plaintiff Fethe, and inequity has resulted.

367.    It is inequitable and unconscionable for Defendants to retain these benefits.

368.    Because Defendants concealed their fraud and deception, Plaintiff Fethe was not aware of the true facts concerning his CPO vehicle, and did not benefit from Defendants' misconduct.

369.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

370.    As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff Fethe, in an amount to be proven at trial.

371.    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS pray for relief as follows:

1.  For compensatory and consequential damages as to each claim for relief allowing damages, as described above, in an amount according to proof.

2.  For prejudgment interest in an amount according to proof.

3.  For exemplary damages against each and every Defendant pursuant to CC Section 3294 based on the intentional, oppressive, and fraudulent misconduct described above.

4.  For injunctive relief as to each claim for relief allowing for injunctive relief, as requested above, or such other injunctive relief as the court deems just and proper.

5.  Plaintiffs request injunctive relief for violations of the CLRA Civil Code Section 1770 and B&P Code section 17500 as requested above.

76

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

6.  Plaintiffs request the following equable remedies for their claims of violation of B & P Code Section 17200, as requested above, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief, restitution or such other equitable relief as the Court deems appropriate

7.  For Defendants Autobahn Motors and Sonic Automotive to provide an accounting of all profits earned as a result of their mutual transactions pursuant to CCP section 872.140 and B&P Code Section 17200.

8.  For attorneys' fees pursuant to the CLRA Civil Code Section 1770, B & P Code Sections 17200 and 17500. The request for reimbursement/payment of attorneys' fees is based on the common fund doctrine in an amount according to proof.

9.  For litigation costs.

10. For such other relief as the Court deems just and appropriate.

## JURY DEMAND

PLAINTIFFS demand a trial by jury as to all claims for relief triable before a jury.

Respectfully submitted,

//s// Herman Franck

Date:   February   6,   2018

Herman Franck, Esq.
Franck & Associates

//s// Brian W. Warwick

Brian W. Warwick, (Admitted Pro Hac Vice)
bwarwick@varnellandwarwick.com
Janet R. Varnell, (Admitted Pro Hac Vice)
jvarnell@varnellandwarwick.com
David Lietz (Admitted Pro Hac Vice)
dlietz@varnellandwarwick.com
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600

*Ferrari v. Autobahn Motors.*
Third Amended Complaint

1   Facsimile: (352) 504-3301

2

3   Attorney for Plaintiffs
    STEVE FERRARI and MIKE KEYNEJAD,
    PATRICIA RUBIN, HAROLD FETHE,
4   JOHN DIAZ, AND RAY GAPASIN, individually and as
    representatives of the Class of Persons Similarly Situated;
5   along with individual Plaintiffs, HOOSHANG OWZA,
    CELSO FRAZAO,RENUKA NARAYAN,
6   GERTRUD FRANKRONE, ERNEST SALINAS,
7   KALKHUSAN SAREEN, HOSSEIN JALALI,
    RON WOLFE, SOHRAB RAHIMZADEH,
8   FRED GRANT, ESTER GRANT, VINCENT LEUNG,
    JESSICA LANGRIDGE, TONY NICOLOSI,
9   DONALD LYANG, and ARTUR SEMICHEV

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   78
    *Ferrari v. Autobahn Motors.*
    Third Amended Complaint
28