1 Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
2 **FRANCK & ASSOCIATES**
910 Florin Road, Suite 212
3 Sacramento, CA 95831
Tel. (916) 447-8400; Fax (916) 447-0720
4

5 Janet R. Varnell, (Admitted Pro Hac Vice)
Brian W. Warwick, (Admitted Pro Hac Vice)
David Lietz (Admitted Pro Hac Vice)
6 **VARNELL & WARWICK, P.A.**
P.O. Box 1870
7 Lady Lake, FL 32158
Telephone: (352) 753-8600
8 Facsimile: (352) 504-3301

9 Attorneys for Plaintiffs Steve Ferrari, et al.

10                          UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12 | STEVE FERRARI, et al.,                    | Case No. 17-CV-00018-YGR |

13                        Plaintiffs,

14 v.                                          **PLAINTIFFS' MEMORANDUM OF
                                               LAW IN SUPPORT OF PRELIMINARY
                                               APPROVAL OF PRO TANTO CLASS
15 Autobahn, Inc. dba Autobahn Motors;         ACTION SETTLEMENT**
   Mercedes-Benz USA, LLC; and SONIC
16 AUTOMOTIVE, INC.,                           The Honorable Yvonne Gonzalez Rogers
                                               Date: July 10, 2018
17                        Defendants           Time: 2 P.M.
                                               Courtroom: 1
18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Plaintiffs submit this memorandum in support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement.  Under the terms of the Settlement Agreement ("Agreement," or "Settlement" filed concurrently herewith) between Plaintiffs Ferrari, Keynejad, Diaz, Rubin, Fethe, and Gapasin (collectively, "Plaintiffs" or "Named Plaintiffs") and Defendants Autobahn Motors and Sonic Automotive Inc. ("Autobahn") (collectively referred to herein as the "Autobahn Defendants"), the Autobahn Defendants have agreed to provide substantial benefits to Settlement Class members to resolve this Lawsuit.  The Agreement contains all of the material terms of the settlement, including the manner and form of notice to be provided to the Settlement Class, the conditions or contingencies pertaining to the settlement's final approval, and other necessary and proper terms under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

The Settlement resolves all claims against the Autobahn Defendants, as well as some of the claims against Defendant Mercedes-Benz USA, LLC (MBUSA).   Significantly, the Settlement does not impede Plaintiffs ability to continue to pursue their superiority and longevity claims against MBUSA.  In order to effectuate the Settlement, if approved, Plaintiffs and the Autobahn Defendants will seek a partial judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the claims resolved by the agreement.

As set forth below, the Settlement meets the criteria for preliminary approval, and is well within the range of what might be approved as fair, reasonable, and adequate.  As such, Plaintiffs respectfully move this Court to enter the Proposed Preliminary Approval Order.  (Attached as Exhibit E to the Joint Motion).

## II.     PROCEDURAL HISTORY

This lawsuit has a long and tortured history, including years of extensive merits discovery and two trials in related litigation.  When this action was first filed by Plaintiffs on September 24, 2015, its primary focus was on federal RICO claims asserted under 18 U.S.C. § 1961 et al. (Case No. 4:15-cv-04379-YGR).  However, on December 12, 2016, the federal court dismissed with prejudice the federal claims and dismissed the state law claims without prejudice. (Doc. 117).

The state law claims were re-filed in state court and Defendants removed the action to federal court under the Class Action Fairness Act.  (Doc. 1).  The First Amended Complaint was filed on January 25, 2017 (Doc. 14) and the Autobahn Defendants' Motion to Dismiss the First

Amended Complaint was filed on February 14, 2017 (Doc. 26).  By order dated July 21, 2017, the Court granted in part and denied in part the Autobahn Defendants' motion.  (Doc. 64).  Plaintiffs were granted leave to amend their Complaint.  Plaintiffs' Second Amended Complaint was filed on August 8, 2017.  (Doc. 69).

On September 5, 2017 the Autobahn Defendants filed a Motion to Compel Arbitration, to Dismiss and to Stay Further Proceedings regarding Plaintiff's Second Amended Complaint. (Doc. 82).  However, before the Court ruled on this motion, Plaintiffs requested leave of Court to file a Third Amended Complaint, which substantially clarified the claims and narrowed the scope of the class action.  (Doc. 104).

While Defendant's motion was pending, the parties engaged in the first mediation on November 8, 2017, before the Hon. Raul Ramirez of ADR Services, Inc.  The case did not settle at that time.

By order dated January 18, 2018 (Doc. 117) this Court granted the Autobahn Defendant's motion to compel arbitration as to some of the Plaintiffs, again denied in part and granted in part the Autobahn Defendant's motion to dismiss, and again allowed Plaintiffs leave to amend.  Plaintiffs' Third Amended Complaint was filed on February 6, 2018.  (Doc. 126).

On January 29, 2018, this Court entered an Order (Doc. 129) staying proceedings to permit Plaintiffs and the Autobahn Defendants to participate in a further mediation session with Judge Ramirez.  The second mediation session was held on March 9, 2018.  As a result of this second mediation session, Plaintiffs and the Autobahn Defendants reached a class settlement that resolves all claims against the Autobahn Defendants as well as some of the claims against MBUSA.

