Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
**FRANCK & ASSOCIATES**
910 Florin Road, Suite 212
Sacramento, CA 95831
Tel. (916) 447-8400; Fax (916) 447-0720

Janet R. Varnell, (Admitted Pro Hac Vice)
Brian W. Warwick, (Admitted Pro Hac Vice)
David Lietz (Admitted Pro Hac Vice)
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301

Attorneys for Plaintiffs Steve Ferrari, Mike Keynejad et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE FERRARI, MIKE KEYNEJAD, and PATRICIA RUBIN, HAROLD FETHE, JOHN DIAZ AND RAY GAPASIN; individually and as a representative of the Class of Persons Similarly Situated; HOOSHANG JOWZA, CELSO FRAZAO, RENUKA NARAYAN, GERTRUD FRANKRONE, ERNEST SALINAS, KALKHUSAN SAREEN, HOSSEIN JALALI, RON WOLFE, SOHRAB RAHIMZADEH, FRED GRANT, ESTER GRANT, VINCENT LEUNG, JESSICA LANGRIDGE, TONY NICOLOSI, DONALD LYANG, ARTUR SEMICHEV, <br><br>         Plaintiffs, <br><br>         v. <br><br> AUTOBAHN, INC. DBA AUTOBAHN MOTORS; MERCEDES-BENZ USA, LLC; AND SONIC AUTOMOTIVE, INC. <br><br>         Defendants | Case No. 17-CV-00018-YGR <br><br> **PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPROVAL FOR ATTORNEY FEES AND CLASS REPRESENTATIVE AWARDS** <br><br> Date: January 15, 2019 <br> Time: 2:00 p.m. <br> Courtroom: 1 <br> Judge: Hon. Yvonne Gonzales Rogers |

1

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE THAT on January 15, 2019, or as soon thereafter as this matter may be heard, before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 of this Court, located on the 4th Floor of the Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California 94612, Plaintiffs Steve Ferrari, Mike Keynejad, Patricia Rubin, Harold Fethe, John Diaz, and Ray Gapasin will, and hereby do, move the Court for an order granting their Motion for Approval of Attorney Fees and Class Representative Awards.  This Motion is made based on Federal Rules of Civil Procedure Rule 54(d)(2).  In support of these claims, Plaintiffs state as follows:

I. **BACKGROUND**

How often are named Plaintiffs and Plaintiffs' counsel sued for slander/defamation for speaking out about the claims which underlie their class action lawsuit?  This extraordinary result is exactly what happened here.  After filing this class action lawsuit asserting that the Autobahn defendants were using non-genuine parts in the service and sale of Mercedes-Benz vehicles, Plaintiff Mike Keynejad, Plaintiff John Diaz and Plaintiffs' Counsel Herman Franck went on social media to discuss the allegations of the class action in order to warn consumers and seek corroborating evidence.  Shortly thereafter, Autobahn sued Keynejad, Diaz and Franck in 2015 for defamation and slander. *Autobahn Motors v. Maskay Corp., Keynejad, Diaz and Franck*, San Mateo County Superior Court, CIV 535413. (San Mateo County Superior Court, CIV 535413, Complaint attached as Exhibit A).

With a fury that only being named as a defendant in a competing lawsuit can invoke, Plaintiffs and Mr. Franck set out to prove their statements were not defamatory by showing that Autobahn was indeed failing to properly disclose its use of non-genuine parts.  Autobahn set out

to prove the opposite and hard-fought litigation ensued for nearly three years. That litigation ultimately spread over four (4) related actions – this case, the defamation case referenced above, and two other cases.

In addition to the defamation suit, evidence used in this matter was also gathered during the first-filed case between these parties asserting co-op advertising fraud by Autobahn in the case of *Maskay, Inc. dba Eurotech v. Autobahn Motors*, San Mateo Superior Court, CIV525559. In fact, it was during the discovery phase of the Co-Op Advertising case that Plaintiffs initially determined Autobahn's use of non-genuine parts.