III.    SUMMARY OF THE SETTLEMENT

The proposed Settlement can be summarized in chart form as follows:

| | |
|---|---|
| **Preapproval Stage** | **Postclaim Filing Audit** |
| **Ferrari v. Autobahn, Inc.** | **Ferrari v. Autobahn, Inc.** |
| *All figures are best estimates as of May 24, 2018* | *All figures are actual amounts as of XXXXXX* |

**Preapproval Stage**

**Ferrari v. Autobahn, Inc.**

*All figures are best estimates as of May 24, 2018*

| | % Settlement |
|---|---|
| **Total settlement** $1.97M-2.35M | 100% |
| **Net class voucher benefits** $1.24M-$1.62M* | 63%-69% |
| Expected voucher payout $1.24M-$1.62M | |
| Class Mbrs 54,050 | |
| Total median benefit per class mbr $23-$30** | |
| Class 1 -- 53,027 mbrs -- $1.17M | |
| Class 2 -- 9,377 mbrs -- $0.38M | |
| Class 3 -- 2,926 mbrs -- $0.07M | |
| Projected number of claims: 0-9,377 | |
| Class 1 -- N/A - all mbrs receive benefits | |
| Class 2 -- [0 - 9,377] | |
| Class 3 -- N/A - all mbrs receive benefits | |
| **Expected residual** $0 | 0% |
| Expected cy pres -TBD - $0 | |
| Expected reversion $0 | |
| **Attorney fees requested** $0.58M | 24%-29% |
| Lodestar $_____M*** | |
| Hours _____ | |
| Melded billing rate $_____/hr | |
| Multiplier _____ | |
| **Attorney costs** <$0.1M | 1% |
| **Administrative costs** $0.11M | 5% |
| **Class representative awards** <$0.1M | 1% |

The median distribution to class members is
estimated to be Vouchers totaling **$23-30**.

*\* Redeemable for total cash of $518K - $668K.*
*\*\* Settlement per class member is a median; actual*
*individual payout may be higher or lower*
*depending on factual circumstances.*
*\*\*\* Loadstar exceeds fees requested and*
*will be documented in a later filing.*

**Postclaim Filing Audit**

**Ferrari v. Autobahn, Inc.**

*All figures are actual amounts as of XXXXXX*

| | % Settlement |
|---|---|
| **Total settlement** | 100% |
| **Net class voucher benefits** | |
| Actual voucher payout | |
| Class Mbrs _____ | |
| Settlement per class mbr _____ | |
| Actual number of claims _____ | |
| **Actual residual** ____ | |
| Actual cy pres -_____ - $____ | |
| Actual reversion $____ | |
| **Attorney fees approved/paid** $_____ | |
| Lodestar $____M | |
| Hours ___,_____ | |
| Melded billing rate $____/hr | |
| Multiplier ___ | |
| **Attorney costs paid** $_____ | |
| **Administrative costs paid** $_____ | |
| **Class rep awards approved/paid** $_____ | |

The proposed Settlement contains the following material terms:

**<u>Settlement Class</u>**

The proposed Settlement Class is defined as follows:

All consumers who during the Class Period received service from Autobahn, together with all consumers who purchased a CPO automobile[1] from Autobahn during the period January 1, 2007 through December 31, 2012.

The "Class Period" is January 1, 2005 through February 28, 2018.

---

[1] CPO stands for "Certified Pre-Owned."

### **Subclasses and Settlement Consideration**

The settlement consideration consists of multiple components. The Settlement Class is broken down into three classes, two of which are further divided into subclasses with corresponding Settlement Benefits. Class 1 is the "Non-Genuine Parts Class," and is divided into subclasses 1A and 1B depending on the date of the last pertinent transaction. Class 2 is the "zMAX Class." Class 3 is the "CPO Class" and is divided into subclasses 3A and 3B depending on the date of the last pertinent transaction. A Settlement class member may fall under more than one Class.

Each member of Class 1 and 3 will receive an Autobahn Service Voucher that can be used just like cash to purchase goods or services offered by Autobahn. Alternatively, the Vouchers can be exchanged for a cash redemption amount. The amount of each Voucher and/or cash redemption amount is determined by class membership, the date of the pertinent transactions, and for Class 1, the number of service visits by the class member as indicated in Autobahn's service records.

Each member of Class 2 will be provided a claim form to request an Autobahn Service Voucher if the class member states that he or she would not have purchased zMAX or chosen to have it added to their automobiles had they understood that it had not been endorsed or approved by MBUSA. Class 2 members may choose to use the Autobahn Service Voucher towards service at Autobahn or redeem it for cash.

Due to the additional defenses available to the Autobahn Defendants regarding claims beyond the limitations period, vouchers based on service conducted prior to 2011 are for lesser amounts than vouchers based on service conducted more recently.

The Subclass definitions and Subclass Benefits under the Settlement are as follows:

      a.  <u>Class 1A</u>:  All Settlement Class members who last serviced automobiles at Autobahn on or after January 1, 2011.

          i.  a voucher for $20.00 towards any service at Autobahn (with a cash value of $8.22) if such class member visited Autobahn for service 1–3 times; or

         ii.  a voucher for $30.00 towards any service at Autobahn (with a cash value of $12.33) if such class member visited Autobahn for service 4–6 times; or

       iii.  a voucher for $40.00 towards any service at Autobahn (with a cash value of $16.44) if such class member visited Autobahn for service 7–9 times; or

      iv.  a voucher for $50.00 towards any service at Autobahn (with a cash value of $20.55) if such class member visited Autobahn for service 10 or more times.

b.  <u>Class 1B</u>:  All Settlement Class members who last serviced their automobiles at Autobahn during the period January 1, 2005 through December 31, 2010.

      i.  a voucher for $5.00 towards any service at Autobahn (with a cash value of $2.34) if such class member visited Autobahn for service 1–3 times; or

      ii.  a voucher for $7.50 towards any service at Autobahn (with a cash value of $3.51) if such class member visited Autobahn for service 4–6 times; or

      iii.  a voucher for $10.00 towards any service at Autobahn (with a cash value of $4.67) if such class member visited Autobahn for service 7–9 times; or

      iv.  a voucher for $12.50 towards any service at Autobahn (with a cash value of $5.84) if such class member visited Autobahn for service 10 or more times.

c.  <u>Class 2</u>:  All Settlement Class members who purchased a fluid known as zMAX from Autobahn in conjunction with service at Autobahn during the Class Period according to Autobahn's records, together with all Settlement Class members who purchased from Autobahn a CPO automobile on or after January 1, 2007, into which zMAX may have been added during the reconditioning process.