The fourth related action was styled *Maskay, Inc. dba Eurotech v. Mercedes-Benz USA*, San Mateo Superior Court, CIV525559[1], and which asserted an illegal tying arrangement by Mercedes-Benz USA. Although that action was tried to a jury, the court ultimately ruled in favor of MB USA. However, a substantial amount of discovery and trial testimony on issues that overlapped with this class action was conducted in this fourth related case.

Because the discovery in these four matters was so intertwined, the parties even entered into specific agreements so that the evidence gathered in the first Defamation action could be used in this proceeding. (San Mateo County Superior Court, CIV 535413, Case Management Order attached as Exhibit B. Joint Discovery Statement in this Action (Doc. 102) attached as Exhibit C). Through a Joint Statement regarding a court-ordered meet and confer on Discovery Issues, the parties agreed to use evidence gathered in all the related actions in this case. (Doc. 102). First, the parties agreed upon a procedure for submitting evidence obtained in the related cases listed above for use in this matter. Id. Also, the parties agreed that "documents produced in

---

[1] *Maskay, Inc. dba Eurotech v. Autobahn Motors* and *Maskay, Inc. dba Eurotech v. Mercedes-Benz USA* were assigned the same civil action file number. The court split the claims into two different trials.

another case may be treated as discovery produced in this case so long as they are produced to all other parties in TIFF or PDF format." (Doc. 102, p. 2).

Through these intertwined actions, a tremendous amount of discovery was gathered. In the end, 43 depositions were taken, 7 subpoenas to third parties were issued, and thousands of pages of discovery were produced and analyzed.

In the meantime, this lawsuit was originally dismissed, refiled in state court and removed once again to this Court under the Class Action Fairness Act. New motions to dismiss were advanced and the Complaint was amended accordingly. Eventually, Mr. Franck sought the assistance of experienced class counsel, Varnell & Warwick, PA. Shortly thereafter, a Third Amended Complaint, which narrowed the issues and claims, was submitted by Plaintiffs and this Court denied motions to dismiss that Complaint on January 18, 2018.

The defamation action was scheduled to go to trial on February 22, 2018. Merely days before, Plaintiffs and the Autobahn Defendants began negotiations for a global resolution. Prior to mediation, Plaintiffs' counsel flew to Washington, D.C. for an informal meeting on February 20, 2018 and February 21, 2018, where the outline of a potential resolution was created. Thereafter, the defamation trial was stayed and the parties enlisted the assistance of experienced mediator and former judge, Raul Ramirez. A mediation was conducted with Mr. Ramirez on March 9, 2018 in Oakland CA.

Prior to mediation, discovery revealed that the average Autobahn customer was overcharged by less than $5 through Autobahn's use of non-genuine parts. In total, Autobahn purchased approximately $1,600,000 worth of non-genuine parts during the class period. Due to the 30% savings generated, the total class damages equated to approximately $480,000. Under the proposed settlement, Autobahn will provide cash payments equal to the total class damages

of $480,000, and with a Voucher worth 2.3 times actual damages to the class. Thus, under the proposed settlement, class members can actually receive substantially more than they could obtain at trial.

Because of the extensive amount of legal work that went into not only this matter, but also into the related cases, and the fact that several of Plaintiffs' consumer protection claims included a fee-shifting provision, Plaintiff's counsel negotiated a $577,000 attorney fee during mediation based upon Plaintiffs' lodestar. Importantly, Plaintiffs did not seek and were not awarded any attorney fees for any of the work done in the related cases. All compensation to Plaintiffs' counsel comes through this fee petition. As set forth in detail below, the attorney fee negotiated through mediation is actually below the total lodestar for the Plaintiffs' counsel and represents an appropriate fee given the amount of time and effort expended in this hard-fought litigation. Attorney fees and costs are being paid over and above the benefits obtained for the class.