      A Claim Form to make a claim for a voucher for $40.00 towards any service at Autobahn (with a cash value of $15.98).  The claim form allows eligible class members to attest that they would not have purchased zMAX or chosen to have it added to their automobiles had they understood that it has not been endorsed or approved by MBUSA.

d.  <u>Class 3A</u>: All Settlement Class members who last purchased a CPO automobile from Autobahn during the period January 1, 2011 through December 31, 2012.

      i.  a voucher for $50.00 towards any service at Autobahn (with a cash value of $20.55).

e.  <u>Class 3B</u>: All Settlement Class members who last purchased a CPO automobile from Autobahn during the period January 1, 2007 through December 31, 2010.

i.  a voucher for $12.50 towards any service at Autobahn (with a cash
value of $5.84).

Each Settlement Class member may elect to redeem any vouchers issued to him or her for the cash value by mailing the original voucher with the redemption portion completed to the Settlement Administrator by U.S. Mail.  Any voucher redeemed by a class member for a check must be sent to the Settlement Administrator and must be postmarked no later than 90 days from the issuance date of the voucher.

### Attorney Fees, Costs and Incentive Awards

Class Counsel shall file a motion for attorneys' fees not to exceed $577,000 ("Attorney Fees") and reimbursement of customary, reasonable, and documented out-of-pocket expenses not to exceed $22,000 ("Costs").

The Named Plaintiffs (who represented the Settlement Class, participated in discovery, and attended mediation), shall petition this Court for an Incentive Award as follows:  Ferrari - $2,500; Keynejad - $8,000; Rubin - $2,500; Fethe - $4,000; Diaz - $5,000; and Gapasin - $2,500. The amounts negotiated for each Named Plaintiff reflect the substantial time expended by the Named Plaintiffs assisting Class Counsel in pursuit of this action on behalf of the Class, assistance at mediation, and personally participating in discovery (including preparing for and participating in one or more depositions and/or trial examinations in related cases).[2]

The Named Plaintiffs and Plaintiffs' Counsel recognize that the Court has discretion in determining whether to award these amounts and the Settlement is not contingent on the Court's approval of those amounts.  The amounts the Court ultimately awards in Attorney Fees, Costs, and Incentive Awards will not reduce the amount of the Vouchers provided to Settlement Class members.

## IV.    STANDARD OF REVIEW FOR CLASS SETTLEMENTS

Federal Rule of Civil Procedure 23(e), requires judicial approval for any settlement agreement that will bind absent class members.  *See* Fed. R. Civ. P. 23(e); *see also Briggs v. United States*, No. C 07–05760 WHA, 2010 WL 1759457, at *3 (N.D. Cal. Apr. 30, 2010).  It is well-settled in the Ninth Circuit that settlements are favored, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

---

[2] The Autobahn Defendants and Plaintiffs agreed that depositions taken in a related state case
could be used in this litigation as well.

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  These economic gains multiply in pre-certification settlements since class certification undeniably represents a significant risk for Plaintiffs.  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007).

A court must take three steps in considering approval of a proposed settlement: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of it; and (3) a final hearing must be held, after which the court must decide whether the tentative settlement is fair, reasonable, and adequate.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632, at 320-21 (4th ed. 2004) ("MANUAL (FOURTH)").  The decision to approve a proposed class-action settlement is within the sound discretion of the district court judge who "is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *accord Bruno v. Quten Research Inst., LLC*, No. SACV 11–00173 DOC (Ex), 2013 WL 990495, at *1 (C.D. Cal. Mar. 13, 2013).

The sole inquiry at the preliminary-approval stage is "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  But the ultimate question of fairness, reasonableness, and adequacy is answered at the final-approval stage, after notice of the settlement has been given to class members and they have had an opportunity to comment on the settlement. *See* 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 23.83(1), at 23-336.2 to 23-339 (3d ed. 2002).  Preliminary approval is merely the prerequisite to providing notice to the class so that all class members are "afforded a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *see also Misra v. Decision One Mortgage Co.*, No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276, at *3, 9 (C.D. Cal. Apr. 13, 2009) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." (emphasis in original; citation omitted)).

Courts have consistently noted that the standard for preliminary approval is less rigorous than the analysis at final approval.  Preliminary approval is appropriate as long as the proposed

settlement falls "within the range of possible judicial approval." A. CONTE & H.B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) ("NEWBERG") (*citing* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (3d ed. 1995) ("MANUAL (THIRD)")); MANUAL (FOURTH) § 21.632, at 321. Courts employ a "threshold of plausibility" standard intended to identify conspicuous defects. *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at \*6 (N.D. Cal. June 19, 2007). Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the court should order that notice of a formal fairness hearing be given to settlement class members under Rule 23(e). *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at \*11 (E.D. Cal. June 13, 2006) (citation omitted); MANUAL (FOURTH) § 21.632, at 321-22.

## V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a Settlement Class is appropriate where the class meets the requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation), *and* the requirements of Rule 23(b)(3) (common questions of law or fact predominate and the class action is superior to other available methods of adjudication). *Hanlon*, 150 F.3d at 1019. In this Lawsuit, the proposed Settlement can and should be properly certified under Rule 23(b)(3).

### A.   The Requirements of Rule 23(a) are satisfied.

#### 1.   Numerosity

The numerosity requirement of Rule 23(a) requires that membership within the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Discovery exchanged during settlement negotiations indicates that there are approximately 54,050 total members of the Settlement Class with some members belonging to more than one subclass. Joining tens of thousands of individuals is obviously not only impracticable, but likely impossible. Thus, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1). *Hanlon*, 150 F.3d at 1019.