## II. STANDARD FOR AWARDING ATTORNEY FEES IN A CLASS ACTION SETTLEMENT

In class actions, statutory provisions and the "common fund" are exceptions to the American Rule and provide the authority for awarding attorneys' fees. *See Alba Conte and Herbert B. Newberg*, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.Proc. 23(h). The parties' settlement agreement provides that Autobahn will not oppose an award of attorneys' fees and costs of as much as $577,000.

5

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

The "lodestar method" is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir.1998).

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton,* 327 F.3d at 965.

### A. Reasonable Hourly Rate

"[T]he determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party[,]" but rather, "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Chambers v. Whirlpool Corporation*, 214 F.Supp.3d 877, 896 (C.D.Cal., 2016) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (internal quotation marks omitted). The court must determine the reasonable hourly rate in the context of rates charged in "the relevant community[,]" which is "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "The hours expended and the rate should be supported by adequate documentation and other evidence[.]" <u>Hanlon</u>, 150 F.3d at 1029. Once calculated, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010) ("[T]he lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.") (internal quotation marks omitted).

"To assist the court in calculating the lodestar, a plaintiff must submit satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 460–61 (C.D.Cal.,2014) (internal quotations omitted). The relevant community is that in which the district court sits. See *Schwarz v. Sec'y of Health and Human Serv.,* 73 F.3d 895, 906 (9th Cir.1995). Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. See *Widrig v. Apfel,* 140 F.3d 1207, 1209 (9th Cir.1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir.1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates). See also *Earthquake Sound Corp. v. Bumper Industries,* 352 F.3d 1210, 1215 (9th Cir.2003) (discussing the affidavit of "an attorney practicing in the same region as Earthquake's attorneys," which opined that "Earthquake's attorney rates were reasonable and customary").

Class Counsel seeks the following hourly rates:

| Name | Position | Years in Practice | Hourly Rate |
|---|---|---|---|
| Brian W. Warwick | Lead Class Counsel<br>Varnell & Warwick, PA, Partner | 19 | $650.00 |
| Janet R. Varnell | Class Counsel<br>Varnell & Warwick, PA, Partner | 23 | $650.00 |
| David R. Lietz | Class Counsel<br>Varnell & Warwick, PA, Of Counsel | 27 | $650.00 |
| Herman Franck | Lead Counsel<br>Herman Franck & Assoc. | 30 | $560.00 |
| Elizabeth Betowski | Associate<br>Herman Franck & Assoc. | 11 | $460.00 |
| Karen Stroly | Paralegal<br>Varnell & Warwick, PA | 40 | $125.00 |

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

In support of these hourly rates, Class Counsel submit Declarations from two of the most experienced Plaintiff's class action litigators in the Bay Area. Bryan Kemnitzer has been practicing as a civil litigator in the San Francisco Bay Area for nearly forty years, and his law firm specializes in consumer litigation and consumer class actions.  (Kemnitzer Decl., Exh. D). His current hourly rate is $850 per hour and his declaration details court approval of rates between $750 per hour and $800 per hour between 2015 and today. (Id. at ¶ 11). In his expert opinion, the rates set forth above for the lawyers on this case are "well within the market rate in Northern California for this type of complex litigation."

Likewise, Robert M. Bramson is a consumer class action specialist practicing in Walnut Creek, California. (Bramson Decl. Exh. E).  His practice has focused on consumer class action since 1992. Id. at ¶ 2. The hourly rates for the lawyers working at his firm are currently between $820 per hour and $750 per hour. Id. at ¶ 3. According to Mr. Bramson, his firm's "hourly rates as stated above have been approved as reasonable by courts within the Bay Area on numerous occasions, in light of the complexities and burdens generally involved in prosecuting class action cases. Indeed, within the last five years, I do not recall any court having found my firm's hourly rates to be higher than is reasonable and customary within the Bay Area for litigation of this type." Finally, Mr. Bramson's declaration supports the experience and reputation of the Varnell & Warwick lawyers by explaining: "I belong to several national associations of plaintiffs' class action attorneys.  I can say without reservation that Brian Warwick and his partner, Janet Varnell, have excellent reputations among plaintiffs' class action practitioners."