#### 2.   Commonality

There are clearly questions of law and fact common to the Settlement Class sufficient to satisfy Rule 23(a)(2). The Rule 23(a)(2) commonality threshold is easily met where, *as here*, the same common nucleus of facts will prove each class member's claim. *See Parra v. Bashas's Inc.*, 2008 U. S. App. LEXIS 15985, \*8 (9th Cir. July 29, 2008) (*citing Hanlon*, 150 F.3d at 1019) (Under Rule 23(a)(2) not all questions of fact and law need be common).

As discussed in the introduction above, the claims against the Autobahn Defendants stem from Autobahn's alleged use of non-Genuine parts in the service and repair of customer vehicles. Plaintiffs alleged that Autobahn did not sufficiently disclose when customers received non-Genuine parts, at least until 2013.

Common questions in this Lawsuit include:

a.       Whether Defendants charged customers for Genuine Mercedes-Benz parts, but installed non-Genuine parts without adequate disclosure;

b.       Whether Defendants breached contracts with customers by allegedly charging Genuine Mercedes-Benz part prices for non-Genuine parts;

c.       Whether Defendants breached contracts with service customers by allegedly installing zMAX without adequate disclosure;

d.       Whether Defendants' alleged practice of using non-Genuine parts without adequately informing their customers is an unfair and/or deceptive trade practice in violation of  California Vehicle Code 11713.18, thereby violating California Code section 17200;

e.       Whether Defendants' alleged practice of installing zMAX without adequate disclosure  constitutes an unfair and/or deceptive practice in violation of California Vehicle Code 11713.18, thereby violating California Code section 17200;

f.       Whether Defendants' alleged practice of charging Genuine Mercedes-Benz part prices for non-Genuine parts violates Business & Professions Code Section 17500;

g.       Whether Defendants were unjustly enriched by their alleged wrongful conduct; and

h.       Whether Defendants negligently breached a duty to provide Genuine Mercedes-Benz parts to customers.

### 3. Typicality

The Rule 23(a)(3) requirement of typicality is also clearly satisfied here.  Typicality is satisfied when the representative's claims are reasonably co-extensive with those of absent class members, when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the liability.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1019.  In this Lawsuit, the claims of the Named Plaintiffs and the Settlement Class members arise from the same alleged course of events: (1) that the Autobahn Defendants allegedly charged Genuine Mercedes-Benz part prices for non-

Genuine parts in the repair and service of customer vehicles; (2) that the Autobahn Defendants allegedly used zMAX without adequate disclosure; and (3) the Autobahn Defendants allegedly used non-Genuine Parts when refurbishing CPO vehicles.

All named Plaintiffs alleged that their vehicles were serviced by Autobahn during the time period that Autobahn was using non-Genuine parts, and they all therefore represent the Non-Genuine Parts Class (i.e., Class 1).  Plaintiff Gapasin alleges that zMAX was installed in his vehicle during service, and he therefore also represents the zMAX Class (i.e., Class 2).  Plaintiff Fethe alleges that he purchased a CPO vehicle from Autobahn into which zMAX was allegedly installed, and he therefore also represents the CPO Class (i.e., Class 3).  Because these claims are based upon standard practices, the claims of the named class representatives are typical of the class(es) they seek to represent.

### 4. Adequacy

The adequacy prong of Rule 23(a)(4) is satisfied where the attorney (or attorneys) representing the class is qualified and competent, and the class representatives have no interests antagonistic to those of the Settlement Class members.  *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) (two criteria for determining adequacy are that the named representatives must appear able to prosecute the lawsuit vigorously through competent counsel and representatives must not have interests antagonistic to absent class members).

Here, Class Counsel is well qualified and competent.  Brian Warwick and Janet Varnell and the law firm of Varnell & Warwick, PA came into the case to act as class counsel.  They amended the complaint, narrowed the issues and opened up settlement dialog with the Autobahn Defendants.  Varnell and Warwick have substantial class action experience, as well as the financial and human resources necessary to prosecute this action.  (See Exhibit 1, Declaration of Brian W. Warwick).

Likewise, attorney Herman Franck has litigated this action from the outset and through his investigation and extensive formal discovery in two state court cases involving Plaintiff Keynejad and Autobahn, has gathered the evidence that provided Plaintiffs insight into the facts underlying their claims. (See Exhibit 2, Declaration of Herman Franck). Attorney Franck successfully tried a related case against Autobahn to a jury in September 2017 and also tried a case against MBUSA that elicited testimony helpful to developing the Plaintiffs' claims in this case.  These are counsel who are "prepared to try a case."  See *Hanlon*, 150 F.3d at 1021.

Additionally, the Named Plaintiffs are not subject to any unique defenses that might render their interests antagonistic to those of the Settlement Class members.  Each named Plaintiff purchased a vehicle from Autobahn and/or had a vehicle serviced by Autobahn during the Class Period. Each alleges common claims stemming from Defendant's alleged non-Genuine part practices.

### B.  The Requirements of Rule 23(b)(3) are satisfied

#### 1. Predominance

"The predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir. 2009).  Predominance considers whether "questions of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013). "Thus, this requirement is essentially a heightened commonality inquiry: do the common legal and factual questions appear more significant than the individualized legal and factual questions?" *Thomas v. Baca,* 231 F.R.D. 397, 402 (C.D. Cal. 2005). This analysis starts with the underlying causes of action.  *Erica P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011).