Accordingly, Class Counsel has provided substantial evidence that the proposed hourly rates set forth above are not only reasonable for this type of litigation, but actually below the normal hourly rates charged for similar class action cases in this judicial district. As a result, this

Court should approve the hourly rates set forth above as the first part of Plaintiffs' lodestar calculation.

### B. Reasonable Hours Expended:

Attached as Exhibit F is the declaration of Brian W. Warwick which includes a compilation of the time records for Varnell & Warwick. Attached as Exhibit G is the declaration of Herman Franck and Franck & Associates' time records. A breakdown of the total for both firms is set forth in the following chart:

| Attorney/Staff | Hourly Rate | Total Time | Total |
|---|---|---|---|
| Brian W. Warwick | $650 | 330.00 | $214,500.00 |
| Janet R. Varnell | $650 | 25.00 | $16,250.00 |
| David Lietz | $650 | 22.20 | $14,430.00 |
| Herman Franck | $560 | 1,514.25 | $847,980.00 |
| Elizabeth Betowski | $460 | 1,514.25 | $696,555.00 |
| **TOTAL** | | | **$1,789,715.00** |

Accordingly, the negotiated attorney fee of $577,000.00 under the settlement represents only 32% of the total actual time spent on these related cases. Even cutting the total hours by half would still generate nearly $900,000 worth of attorney fees. Given the tremendous amount of time and effort over the course of many years and the fact that Autobahn actually filed suit against plaintiff and Mr. Franck more than justifies the tremendous amount of time and effort expended on behalf of Plaintiffs and the class. Approval of the negotiated attorney fees under the lodestar method should be approved.

Likewise, litigation costs incurred by Varnell & Warwick equate to $14,287.32. Franck & Associates incurred costs in excess of $20,000. (See Exhibit H, Franck Declaration in support of court costs and expenditures).

As a result, this Court should approve the award to Class Counsel of the reasonable and negotiated attorney fees of $577,000 and costs of $22,000.

9

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

### III. INCENTIVE AWARDS TO NAMED PLAINTIFFS

"[I]it is well-established that the court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities, including depositions." *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 470 (C.D.Cal.,2014); See *In re Mego Financial Corp. Securities Litig.*, 213 F.3d at 463 (holding that the district court did not abuse its discretion in awarding an incentive award to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir.1992) (stating that an incentive award in such amount "as may be necessary to induce [the class representative] to participate in the suit" is appropriate).

The criteria that Courts are to consider in determining whether to approve an incentive award include the following:

(1) the risk to the class representative in commencing suit, both financial and otherwise;

(2) the notoriety and personal difficulties encountered by the class representative;

(3) the amount of time and effort spent by the class representative;

(4) the duration of the litigation; and

(5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal.1995).

There are six class representatives in this case. Some participated more substantially than others. Some were even sued for defamation, as discussed above. Ultimately, the parties negotiated the following Class Representative Awards based upon the above factors: Keynejad -

10
*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

$8,000; Diaz - $5,000; Fethe - $4,000; Ferrari - $2,500; Rubin - $2,500; and Gapasin - $2,500. These proposed Named Plaintiffs' Incentive Awards are reasonable because they take into account the time and effort of each Named Plaintiff in assisting class counsel. (See Exhibit I, Franck Declaration on Class Representatives). As explained in detail below, these amounts were negotiated based upon the amount of time and effort employed by each class representative and the risks of this litigation imposed on some, but not all, class representatives.

### a. The Risk to the Class Representative in Commencing Suit

When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important. *Toys R Us*, 295 F.R.D. 438, 470 (C.D.Cal.,2014); See also, *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir.2003) (noting that fear of workplace retaliation is a relevant factor in evaluating the propriety of an incentive award).