In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the claims can be done through common evidence applicable to the class as a whole, or whether proof will be overwhelmed with individual issues.  *See Hanlon,* 150 F.3d at 1022.  As the Supreme Court has noted, predominance is readily met in cases alleging consumer fraud.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

The legal and factual issues central to each of Plaintiffs' claims are common to all Settlement Class members and predominate over any individualized issues. Plaintiffs' claims here center on Autobahn's alleged practice of using non-Genuine parts in the repair, and service of customer vehicles, and in the reconditioning of CPO vehicles.  While some individual proof might be relevant to determining how much any particular consumer may have paid for a non-Genuine part, that does not preclude class certification.  The amount of damages is invariably an individual question and does not defeat class action treatment. *Trujillo v. City of Ontario*, No. ED cv-04-1015 VAP at 7 (C.D. Cal., Apr. 14, 2005) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

### 2. Superiority

A class action is a vastly superior means, and likely the only practical means, of adjudicating the claims of tens of thousands of class members.   Comparing the available mechanisms for dispute resolution, and where, as here, the individual claims are relatively small when compared to the complexity of the litigation and resources necessary for establishing causation and proof, the class action is clearly superior.  *See Hanlon*, 150 F.3d at 1023.

## VI.   THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

A presumption of fairness for a proposed settlement arises where: (1) the settlement was reached through arm's-length negotiations; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; and (3) counsel is experienced in similar litigation.  *In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, 11-12 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Preliminary approval should be granted where a settlement has no obvious deficiencies and falls within the range of possible approval.  *Alaniz v. California Processing, Inc.* 73 F.R.D. 296, 273 (C.D. Cal. 1976).

### A. The Settlement Negotiations Occurred at Arm's-Length and Were Assisted by an Experienced Mediator

Courts accord "considerable weight" to settlements that are the product of hard-fought negotiations by experienced counsel.  *Ellis,* 87 F.R.D. at 18; *Larsen v. Trader Joe's Co.,* 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014).  Settlements that follow sufficient discovery and genuine arm's-length negotiation are presumed fair.  *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 2003 U.S. Dist. LEXIS 25375, *13 (C.D. Cal. 2004).  When a settlement is achieved through arm's-length negotiations between experienced counsel, the Court should be hesitant to substitute its own judgment for that of counsel absent a showing of fraud, collusion or other forms of bad faith because the "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995)).

As set forth in the Declaration of Class Counsel, the Settlement is the product of hard-fought arm's-length negotiations.  The Parties were aided in this process by a highly respected mediator—Hon. Raul Ramirez (Ret.)—who assisted the negotiations during two separate

mediations.  Warwick Declaration, ¶¶24, 25.  Additionally, counsel for the parties outlined the scope and format of this settlement during a two-day settlement conference in Washington, DC. (*Id.*)  Class counsel has experience in auto litigation and in class action settlements with a similar structure.

Thus, the process pursuant to which the proposed settlement was achieved is a factor weighing in favor of preliminary approval. *Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) (the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive); *see also In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (fact that a settlement was reached through negotiations with an experienced mediator is highly indicative of fairness).

**B. Class Counsel Engaged in Sufficient Discovery to Make an Informed Judgment Concerning the Merits of Their Claims**

The Court need not reach any ultimate conclusions on the contested issues of fact and law underlying the merits of the dispute, for it is the uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Approval of a class action settlement does not require that discovery be formal or exhaustive.  *See Clesceri v. Beach City Investigations & Protective Servs.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." (*quoting Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998))).

Class Counsel firmly believe that the claims in this action have merit and are supported by ample evidence, while at the same time recognizing that the evidence developed through years of discovery indicate that any recovery at trial would not likely exceed the benefits the Settlement Class receives under the Agreement.  Class Counsel have been actively engaged in this litigation for approximately 3 years (dating to the filing of the original action) and more importantly, have been involved in hard-fought related litigation that has progressed through years of formal discovery, two trials, and preparation for a third trial.

More specifically, Plaintiff Keynejad, through counsel Herman Franck, tried a case against Autobahn in connection with a joint advertising program between his company, Eurotech, and Autobahn.  *Maskay Inc. v. Autobahn Motors, Inc.*, Case No. CIV525559 (San

Mateo Cty. Super. Ct.).[3]   Mr. Franck also tried another case brought by Eurotech against MBUSA that elicited documents, deposition testimony and trial testimony highly relevant to the claims here.   Additionally, Autobahn filed a defamation case against Plaintiffs Keynejad and Diaz relating to statements made to the public concerning some of the allegations made in this action.   *Autobahn, Inc. v. Maskay Corporation,* Case No. CIV535413 (San Mateo Cty. Super. Ct.). The defamation case had progressed to jury selection before the case was stayed to allow for settlement negotiations, which resulted in the parties agreeing to the entry of a stipulated judgment with no money changing hands.   (Franck Declaration).   Through those related cases, counsel for the class gathered deposition and trial testimony as well as thousands of pages of discovery and exhibits.   Warwick Declaration at ¶27. As a result, Class Counsel had substantial discovery and documentation when settlement discussions began.   The Third Amended Complaint reflects the breadth of the information obtained.   Thereafter, Autobahn provided additional information to facilitate settlement discussions. (Id.) All of this information educated Class Counsel on the merits of the claims and the damages potentially recoverable at trial.   (Id.) Accordingly, this factor weighs in favor of granting preliminary approval.   *Nat'l Rural Telcoms. Coop.*, 2003 U.S. Dist. LEXIS 25375 at *13.

**C. The Proponents of the Settlement Are Experienced Class Action Litigators**

Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation. *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.   *Clesceri*, 2011 WL 320998, at *10 ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").   Class Counsel have vigorously prosecuted this case from the beginning, and are willing, able, and prepared to litigate this case through trial and beyond.   Varnell & Warwick has considerable experience handling complex class actions in general, and consumer class actions in particular.   See Declaration of Brian W. Warwick at ¶14. This factor weighs in favor of granting preliminary approval.