Class Counsel has never actually seen a case where the named Plaintiffs are sued for defamation by the class defendant for speaking out on the same claims involved in the lawsuit. The defamation action did not only cost the named Plaintiffs time and effort, they took on substantial risks. It would have been much easier to dismiss the class suit in exchange for dropping the defamation action. Instead, these named Plaintiffs and Mr. Franck decided to push the litigation forward.

While the other class representatives were not named in the defamation action, they are also receiving a substantially lower incentive award. And, there was no assurance that they would not be named later in the defamation action, as the complaint included un-named defendants "Does 1-5.". (See Exhibit A, Defamation Complaint). As a result, this factor weighs strongly in favor of approving the modest negotiated awards.

b.     **The Notoriety and Personal Difficulties Encountered by the Class Representative**

Although there is no particular notoriety associated with this litigation, named plaintiffs Keynajad and Diaz were subjected to a defamation suit as a result of their involvement in the case, which certainly counts as a "personal difficulty." Likewise, Mr. Fethe wanted to sell his vehicle during the pendency of this action, but went through the personal difficulty of retaining it instead, in case it was needed as evidence regarding the zMAX claim.

Furthermore, this matter received a fair amount of press coverage. See, e.g., *Wilson v. Airborne, Inc.,* No. EDCV 07–770–VAP (OPx), 2008 WL 3854963, *13 (C.D.Cal. Aug. 13, 2008) (finding that the media attention class representatives attracted supported incentive awards). Exhibit J is a compilation of some of the press coverage that this case garnered. The named Plaintiffs were named in each instance.

For these reasons, this factor also weighs in favor of this Court authorizing the incentive awards that were negotiated by the parties.

c.     **The Amount of Time and Effort Expended by the Class Representatives**

An incentive award is appropriate where the "class representatives remained fully involved and expended considerable time and energy during the course of the litigation." *Razilov,* 2006 WL 3312024, at *4. In *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299–300 (N.D.Cal.,1995), after evaluating the time the named plaintiff committed to this case, the Court awarded him an incentive award of $50,000. In that case, the named plaintiff participated in 49 telephone conferences and five meetings with Class Counsel, attended three pre-trial hearings, had his deposition taken twice, and testified at trial. *Id*. See also, *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (N.D. Cal.

12

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

Apr. 22, 2010) (approving a $20,000 award where plaintiff "made herself available for deposition on two separate occasions, wherein she was subjected to questioning regarding her personal financial affairs and other sensitive subjects; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests"); *In re Heritage Bond Litigation,* No. 02–ML–1475 DT, 2005 WL 1594403 *14 (C.D.Cal. June 10, 2005) (activities such as "responding to discovery, preparing for, traveling to and attending their depositions and maintaining contact with Plaintiffs' counsel to monitor the litigation" gave rise to an inference that class representatives were "actively involved in every aspect of ... litigation").

Although Mr. Keynejad and Mr. Diaz gave hundreds of hours of their time assisting counsel, reviewing documents and doing research, they also attended both mediation sessions and met with counsel on numerous occasions. (Ex. H, Franck Decl.). Mr. Fethe and Ms. Rubin also attended mediation which took considerable time and effort, and all the named Plaintiffs reviewed the Settlement Documents and had discussions with counsel regarding the case, the settlement, and the value of the settlement when compared to the risks of trial. Id.

As set forth in the cases set forth above, the excessive amount of time in this matter could have resulted in a much higher award. However, the fact that the parties negotiated the modest amounts set forth in the Settlement Agreement indicated that these named plaintiffs were providing their time and efforts not for their own personal gain but for the benefit of the class. Because each of the named plaintiffs expended reasonable efforts on the litigation and were highly involved in the proceedings, this factor weighs in favor of approving their negotiated incentive awards.