**D. The Settlement Is Within the Range of Possible Approval**

The predominating issue in Plaintiffs' claims against the Autobahn Defendants is whether and to what extent Autobahn used non-Genuine parts during service and repair without adequate

---

[3] Eurotech prevailed at trial on one of its claims against Autobahn and was awarded $484,913.60 in damages.  Autobahn and Eurotech settled that case and Autobahn has agreed to dismiss its appeal.

disclosure while charging Genuine part prices.  Under the consumer protection laws at issue, damages would be focused on the difference between what the customer received and what the customer reasonably expected to receive, i.e., the price difference between Genuine and non-Genuine parts.  The most frequently scheduled service for a vehicle is an oil change, which involves changing the oil filter.  Discovery revealed the price difference between Genuine and non-Genuine oil filters is on the order of a few dollars.[4]  Prices fluctuated over time and differ for different parts and models, but in general, for most regular maintenance visits, the non-Genuine part "damage" component would only be several dollars per visit.  Calculating individualized damages for each customer would be cost prohibitive given the thousands of individual transactions at issue and more time consuming than the potential damages justify.  Therefore, the Settlement Benefits are based upon average amounts and, for Class 1, the number of visits made by each customer.

Discovery obtained by Class Counsel in related litigation, including documents, deposition testimony, and trial testimony from disinterested, third-party distributors (who sold non-Genuine parts to Autobahn) uncovered the key evidence that Plaintiffs would rely upon at trial in this case to establish the total amount Autobahn spent during the Class Period to purchase non-Genuine parts.  The total *cash redemption value* of the Settlement Benefits to Class 1 corresponds to the estimated total difference in the cost of all non-Genuine parts sold by Autobahn during the Class Period and the cost of the corresponding Genuine parts as indicated by records obtained in discovery.  In other words, the *cash value* of the Vouchers is equal to the amount of damages that Class 1 could be expected to recover at trial, if successful.  The total value of the Vouchers, which may be used to purchase goods and services from Autobahn, is *more than twice* the amount Class 1 could expect to recover at trial.

The Parties also endeavored to reach a reasonable resolution for the zMAX Class.  Some class members knowingly purchased zMAX based upon its advertised benefits, while others may have purchased or received zMAX without a full understanding of what they were getting.  Only the latter class members would be entitled to a monetary recovery; therefore, a Claim Form will be used to allow those class members who would not have purchased zMAX had they understood that it has not been endorsed or approved by MBUSA to self-identify.  The parties

---

[4] By way of example, the price difference between a Mercedes-Benz branded oil filter and an identical OEM substitute made by Mahle at a nationwide retailer was recently $1.05. Similarly, the price difference between a different Mercedes-Benz branded oil filter and its identical OEM substitute made by Mann at that same retailer was $2.98.

agree this is a reasonable way for the zMAX class to be fairly compensated.  A copy of the Claim Form is attached to the Settlement as Exhibit D.

Further, the parties negotiated a Settlement that provides relief to all class members while also taking into consideration Autobahn's assertion that older claims are likely beyond the statute of limitations.  As set forth in Plaintiff's Third Amended Complaint, Plaintiffs have an argument that the limitations period was tolled until the class members discovered the facts underlying their claims.   However, Plaintiffs must acknowledge that such arguments may involve individualized factual issues that would be difficult to establish on a class basis.  Rather than exclude class members with older claims, such that they would receive nothing, Class 1 and Class 3 provide for reduced amounts for class members whose purchase may be beyond the limitations period.  This compromise provides relief for those Settlement Class members while not reducing the settlement benefit disproportionately for Settlement Class members within the limitations period.

Finally, the proposed settlement includes Settlement Class members who could have been excluded due to the arbitration clause in the Autobahn sale contracts.  In its order dated January 18, 2018, this Court determined that the arbitration clause in the Autobahn retail installment agreement required arbitration of claims against Autobahn. (Doc. 117).  The practical effect of that ruling is to prevent class treatment of the claims related to the purchase of CPO cars, eliminating the CPO Class (Class 3) completely from the case.  It would also likely have been a major impediment to the certification of Class 1 and Class 2, or would have required excluding all individuals who purchased or leased vehicles from Autobahn from those classes.  Through negotiation, customers who purchased or leased a vehicle from Autobahn have been brought back into the Settlement Class and shall be eligible to fully participate in the settlement.  Because the expense and effort required to bring such claims individually would likely outweigh any recovery, class members subject to arbitration likely would not take the time to bring such claims.  Accordingly, the only way for the great majority of these class members to benefit is through this Settlement.    The fact that the Settlement provides substantial benefits for class members who otherwise likely would not get any compensation weighs heavily in favor of approval.

Class Counsel worked long and hard to construct a settlement that provides meaningful benefits to all Settlement Class members, that is tailored to remedy the specific issues raised by Plaintiffs' allegations as well as the defenses available to Autobahn.  It is highly unlikely that a

successful result at trial would garner any better result than that achieved by the proposed Settlement. But even if it did, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (*citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)). Given the uncertainties of class certification and trial, the value of the Settlement plainly meets (and exceeds) the adequacy standard and renders this factor supportive of the proposed Settlement.

Furthermore, in evaluating the benefits provided to the Settlement Class members, it is important to note that they will retain the ability to pursue certain claims against MBUSA, specifically, Plaintiffs' claims arising out of MBUSA's advertisement of Mercedes-Benz branded (i.e., Genuine) parts as superior and longer-lasting remain live. Thus, portions of Plaintiffs' CLRA, UCL, FAL, fraud, and negligent misrepresentation claims against MBUSA may go forward despite the settlement with the Autobahn Defendants.

**E. Additional Factors Weighing in Favor of Preliminary Approval**

Although not required to be demonstrated at the preliminary approval stage, the proposed settlement also satisfies many of the other criteria for final approval as being fair, reasonable, and adequate.

Courts in the Ninth Circuit have examined some or all of the following factors in making such a determination: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon,* 150 F.3d at 1026.[5] Factors (1), (4) (5), and (6) are largely discussed above. Factor (8), the reaction of the class to the settlement, can only be determined after notice has been completed.[6] An

---

[5] The Ninth Circuit has stressed that this is not an exhaustive list of relevant considerations, nor even necessarily the most significant factors. *Officers For Justice*, 688 F.2d at 625. Moreover, the relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case. *Id.* The issue is not whether the settlement could be better, but whether it is fair, reasonable, and adequate and free from collusion. *Hanlon*, 150 F.3d at 1027.