### d. The Duration of the Litigation

When litigation has been protracted, an incentive award is especially appropriate. See *Van Vranken,* 901 F. Supp. at 299 (finding that a class representative's participation through "years of litigation" supported an incentive award).

This matter was re-filed December 21, 2016 and the Defamation action was filed September 15, 2015. Accordingly, these cases have been pending for almost three years. Given the length of the litigation and plaintiffs' involvement in it, the court concludes that this factor favors the incentive awards that have been negotiated.

### e. The Personal Benefit Enjoyed by the Class Representative as a Result of the Litigation

An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member. See *Razilov,* 2006 WL 3312024, at *4 (approving the payment of an incentive award where the only benefit a class representative was going to receive from a settlement was the same statutory damages other class members would receive); *Van Vranken,* 901 F. Supp. at 299 (where a class representative's claim made up "only a tiny fraction of the common fund," a substantial incentive award was appropriate).

The named plaintiffs in this action will receive no relief beyond that available to members of the class in general. Absent an incentive award, they will each be eligible to receive the vouchers or cash benefits available to all other class members. Keynejad and Diaz will, of course, have already had the defamation suit against them dropped. However, they were never awarded attorney fees or costs for their time in that closely-related action. No damages or

14

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

attorney fees were exchanged in that matter and no wrong-doing was determined. Accordingly, this final factor also favors approval of the negotiated incentive awards.

### f. Weighing the Factors

Considering all relevant factors, the court should conclude that the incentive awards negotiated for the named Plaintiffs are "just and reasonable under the circumstances" and should be approved by this Court. *Van Vranken,* 901 F. Supp. at 299.

### IV. CONCLUSION

Obviously, the Autobahn Defendants thought the best defense in this case was a good offense. They tried to out-spend and out-last Plaintiffs and Mr. Franck at every turn. When that did not work, they took Plaintiffs and Attorney Franck to trial twice and filed a defamation suit against them. In the end, however, Plaintiffs were vindicated and the class is now receiving settlement benefits equal to or well above their actual damages. And, perhaps most importantly, Autobahn is no longer surreptitiously installing non-Genuine parts. After spending years and a tremendous amount of time and money, Class Counsel deserves to be paid a reasonable fee for their time and expenses. Autobahn agreed to pay $577,000 because it knew that this figure was a mere fraction of the time spent. This is not a case where Class Counsel got rich and the Class got little. In fact, Class Counsel is only seeking to be paid for less than half their time. Therefore, the negotiated attorney fees and costs should be approved and the Plaintiffs' incentive awards should also be approved by this Court.

DATED: September 27, 2018              Respectfully submitted,

By: /s/ Brian Warwick
Brian W. Warwick, (Admitted Pro Hac Vice)
Janet R. Varnell, (Admitted Pro Hac Vice)
David Lietz (Admitted Pro Hac Vice)
**VARNELL & WARWICK, P.A.**

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301

Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
FRANCK & ASSOCIATES
910 Florin Road, Suite 212
Sacramento, CA 95831
Tel. (916) 447-8400
Fax (916) 447-0720

*Attorney for Plaintiffs*
Steve Ferrari, Mike Keynejad et al.

16

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards

**LIST OF EXHIBITS**

A. San Mateo County Superior Court, CIV 535413, Complaint

B. San Mateo County Superior Court, CIV 535413, Case Management Order

C. Joint Discovery Statement (Doc. 102)

D. Declaration of Bryan Kemnitzer

E. Declaration of Robert M. Bramson

F. Declaration of Brian W. Warwick

G. Declaration of Herman Franck on Attorneys Fees

H. Declaration of Herman Franck on Court Costs and Expenditures

I. Declaration of Herman Franck on Class Representatives

J. Compilation of press coverage

17

*Ferrari v. Autobahn Motors.*
Plaintiffs' Motion and Memorandum of Law in Support of Approval for Attorney Fees and Class Representative Awards