[6] Factor (7) does not appear to be pertinent, as no government agency is or was a party to this action.

analysis of factors (2) and (3), further favors preliminary approval of the proposed Settlement.

### 1. The Complexity, Expense, and Likely Duration of the Litigation Favors Settlement

Significantly, despite having a factually well-developed case, there remains significant uncertainty as to the likelihood of success at trial due to the novelty of the factual and legal issues presented.   The Autobahn Defendants deny the factual allegations in the operative complaint and any legal liability arising from those claims.   Regardless, Plaintiffs and the Autobahn Defendants agree that substantial time and expense would be required to take this case to trial and through appeal, and the circumstances and attendant risks favor settlement.   *See Hanlon,* 150 F. 3d at 1026.

Additional discovery would be taken in preparation for class certification briefing and trial.   Warwick Declaration at ¶31.   Any decision on class certification would be subject to appeal pursuant to Rule 23(f).   After appeal, expert reports would be prepared and exchanged. Summary judgment briefs would likely be exchanged and argued, and further time and expense would be endured in preparation for and through the duration of any trial and future appeal.   As such, the proposed settlement offers a compromise that meaningfully addresses the claims at issue in light of the substantial amount of time and expense that would be involved in litigating the claims through trial and appeal.   As a result, this factor weighs in favor of granting preliminary approval.

### 2. The Risk of Maintaining Class Action Status through Trial Favors Settlement

The risks associated with maintaining a class action through trial are a relevant criterion in evaluating the reasonableness of a proposed class action settlement.   *Amchem*, 521 U.S.at 591; *see also In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005).

Plaintiffs anticipate that the Autobahn Defendants would vigorously contest class certification and their briefing of their Motion to Dismiss indicate that they have carefully considered various possible defenses against class certification.   While Plaintiffs believe the criteria of Rule 23 are satisfied here, Plaintiffs recognize the risks inherent in obtaining, and maintaining, class certification.

It should be noted that the requirement of Rule 23 that the class action be "manageable" need not be met in the context of certification of a settlement class. *Amchem*, 521 U.S. at 591.   If this action were to continue, the Autobahn Defendants would likely contend that this case would

present a host of case management problems.

Finally, even if Plaintiffs were successful in obtaining class certification, the Autobahn Defendants would likely pursue an interlocutory appeal pursuant to Rule 23(f).  The outcome of such an appeal would also be uncertain, and, at a minimum, would delay and add complexity and additional risk and cost to the proceedings, delaying or eliminating the possibility of meaningful recovery for Plaintiffs and the Class.

## VII.    THE FORM AND METHOD OF CLASS NOTICE SHOULD BE APPROVED

A Rule 23(e) class notice is sufficient if it informs the class members of the nature of the pending action, the general terms of the settlement, the options available to class members (e.g. submitting a claim form, opting out, and/or objecting), the time and place of the fairness hearing, and ways to obtain more detailed information.   MANUAL (FOURTH) § 21.312.   The distribution of class notice is sufficient if it is given in a form and manner that does not systematically leave an identifiable group without notice.  *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1027-1028 (N.D. Cal. 1999) (*quoting Officers for Justice*, 688 F.2d at 624).  Due process requires only a procedure reasonably calculated to reach class members. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

More specifically, Rule 23(c)(2)(B) requires the notice directed to the class to clearly, and in concise, plain, easily-understood language state: (a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defense; (d) that a class member may enter an appearance through an attorney if he or she desires; (e) that the court will exclude any member of the class upon request; (f) the method and time to request exclusion; and (g) that the judgment will be binding on class members.  Here, the Parties strictly adhered to these requirements.

To start, the Parties have developed a multi-part Notice Plan which involves direct notice, email notice and US Mail.  The Autobahn Defendants retain service records for repair customers within its customer database, and use this information, including email addresses, to regularly interact with their customers.  (Declaration of Chuck Lee).  As a result, class members for whom Autobahn has valid email addresses will receive notice via email.  Class members without a valid email on file will be issued notice by US Mail.  Additionally, a Settlement Website will be created. Autobahn will also provide notice to the relevant governmental agencies pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b).  This multi-step approach is reasonable given the information available on Settlement Class members and the circumstances of this case.  *See*

*Spann v. J.C. Penney Corporation*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving email and postcard notice plan); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 151 (E.D. La. 2013) (approving email and post card notice plan.).   Accordingly, providing notice to the Class through email is preferable and will cost only a fraction of the cost of regular mail.

The email notice and US Mail notice will be issued in the form of Exhibits B and C to the Joint Declaration.   Approximately 22% of the class members will receive notice by regular mail in the first instance.   The email and mailed Notices will both provide information to allow class members to obtain more detailed information from the website.   *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974) (individual mailed notice is the best practicable notice with respect to those class members whose names and addresses are easily identifiable); *Boggess v Hogan* 410 F Supp 433, 442 (N.D. Ill. 1975) (Rule 23(e) is not violated where notice of settlement is individually mailed but never published).

More specifically, the settlement website will: (1) provide full details of the benefits available under the Settlement; (2) explain the rights of Settlement Class members to object to or opt out of the Settlement, (3) clarify that no further notice will be provided to them and that the Settlement has been preliminarily approved, and (4) inform Settlement Class members that they should monitor the Settlement Website for further developments.   The Long Form Notice for the Settlement Website was attached as Exhibit B (Doc. 136-2) to the previously-filed Motion for Preliminary Approval.

Accordingly, the proposed Notice Plan describes the proposed Settlement and sets forth, among other things: (1) the nature, history and status of the litigation; (2) the definition of the proposed Class; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement; (5) the Class claims and issues; (6) the parties' disagreement over damages and liability; (7) the plan for distributing the Settlement to the Class;  (8) the maximum amount of Attorney Fees and Costs that Class Counsel intends to seek; (9) the maximum amount of Named Plaintiffs' request for incentive awards; and (10) the date, time, and place of the final settlement hearing.

Further, the proposed Notice Plan discusses the rights Settlement Class members have in connection with the Settlement, including: (1) the right to request exclusion from the Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement; and (4) instructions on how to complete a zMAX Claim Form.   The Notice

Plan also provides contact information for Class Counsel and counsel for the Autobahn Defendants, as well as the postal address for the Court.

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").  As detailed above, the Notice Program proposed in connection with the Settlement more than satisfies the requirements of the Federal Rules of Civil Procedure and due process.  Moreover, courts routinely find that comparable notice procedures meet the requirements of Rule 23 and due process.  Accordingly, in granting preliminary approval of the Settlement, Plaintiffs respectfully requests that the Court also approve the proposed form and method of giving notice to the Class as set forth herein.

## VIII.  INCENTIVE AWARDS TO NAMED PLAINTIFFS AND ATTORNEYS' FEES AND COSTS

Class Counsel is entitled to compensation and reimbursement of expenses for bringing the case and obtaining a fair, reasonable and adequate settlement. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1997) (attorneys' fees are recoverable where plaintiff has maintained a suit that confers a common benefit). The Settlement Agreement provides that the Autobahn Defendants will not oppose Class Counsel's application for an Attorney Fee and Costs award in the amount of $599,000.  As will be set forth in Class Counsel's subsequent motion, this amount of attorney fees is less than the Lodestar for Class Counsel.  Certainly, this Court is aware of the evidentiary submissions by Plaintiffs and the factual assertions made throughout the operative Complaint.  There is no dispute that an extraordinary amount of attorney time was spent gathering evidence in this matter.

The Settlement Agreement also provides that Class Counsel will submit applications for, and the Autobahn Defendants will not oppose, Incentive Awards for Plaintiffs in the following amounts: Ferrari - $2,500; Keynejad - $8,000; Rubin - $2,500; Fethe - $4,000; Diaz - $5,000; and Gapasin - $2,500.   These proposed Named Plaintiffs' Incentive Awards are reasonable because they take into account the time and effort of each Named Plaintiff in assisting class counsel. Courts recognize that a class representative is entitled to compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action. *In re Oracle Sec. Litig.*, No. 90-0931, 1994 U.S. Dist.

LEXIS 21593, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (citing In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).  Such payments are routinely approved when, as here, they are reasonable in light of applicable circumstances, and not unfair to other class members.  *Smith v. Tower Loan of Miss., Inc*., 216 F.R.D. 338, 368 (S.D. Miss. 2003).  To assess whether an incentive award is excessive, the Court must balance the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment. *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003).

Here, the Named Plaintiffs provided meaningful representation to the class by participating in all (or some) of the following litigation-related activities: reviewing court filings, answering interrogatories, responding to document requests, preparing for depositions with their attorneys, sitting for depositions, gathering evidence, preparing reports, and participating in two days of mediation. Warwick Declaration, ¶33.   The proposed Named Plaintiffs' Incentive Awards are appropriate considering the time and effort involved in representing the interests of the Class.[7]

 It is important to note that Attorney Fees, Costs, and Incentive Awards were negotiated *after* the Named Plaintiffs and the Autobahn Defendants agreed to the benefits that would be provided to the Settlement Class, meaning that the Attorney Fees, Costs, and Incentive Awards did not cause a reduction in benefits to the Settlement Class.  Moreover, because of the way the Settlement is structured, with Autobahn paying these amounts directly rather than through disbursements from a common fund, the benefits to the Settlement Class remain independent from Attorney Fees, Costs, and Incentive Awards.

## IX. CONCLUSION

As the above analysis and supporting documents demonstrate, the proposed Settlement clearly meets the standards for preliminary approval, and the undersigned firmly believe (and expect to demonstrate at a hearing on final approval) that it satisfies the criteria for final approval.  Therefore, Plaintiffs respectfully request that this Honorable Court enter an order (a) certifying the settlement classes set forth in the Settlement Agreement; (b) preliminarily approving the proposed Settlement; (c) authorizing the form and method of class notice described herein; (d) setting a date for the Final Approval Hearing to consider final approval of the settlement; and (e) granting such other and additional relief as the Court may deem just and

---

[7] This case included 17 additional named plaintiffs who did not serve as Named Plaintiffs, but who did participate in discovery in this case and in the related cases.  Those Plaintiffs are expected to exclude themselves from this agreement and settle on an individual basis.

1    appropriate.

2    DATED:  May 24, 2018.

3

4                                            **By:**     s/Brian W. Warwick

5                                                        Brian W. Warwick

6                                                        (*Pro Hac Vice*)
                                                         bwarwick@varnellandwarwick.com

7                                                        Janet R. Varnell
                                                         (*Pro Hac Vice*)

8                                                        jvarnell@varnellandwarwick.com

9                                                        P.O. Box 1870
                                                         Lady Lake, FL  32158

10                                                       Telephone:  (352) 753-8600
                                                         Facsimile:  (352) 753-8606

11
                                                         Herman Franck, Esq. (SB #123476)

12                                                       Elizabeth Betowski, Esq. (SB #245772)
                                                         910 Florin Road, Suite 212

13                                                       Sacramento, CA 95831
                                                         Telephone: (916) 447-8400

14                                                       Facsimile: (916) 447-0720

15

16                                                       *Counsel for Named Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

                                             24

1

EXHIBITS:

2

1.      Declaration of Brian W. Warwick

3

2.      Declaration of Herman Franck

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28