Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
**FRANCK & ASSOCIATES**
910 Florin Road, Suite 212
Sacramento, CA 95831
Tel. (916) 447-8400; Fax (916) 447-0720

Janet R. Varnell, (Admitted Pro Hac Vice)
Brian W. Warwick, (Admitted Pro Hac Vice)
David Lietz (Admitted Pro Hac Vice)
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL 32158
Tel. (352) 753-8600
Fax (352) 504-3301

Attorneys for Plaintiffs Steve Ferrari, et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE FERRARI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AUTOBAHN, INC. DBA AUTOBAHN MOTORS; MERCEDES-BENZ USA, LLC; AND SONIC AUTOMOTIVE, INC. <br><br> Defendants. | Case No. 17-CV-00018-YGR <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF PRO TANTO CLASS ACTION SETTLEMENT** <br><br> The Honorable Yvonne Gonzalez Rogers <br> Date: January 15, 2019 <br> Time: 2 P.M. <br> Courtroom: 1 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

NOTICE OF MOTION..........................................................................................iv

I.     INTRODUCTION .....................................................................................1

II.    BACKGROUND .......................................................................................2

       A.    PLAINTIFF'S CLAIMS....................................................................2

       B.    PROCEDURAL HISTORY................................................................3

III.   SUMMARY OF THE SETTLEMENT ......................................................5

       Subclasses and Settlement Consideration......................................................6
       Release .........................................................................................................8
       Attorney Fees, Costs and Incentive Awards ..................................................9

IV.    STANDARD OF REVIEW FOR CLASS ACTION SETTLEMENTS........10

       A.    THE STRENGTH OF PLAINTIFF'S CASE BALANCED
             AGAINST THE RISK, EXPENSE AND LIKELY
             DURATION OF FURTHER LITIGATION .....................................11

       B.    RISK OF MAINTAINING CLASS ACTION STATUS
             THROUGH TRIAL .......................................................................14

       C.    BENEFITS OF THE SETTLEMENT ..............................................16

       D.    EXTENT OF DISCOVERY AND STATE OF PROCEEDINGS ....18

       E.    EXPERIENCE AND VIEW OF COUNSEL ...................................20

       F.    PRESENCE OF GOVERNMENTAL PARTICIPATION................20

       G.    LACK OF COLLUSION BETWEEN THE PARTIES....................21

       H.    REACTION OF THE CLASS TO THE SETTLEMENT .................22

             a.    Notice Process.......................................................................22
             b.    Email Notice .........................................................................22
             c.    Mail Notice ...........................................................................22
             d.    Notice Contents......................................................................23
             e.    Response of the Class ............................................................23

V.     CONCLUSION...........................................................................................25

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) .....................................10, 18

*Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) .....21

*Amchem*, 521 U.S.at 591   ...................................................................................................14

*Briggs v. United States*, No. C 07–05760 WHA, 2010 WL 1759457, at *3
    (N.D. Cal. Apr. 30, 2010) ......................................................................................10

*Bruno v. Quten Research Inst., LLC*, No. SACV 11–00173 DOC (Ex),
    2013 WL 990495, at *1 (C.D. Cal. Mar. 13, 2013).............................................10

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ........................................10

*Clesceri v. Beach City Investigations & Protective Servs.*, 2011
    WL 320998, at *9 (C.D. Cal. Jan. 27, 2011) .....................................................18, 20

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).............................................17

*Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 160 (1982) ...................................................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1997)) ........................................10, 11

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........................14

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) .............22

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)...................................10

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995) ...............20, 21

*In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 U.S. Dist. LEXIS
    115056, at *20-22 (N.D. Cal. Aug. 25, 2016) .....................................................14

*Larsen v. Trader Joe's Co.,* 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014)....................21

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ..............................18

*Moore v. PetSmart, Inc.*, 2015 U.S. Dist. LEXIS 102804, at *19
    (N.D. Cal. Aug. 4, 2015) .....................................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526
    (C.D. Cal. 2004)...........................................................................14, 18, 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615, 625 (9th Cir. 1982) ................................................11, 17, 18

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).....................................14, 21

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ......................................................10

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) ....................................10

1

## **NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

**PLEASE TAKE NOTICE** that on January 15, 2019 at 2:00 p.m., or as soon thereafter

5

as the matter may be heard, in Courtroom 1, 4th Floor of the United States District Court,

6

Oakland Courthouse, located at 1301 Clay Street, Oakland, California, 94612, before the

7

Honorable Yvonne Gonzalez Rogers, Plaintiffs Steve Ferrari, Michael Keynejad, Patricia Rubin,

8

John Diaz, Ray Gapasin, and Harold Fethe ("Plaintiffs") will, and hereby do, move the court,

9

pursuant to Federal Rule of Civil Procedure 23 for an Order granting final approval of the Class

10

Action Settlement Agreement ("Settlement") and entering partial final Judgment in this matter.

11

Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of

12

Points and Authorities below, the Declaration of the Settlement Administrator and, the papers

13

filed in support of Plaintiffs' motion for preliminary settlement approval, the papers filed in

14

support of Class Counsel's application for attorneys' fees, the record in this case, and any

15

additional argument and evidence the Court may consider.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Pursuant to FRCP Rule 23(e) and this Court's Preliminary Approval Order (Doc. 160), Plaintiffs Ferrari, Keynejad, Diaz, Rubin, Fethe, and Gapasin (collectively, "Plaintiffs" or "Named Plaintiffs"), respectfully request that this Court grant final approval of the proposed settlement ("Settlement") reached between Plaintiffs and Defendants Autobahn Motors and Sonic Automotive Inc. (collectively "Autobahn" or the "Autobahn Defendants").

At the preliminary approval stage, this Court took a hard look at the proposed Settlement and briefing and suggested certain changes to simplify the process for class members and thereby maximize participation.  The parties agreed to make numerous modifications suggested by the Court.  As to the revised process, the Court concluded that conditional certification of the Settlement Class was appropriate for settlement purposes and that the Settlement appeared to be "fair, reasonable, and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval."  Doc. 160, at 3.

The revised process worked well.  Among the indications that the process went exactly as anticipated are: (1) the success of the Settlement Administrator in individually providing notice to approximately 99% of the Settlement Class; (2) the lack of objections to the Settlement (aside from one comment by a former named plaintiff who had already settled individually and opted out); and (3) the extremely low opt out rate—only three members of the more than 50,000 members of the Settlement Class elected to opt out beyond the non-representative named plaintiffs who settled individually.  Additionally, as to Class 2 (which was the only Class where a claim was required to receive benefits), the claims rate tracked what Class Counsel anticipated it would be at the preliminary approval stage.

As further demonstrated herein, consideration of the appropriate fairness factors strongly weighs in favor of final approval. This Court should grant Plaintiff's Motion for Final Approval.

*Ferrari v. Autobahn Motors*
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
PRO TANTO CLASS ACTION SETTLEMENT

1

## II.       BACKGROUND

### A.  PLAINTIFF'S CLAIMS

This case involves claims alleging violation of Civil Code Section 1750 (Consumers Legal Remedies Act), B&P Code Section 17200 (Unfair Competition Act), violation of B&P Code Section 17200 (Unfair Competition Law and California Vehicle Code 11713.18), violation of B&P Code Section 17500 (Misleading Advertising), and Trespass to Chattels surrounding Autobahn's alleged use of non-Genuine Mercedes-Benz parts in the service and repair of customer vehicles.  Plaintiffs alleged that Autobahn did not sufficiently disclose when customers received non-Genuine parts, at least until 2013.

First, Plaintiffs alleged that the Autobahn Defendants regularly invoiced maintenance and repair customers for Genuine Mercedes-Benz Parts.  Plaintiffs further alleged that, unbeknownst to the customers, Autobahn also installed non-Genuine parts and retained the price difference as additional profit.  Plaintiffs contended that regular maintenance items such as air filters, oil filters, oil, spark plugs, etc., were routinely invoiced by the Autobahn Defendants as Genuine Mercedes-Benz Parts, but customers were routinely provided less expensive non-Genuine versions.  Importantly, the evidence has established that any non-Genuine parts used by Autobahn were made by the same manufacturer as the Genuine Parts and were of the same (but not greater) quality as Genuine Parts.

Second, Defendants sold Certified Pre-Owned ("CPO") Mercedes Vehicles as having been reconditioned to original specifications with Genuine Mercedes Parts.  Plaintiffs alleged that Autobahn regularly used non-Genuine parts in the reconditioning process for these vehicles.  Plaintiffs further asserted that the use of non-Genuine parts made the CPO vehicles non-conforming to the CPO program.

Third, Plaintiffs alleged that Sonic and Autobahn included the fluid "zMax," which may

be added to engine oil and/or other fluids, in some of their standard maintenance programs. Plaintiffs asserted that the Autobahn Defendants failed to adequately disclose that zMax was not approved or endorsed by Mercedes at the time it was sold.

Plaintiffs also asserted claims against MBUSA surrounding its marketing of Genuine parts as superior and longer lasting than non-Genuine parts.  Under the terms of the Settlement, Plaintiffs have agreed to settle only with the Autobahn Defendants.  Certain claims against MBUSA, specifically those arising out of MBUSA's advertisement of Mercedes-Benz branded (i.e., Genuine) parts as superior and longer-lasting, shall remain pending if and when this Settlement obtains final approval.  At that time, Plaintiffs will file an amended complaint that will only include the remaining claims against MBUSA.

### B.  PROCEDURAL HISTORY

This lawsuit has a long and tortured history, including years of extensive merits discovery and two trials in related litigation.  When this action was first filed by Plaintiffs on September 24, 2015, its primary focus was on federal RICO claims asserted under 18 U.S.C. § 1961 et al. (Case No. 4:15-cv-04379-YGR).  However, on December 12, 2016, the federal court dismissed with prejudice the federal claims and dismissed the state law claims without prejudice. (Doc. 117).

The state law claims were re-filed in state court and Defendants removed the action to federal court under the Class Action Fairness Act.  (Doc. 1).  The First Amended Complaint was filed on January 25, 2017 (Doc. 14) and the Autobahn Defendants' Motion to Dismiss the First Amended Complaint was filed on February 14, 2017 (Doc. 26).  By order dated July 21, 2017, the Court granted in part and denied in part the Autobahn Defendants' motion.  (Doc. 64).  Plaintiffs were granted leave to amend their Complaint.  Plaintiffs' Second Amended Complaint was filed on August 8, 2017.  (Doc. 69).

On September 5, 2017 the Autobahn Defendants filed a Motion to Compel Arbitration, to Dismiss and to Stay Further Proceedings regarding Plaintiff's Second Amended Complaint. (Doc. 82).  However, before the Court ruled on this motion, Plaintiffs requested leave of Court to file a Third Amended Complaint, which substantially clarified the claims and narrowed the scope of the class action.  (Doc. 104).

While Defendants' motion was pending, the parties engaged in the first mediation on November 8, 2017, before the Hon. Raul Ramirez of ADR Services, Inc.  The case did not settle.

By order dated January 18, 2018 (Doc. 117) this Court granted the Autobahn Defendant's motion to compel arbitration as to some of the Plaintiffs, again denied in part and granted in part the Autobahn Defendant's motion to dismiss, and again allowed Plaintiffs leave to amend.  Plaintiffs' Third Amended Complaint was filed on February 6, 2018.  (Doc. 126).

On January 29, 2018, this Court entered an Order (Doc. 129) staying proceedings to permit Plaintiffs and the Autobahn Defendants to participate in a further mediation session with Judge Ramirez.  The second mediation session was held on March 9, 2018.  As a result of this second mediation session, Plaintiffs and the Autobahn Defendants reached a class settlement that resolves all claims against the Autobahn Defendants.

On May 4, 2018, Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class was filed (Doc. 136), which attached the proposed Settlement.

By Order dated May 10, 2018 (Doc. 138), this Court directed submission of supplemental information in support of Plaintiffs' Motion for Preliminary Approval, and in particular requested that Plaintiffs submit a chart summarizing the settlement as part of supporting papers.

On May 22, 2018 Plaintiffs filed the Fourth Amended Complaint (Doc. 139) which amended the complaint to narrow the claims against MBUSA and to remove non-class

representatives from the case who had opted out.

Plaintiffs' Memorandum of Law in Support of Preliminary Approval of Pro Tanto Class Action Settlement was filed on May 24, 2018 (Doc. 140).  This filing included the summary chart that the Court had requested (Doc. 138).

On June 20, 2018 the Court entered its Order directing supplemental briefing (Doc. 146) and additional briefing was submitted by the parties on July 3, 2018 (Doc. 151) to address minor modifications to the Settlement and Notice program and to address timing of attorney fees.

A Preliminary Approval Hearing was conducted on July 31, 2018.  During the hearing, the Court requested revisions to the class notice process and the claims process for Class 2 that were designed to simplify and streamline the process.  Plaintiffs negotiated such changes to the notice, check election, and Class 2 claims processes and submitted a Second Supplemental Brief in Support of Preliminary Approval describing these changes on August 21, 2018.  (Doc. 158).

On August 28, 2018, this Court entered its order Granting Preliminary Approval of the settlement as revised by the parties, and setting a Final Approval Hearing for January 15, 2018.

In accordance with that Order, the Notice Program was completed pursuant to the Settlement and the Preliminary Approval Order.  (*See* Ex. 1, Declaration of Ritesh Patel).

The deadline for objecting or opting out of this Settlement was October 31, 2018.  The deadline for electing to receive cash in lieu of a voucher and for Class 2 claims was Nov. 13, 2018.

III.    **SUMMARY OF THE SETTLEMENT**

The proposed Settlement contains the following material terms.  First, the proposed Settlement Class is defined as follows:

> All consumers who during the Class Period received service from Autobahn, together with all consumers who purchased a CPO ["Certified Pre-Owned] automobile from Autobahn during the period January 1, 2007 through December 31, 2012.

1

2
The "Class Period" is January 1, 2005 through February 28, 2018.

3
### Subclasses and Settlement Consideration

4
The Settlement consideration consists of multiple components.  The Settlement Class is

5
broken down into three classes, two of which are further divided into subclasses with

6
corresponding Settlement Benefits.  Due to the additional defenses available to the Autobahn

7
Defendants regarding claims beyond the limitations period, vouchers based on service conducted

8
prior to 2011 are for lesser amounts than vouchers based on service conducted more recently.

9

10
Class 1 is the "Non-Genuine Parts Class," and is divided into subclasses 1A and 1B

11
depending on the date of the last pertinent transaction.  Class 2 is the "zMax Class."  Class 3 is

12
the "CPO Class" and is divided into subclasses 3A and 3B depending on the date of the last

13
pertinent transaction.  A Settlement class member may fall under more than one Class.

14
Each member of Class 1 and 3 who did not request cash will automatically receive an

15
Autobahn Service Voucher that can be used just like cash to purchase goods or services offered

16
by Autobahn.  Alternatively, class members had the option of electing (through the settlement

17
website linked directly to their notice) to elect to receive cash instead of a voucher.  The amount

18
of each Voucher and/or cash redemption amount is determined by class membership, the date of

19
the pertinent transactions, and for Class 1, the number of service visits by the class member as

20
indicated in Autobahn's service records.

21

22
Each member of Class 2 was provided access to an online Claim Form (which was linked

23
electronically to the email notices, and for which the URL was included in the postcard notices)

24
to request an Autobahn Service Voucher if the class member stated that he or she would not have

25
purchased zMax or chosen to have it added to their automobiles had he or she understood that it

26
had not been endorsed or approved by MBUSA.  As with Classes 1 and 3, Class 2 members also

27

28

had the opportunity to choose to use the Autobahn Service Voucher towards service at Autobahn

or redeem it for cash.

The Subclass definitions and Subclass Benefits under the Settlement are as follows:

    a.  <u>Class 1A</u>:  All Settlement Class members who last serviced
automobiles at Autobahn on or after January 1, 2011.

        i.  a voucher for $20.00 towards any service at Autobahn (with a cash
value of $8.22) if such class member visited Autobahn for service
1–3 times;  or a voucher for $30.00 towards any service at
Autobahn (with a cash value of $12.33) if such class member
visited Autobahn for service 4–6 times; or

       ii.  a voucher for $40.00 towards any service at Autobahn (with a cash
value of $16.44) if such class member visited Autobahn for service
7–9 times; or

     iii.  a voucher for $50.00 towards any service at Autobahn (with a cash
value of $20.55) if such class member visited Autobahn for service
10 or more times.

    b.  <u>Class 1B</u>:  All Settlement Class members who last serviced their
automobiles at Autobahn during the period January 1, 2005 through
December 31, 2010.

        i.  a voucher for $5.00 towards any service at Autobahn (with a cash
value of $2.34) if such class member visited Autobahn for service
1–3 times; or

       ii.  a voucher for $7.50 towards any service at Autobahn (with a cash
value of $3.51) if such class member visited Autobahn for service
4–6 times; or

     iii.  a voucher for $10.00 towards any service at Autobahn (with a cash
value of $4.67) if such class member visited Autobahn for service
7–9 times; or

     iv.  a voucher for $12.50 towards any service at Autobahn (with a cash
value of $5.84) if such class member visited Autobahn for service
10 or more times.

    c.  <u>Class 2</u>:  All Settlement Class members who purchased a fluid known
as zMax from Autobahn in conjunction with service at Autobahn
during the Class Period according to Autobahn's records, together with
all Settlement Class members who purchased from Autobahn a CPO

automobile on or after January 1, 2007, into which zMax may have been added during the reconditioning process.

A Claim Form to make a claim for a voucher for $40.00 towards any service at Autobahn (with a cash value of $15.98).  The claim form allows eligible class members to attest that they would not have purchased zMax or chosen to have it added to their automobiles had they understood that it has not been endorsed or approved by MBUSA.

    d.  <u>Class 3A</u>: All Settlement Class members who last purchased a CPO automobile from Autobahn during the period January 1, 2011 through December 31, 2012.

        i.  a voucher for $50.00 towards any service at Autobahn (with a cash value of $20.55).

    e.  <u>Class 3B</u>: All Settlement Class members who last purchased a CPO automobile from Autobahn during the period January 1, 2007 through December 31, 2010.

        i.  a voucher for $12.50 towards any service at Autobahn (with a cash value of $5.84).

Although class members had the option of electing cash by going to the settlement website when they received notice, all members of Classes 1 and 3 who did not elect a cash payment will automatically receive Vouchers even if they take no action at all.  This structure allows all Class 1 and 3 members to receive benefits under the Settlement, not just those who file a claim form.    As 98% of class members are in Classes 1 and/or 3, the overwhelming majority of the class will receive benefits from the Settlement, setting it apart from most class settlements, which follow a pure claims made settlement structure.

### **Release**

In exchange for the forgoing consideration, Plaintiffs and Settlement Class Members will release the Autobahn Defendants from all claims arising out of the allegations in the Fourth Amended Complaint.

**Attorney Fees, Costs and Incentive Awards**

Class Counsel has filed a separate motion and memorandum requesting court approval of agreed upon attorney fees of $577,000 ("Attorney Fees") calculated using the lodestar method. Class Counsel has also sought reimbursement of customary, reasonable, and documented out-of-pocket litigation expenses not to exceed $22,000 ("Costs").  Likewise, the Named Plaintiffs have filed a motion and memorandum requesting approval of the Incentive Awards as follows: Ferrari: $2,500; Keynejad:  $8,000; Rubin:  $2,500; Fethe:  $4,000; Diaz:  $5,000; and Gapasin: $2,500.

The proposed Settlement can be summarized in chart form as follows:

**Preapproval Stage**
**Ferrari v. Autobahn, Inc.**
*All figures are best estimates as of December 10, 2018*

|  | % Settlement |
|---|---|
| Total settlement $1.9M | 100% |
| Net class benefits (cash and vouchers) $1.2M | 61% |
| Voucher payout $1.1M | |
| Cash payout $.02M | |
| Class Mbrs  50,310 total | |
| Median benefit per class mbr  $23* | |
| Class 1 -- 49,289 mbrs -- $1.12M | |
| Class 2 -- 9,254 mbrs -- $0.02M | |
| Class 3 -- 2,923 mbrs -- $0.07M | |
| Number of claims:  460 | |
| Class 1 -- N/A - all mbrs receive benefits | |
| Class 2 -- 460** | |
| Class 3 -- N/A - all mbrs receive benefits | |
| Expected residual  $0 | 0% |
| Expected cy pres $0 | |
| Expected reversion N/A | |
| Attorney fees requested  $0.58M | 30% |
| Lodestar $1.8M*** | |
| Hours  3,405 | |
| Melded billing rate $528/hr | |
| Multiplier  1/3 (*fees sought are less than loadstar*) | |
| Attorney costs  <$0.1M | 1% |
| Administrative costs  $0.16M | 6% |
| Class representative awards  <<$0.1M | 1% |

The median distribution to class members will be **$23**.

*\* Settlement per class member is a median; actual individual payout may be higher or lower, depending on factual circumstances.*
*\*\* Only Class 2 requires a claim form; compensation is automatic for Classes 1 and 3.*
*\*\*\* Lodestar exceeds fees requested.*

**Postclaim Filing Audit**
**Ferrari v. Autobahn, Inc.**
*All figures are actual amounts as of XXXXXX*

|  | % Settlement |
|---|---|
| Total settlement | 100% |
| Net class voucher benefits | |
| Net class cash benefits | |
| Total amt - cashed checks | |
| Actual voucher payout | |
| Class Mbrs  _____ | |
| Total voucher benefits redemed:  _____ | |
| Avg voucher benefit redeemed:  _____ | |
| Number of claims:  460 | |
| Actual residual  _____ | |
| Actual cy pres  $____ | |
| Actual reversion N/A | |
| Attorney fees approved/paid  $_____ | |
| Lodestar  $____M | |
| Hours  ___,___ | |
| Melded billing rate $____/hr | |
| Multiplier  ___ | |
| Attorney costs paid $_____ | |
| Administrative costs paid  $____ | |
| Class rep awards approved/paid $_____ | |

1    **IV.     STANDARD OF REVIEW FOR CLASS ACTION SETTLEMENTS**

2          Federal Rule of Civil Procedure 23(e), requires judicial approval for any settlement

3    agreement that will bind absent class members.  *See* Fed. R. Civ. P. 23(e); *see also Briggs v.*

4    *United States*, No. C 07–05760 WHA, 2010 WL 1759457, at *3 (N.D. Cal. Apr. 30, 2010).  It is

5    well-settled in the Ninth Circuit that settlements are favored, particularly in class actions and

6    other complex cases where substantial resources can be conserved by avoiding the time, cost,

7    and rigor of prolonged litigation.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

8    *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  These economic gains

9    multiply in pre-certification settlements since class certification undeniably represents a

10   significant risk for Plaintiffs.  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal.

11   2007).

12         A court must take three steps in considering approval of a proposed settlement: (1) the

13   court must preliminarily approve the proposed settlement; (2) members of the class must be

14   given notice of it; and (3) a final hearing must be held, after which the court must decide whether

15   the tentative settlement is fair, reasonable, and adequate.  *See* MANUAL FOR COMPLEX

16   LITIGATION (FOURTH) § 21.632, at 320-21 (4th ed. 2004) ("MANUAL (FOURTH)").  The

17   decision to approve a proposed class-action settlement is within the sound discretion of the

18   district court judge who "is exposed to the litigants, and their strategies, positions, and proof." *In*

19   *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also Class Plaintiffs v.*

20   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *accord Bruno v. Quten Research Inst., LLC*,

21   No. SACV 11–00173 DOC (Ex), 2013 WL 990495, at *1 (C.D. Cal. Mar. 13, 2013).

22         Evaluating a class-action settlement proposal at the final approval stage requires the

23   District Court to determine whether the proposed settlement, taken as a whole, is fair, reasonable

24   and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler*

25   *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1997)).  To do so, a court should balance the following

26   factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

27   duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

28

(4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Application of these factors to the facts of this case and Settlement demonstrates that the Settlement is fair, reasonable and adequate. Consequently, the Settlement should be finally approved by this Court.

## A. THE STRENGTH OF PLAINTIFF'S CASE BALANCED AGAINST THE RISK, EXPENSE AND LIKELY DURATION OF FURTHER LITIGATION

"In determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Moore v. PetSmart, Inc.*, 2015 U.S. Dist. LEXIS 102804, at *19 (N.D. Cal. Aug. 4, 2015) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "There is no particular formula by which that outcome must be tested." *PetSmart*, LEXIS 102804, at *19.

As discussed below, Plaintiffs and their counsel conducted extensive discovery in two related state court actions, including conducting full trials in one case (which was bifurcated into separate bench and jury trials) and proceeding as far as jury selection in the second. The discovery obtained in these cases enabled the parties to assess the strength and weaknesses of their claims. The view of Plaintiffs' counsel is that they developed a fairly strong but not bulletproof case against the Autobahn Defendants on the merits of their disclosure-based claims involving use non-genuine parts, but from a valuation standpoint, the amount at issue turned out to be very small in comparison with overall sales of parts by Autobahn during the Class Period.

As to Classes 1 and 3, which involve the use of non-Genuine parts and fluids, Plaintiffs' counsel obtained invoices from the parts suppliers which show that the Autobahn Defendants

did, in fact, purchase such non-Genuine parts and fluids.  Discovery showed that the total amount of non-Genuine parts purchased during this period (dating back to 2005) was at most in the low single digit millions of dollars, which would have been less than 5% of the parts Autobahn purchased during the period.  Plaintiffs deposed the parts suppliers and determined that the difference in price between Genuine and non-Genuine parts ranges from 10% -30%.  There is no dispute that the non-Genuine parts at issue were made by the same manufacturer as the Genuine Parts and were of the same quality (but not greater quality) as Genuine parts.  Accordingly, the measure of potential damages assuming success on these claims would be limited to the difference in price.

But tying the use of non-genuine parts to particular consumers and proving reliance would be much more difficult.  Plaintiffs' counsel obtained repair invoices purporting to show that Genuine parts were used in repairing consumer vehicles.  While it may be simple to show that a Genuine part was listed on the repair invoice, proving that any particular consumer instead received a non-Genuine part in its place would be difficult.  Plaintiffs cannot simply look at the parts in consumer vehicles today—all the service parts like oil filters that were used years ago have already been replaced and evidence indicates that the use of non-Genuine parts ended years ago.  In addition, testimony obtained in discovery indicated that customers sometimes requested non-Genuine parts, or otherwise received better disclosures.  This variation in individualized circumstances pertaining to disclosure and reliance is a further hurdle for the Plaintiffs.

Moreover, calculating individualized damages for each customer would be cost prohibitive given the thousands of individual transactions at issue and the relatively small amounts at issue.  Discovery revealed the price difference between Genuine and non-Genuine oil

filters is on the order of a few dollars.[1]  Prices fluctuated over time and differ for different parts and models, but in general, for most regular maintenance visits, the non-Genuine part "damage" component would only be several dollars per visit.

As for the claims regarding zMax (i.e., the Class 2 claims), Plaintiffs developed evidence that zMax was not approved by Mercedes; however, the evidence also showed that Mercedes did not prohibit use of zMax in its vehicles.  Mercedes instead required a disclosure that the product had not been approved by Mercedes.  Plaintiffs would argue that the disclosure provided by Autobahn was insufficient, and Plaintiffs developed evidence indicating that some consumers may have purchased zMax on the belief that it had been approved.  On the other hand, others may have purchased it without any such mistaken belief, and there was evidence that some specifically requested zMax based upon their own research.  And, after extensive discovery, there is no evidence that zMax caused harm to internal components of vehicles owned by any Plaintiff or Class Member, reducing the damages to the cost of the product itself.

Given the extremely contentious nature of this case to date, it is likely that the litigation would have continued for a substantial amount of time.  Indeed, Autobahn sued two of the named Plaintiffs and class counsel Herman Franck for defamation surrounding the claims asserted in this matter.  This tactic further entrenched both sides and resulted in substantial litigation.  This matter involved numerous motions to dismiss by each of the Defendants, several amended complaints, formal mediation, and the production of documents relating to the Plaintiffs' transactions.  In the parallel state court litigation, over two dozen depositions were taken on these issues, and two complete trials were taken with sworn testimony from a number

---

[1]   By way of example, the price difference between a Mercedes-Benz branded oil filter and an identical OEM substitute made by Mann at a nationwide retailer was recently $1.05. Similarly, the price difference between a different Mercedes-Benz branded oil filter and its identical OEM substitute made by Mann at that same retailer was $2.98.

of overlapping witnesses.   Undoubtedly, there would have been a substantial duration of additional and costly litigation if this case did not settle when it did.

The benefits of Settlement balanced against the length, expense, and uncertainty surrounding future litigation weigh heavily in favor of final approval. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 U.S. Dist. LEXIS 115056, at *20-22 (N.D. Cal. Aug. 25, 2016); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (citation omitted); 4 Alba Conte & Herbert B. Newberg on Class Actions §11.50 (4th ed. 2002) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

**B.   RISK OF MAINTAINING CLASS ACTION STATUS THROUGH TRIAL**

The risks associated with maintaining a class action through trial are a relevant criterion in evaluating the reasonableness of a proposed class action settlement.  *Amchem*, 521 U.S. at 591; *see also In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005).   It is well-recognized that "[a] district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 968 (9th Cir. 2009) (citing *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 160 (1982)).

Plaintiffs anticipate that the Autobahn Defendants would vigorously contest class certification and their briefing of their Motion to Dismiss indicates that they have carefully considered various possible defenses against class certification.  While Plaintiffs believe the criteria of Rule 23 are satisfied here, Plaintiffs recognize the risks inherent in obtaining, and maintaining, class certification.  For example, some class members may have specifically

requested that zMax be added to their vehicle, and others might have purchased the product without relying on Autobahn's representations one way or the other.  This possibility could have provided an argument that the predominance of individualized issues defeats certification.

Additionally, statute of limitations issues would have complicated certification because the claims cover transactions that go back as far as 2005.  As set forth in Plaintiffs' Third Amended Complaint, Plaintiffs have an argument that the limitations period was tolled until the class members discovered the facts underlying their claims.  However, Plaintiffs must acknowledge that such arguments may involve individualized factual issues that would be difficult to establish on a class basis.

Arbitration agreements present another potential barrier to certification.  In its order dated January 18, 2018, this Court determined that the arbitration clause in the Autobahn retail installment agreement required arbitration of claims against Autobahn.  (Doc.  117).  The practical effect of that ruling is to prevent class treatment of the claims related to the purchase of CPO cars, eliminating the CPO Class (Class 3) completely from the case.  It would also likely have been a major impediment to the certification of Class 1 and Class 2, or would have required excluding all individuals who purchased or leased vehicles from Autobahn from those classes.

Even if Plaintiffs were successful in obtaining class certification, the Autobahn Defendants would likely pursue an interlocutory appeal pursuant to Rule 23(f).  The outcome of such an appeal would also be uncertain, and, at a minimum, would delay and add complexity and additional risk and cost to the proceedings, delaying or eliminating the possibility of meaningful recovery for Plaintiffs and the Class.

## C.  BENEFITS OF THE SETTLEMENT

Discovery obtained by Class Counsel in related litigation, including documents, deposition testimony, and trial testimony from disinterested, third-party distributors (who sold non-Genuine parts to Autobahn) uncovered the key evidence that Plaintiffs would rely upon at trial in this case to establish class damages.  This evidence quantified the total amount Autobahn spent during the Class Period to purchase non-Genuine parts.  The total *cash redemption value* of the Settlement Benefits to Class 1 corresponds to the estimated total difference in the cost of all non-Genuine parts sold by Autobahn during the Class Period and the cost of the corresponding Genuine parts as indicated by records obtained in discovery.  In other words, the *cash value* of the Vouchers is equal to the total amount of damages that Class 1 could be expected to recover at trial, if successful.  The total value of the Vouchers, which may be used to purchase goods and services from Autobahn, is *more than twice* the amount of damages that Class 1 could expect to recover if successful at trial.

The Parties also endeavored to reach a reasonable resolution for the zMax Class.  Some class members knowingly purchased zMax based upon its advertised benefits, while others may have purchased or received zMax without a full understanding of what they were getting.  Only the latter class members would be entitled to a monetary recovery; therefore, a Claim Form was used to allow those class members who would not have purchased zMax had they understood that it has not been endorsed or approved by Mercedes to self-identify.  The parties agree this is a reasonable way for the zMax class to be fairly compensated.  A copy of the Claim Form is attached to the Settlement as Exhibit D.

Further, the parties negotiated a Settlement that provides relief to all class members while also taking into consideration Autobahn's assertion that older claims are likely beyond the statute of limitations.  Rather than exclude class members with older claims, such that they would

16

receive nothing, Class 1 and Class 3 provide for reduced amounts for class members whose purchase may be beyond the limitations period.  This compromise provides relief for those Settlement Class members while not reducing the settlement benefit disproportionately for Settlement Class members within the limitations period.

Finally, the proposed settlement includes Settlement Class members who could have been excluded due to the arbitration clause in the Autobahn sale contracts.  Although they might have been excluded from the class if the case had proceeded, through negotiation, customers who purchased or leased a vehicle from Autobahn have been brought back into the Settlement Class and shall be eligible to fully participate in the settlement.  Because the expense and effort required to bring such claims individually would likely outweigh any recovery, class members subject to arbitration likely would have little motivation to bring such claims.  Accordingly, the only way for the great majority of these class members to benefit is through this Settlement.  The fact that the Settlement provides substantial benefits for class members who otherwise likely would not get any compensation weighs heavily in favor of approval.

Class Counsel worked long and hard to construct a settlement that provides meaningful benefits to all Settlement Class members, that is tailored to remedy the specific issues raised by Plaintiffs' allegations as well as the defenses available to Autobahn.  It is highly unlikely that a successful result at trial would garner any better result than that achieved by the proposed Settlement.  But even if it did, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (*citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)). Given the uncertainties of class certification and trial, the value of the Settlement plainly meets (and exceeds) the adequacy standard and renders this factor supportive of the proposed Settlement.

17

1    Furthermore, in evaluating the benefits provided to the Settlement Class members, it is

2    important to note that they will retain the ability to pursue certain claims against MBUSA,

3    specifically, Plaintiffs' claims arising out of MBUSA's advertisement of Mercedes-Benz

4    branded (i.e., Genuine) parts as superior and longer-lasting remain live.   Thus, portions of

5    Plaintiffs' CLRA, UCL, FAL, fraud, and negligent misrepresentation claims against MBUSA

6    may go forward despite the settlement with the Autobahn Defendants.

7

8    **D.  EXTENT OF DISCOVERY AND STAGE OF PROCEEDINGS**

9    For the parties "to have brokered a fair settlement, they must have been armed with

10   sufficient information about the case to have been able to reasonably assess its strengths and

11   value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). "A settlement

12   following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l*

13   *Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

14   The Court need not reach any ultimate conclusions on the contested issues of fact and law

15   underlying the merits of the dispute, for it is the uncertainty of outcome in litigation and

16   avoidance of wasteful and expensive litigation that induce consensual settlements.  *Officers for*

17   *Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.

18   1982).   Approval of a class action settlement does not require that discovery be formal or

19   exhaustive.  *See Clesceri v. Beach City Investigations & Protective Servs.*, 2011 WL 320998, at

20   *9 (C.D. Cal. Jan. 27, 2011) ("In the context of class action settlements, formal discovery is not a

21   necessary ticket to the bargaining table where the parties have sufficient information to make an

22   informed decision about settlement." (*quoting Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

23   1239 (9th Cir. 1998))).

24

25   Class Counsel firmly believe that the claims in this action have merit and are supported

26

27   by ample evidence, while at the same time recognizing that the evidence developed through

28

18

years of discovery indicate that any recovery at trial is likely to not exceed the benefits the

Settlement Class receives under the Agreement.  Class Counsel have been actively engaged in

this litigation for approximately 3 years (dating to the filing of the original action) and more

importantly, have been involved in hard-fought related litigation that has progressed through

years of formal discovery, two trials, and preparation for a third trial.

More specifically, Plaintiff Keynejad, through counsel Herman Franck, tried a case

against Autobahn in connection with a joint advertising program between his company,

Eurotech, and Autobahn.  *Maskay Inc. v. Autobahn Motors, Inc.*, Case No. CIV525559 (San

Mateo Cty. Super. Ct.).[2]  Mr. Franck also tried another case brought by Eurotech against

MBUSA that elicited documents, deposition testimony and trial testimony highly relevant to the

claims here.  Additionally, Autobahn filed a defamation case against Plaintiffs Keynejad and

Diaz relating to statements made to the public concerning some of the allegations made in this

action.  *Autobahn, Inc. v. Maskay Corporation,* Case No. CIV535413 (San Mateo Cty. Super.

Ct.).

In fact, years of discovery had been completed and the defamation action had progressed

to jury selection before the case was stayed to allow for settlement negotiations, which resulted

in the parties agreeing to the entry of a stipulated judgment with no money changing hands.

(Franck Declaration, Exhibit 2 to Plaintiffs' Memorandum of Law in Support of Motion for

Preliminary Approval, Doc. 140-2).  Through those related cases, counsel for the class gathered

deposition and trial testimony as well as thousands of pages of discovery and exhibits.  (Warwick

Declaration, Exhibit 1 to Plaintiffs' Memorandum of Law in Support of Motion for Preliminary

Approval, Doc. 140-1 at ¶27).  As a result, Class Counsel had substantial discovery and

---

[2]   Eurotech prevailed at trial on one of its claims against Autobahn and was awarded
$484,913.60 in damages.  Autobahn and Eurotech settled that case and Autobahn has agreed
to dismiss its appeal.

documentation when settlement discussions began.   Even a cursory review of the Third Amended Complaint shows the breadth of the information obtained.   Thereafter, Autobahn provided additional information to facilitate settlement discussions. (*Id*.)  All of this information educated Class Counsel on the merits of the claims and the damages potentially recoverable at trial. (*Id*.)  Accordingly, this factor weighs in favor of granting final approval.

### E.  EXPERIENCE AND VIEW OF COUNSEL

Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation. *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). The recommendations of plaintiffs' counsel should be given a presumption of reasonableness. *Clesceri*, 2011 WL 320998, at *10 ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").

Although the law firm of Varnell & Warwick came into the case after substantial discovery had been obtained, they amended the complaint, narrowed the issues and modified the class definition.  They also opened a dialog for settlement and helped to structure this Settlement. The Varnell & Warwick firm has been named class counsel in more than 40 consumer class actions across the country and has ample experience.  See Declaration of Brian W. Warwick at ¶3 filed in support of Plaintiffs' Motion for Attorney Fees (Doc. 164-6).

In the opinion of Class Counsel, this Settlement represents as much or even more than class members could expect to obtain at trial and that, as a result, the settlement is fair, adequate and reasonable.  Thus, this factor too weighs in favor of granting final approval.

### F.  PRESENCE OF GOVERNMENTAL PARTICIPATION

While no governmental entity is a party to this litigation, notice was timely issued to the appropriate federal and state officials in all 50 states, the District of Columbia, and the United

20

States territories in accordance with the 28 U.S.C. § 1715, and no governmental entity has filed objections or concerns about the Settlement.

### G.  LACK OF COLLUSION BETWEEN THE PARTIES

Courts accord "considerable weight" to settlements that are the product of hard-fought negotiations by experienced counsel.  *Ellis,* 87 F.R.D. at 18; *Larsen v. Trader Joe's Co.,* 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014).  Settlements that follow sufficient discovery and genuine arm's-length negotiation are presumed fair.  *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 2003 U.S. Dist. LEXIS 25375, *13 (C.D. Cal. 2004).  When a settlement is achieved through arm's-length negotiations between experienced counsel, the Court should be hesitant to substitute its own judgment for that of counsel absent a showing of fraud, collusion or other forms of bad faith because the "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

As set forth in the Declaration of Class Counsel, the Settlement is the product of hard-fought arm's-length negotiations.  The Parties were aided in this process by a highly respected mediator—Hon. Raul Ramirez (Ret.)—who assisted the negotiations during two separate mediations.  (Warwick Declaration, Doc. 140-1 ¶¶ 24, 25).  Additionally, counsel for the parties outlined the scope and format of this settlement during a two-day settlement conference in Washington, DC.  (*Id.*)  Class counsel has experience in auto litigation and in class action settlements with a similar structure.

Thus, the process pursuant to which the proposed settlement was achieved is a factor weighing in favor of preliminary approval. *Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) (the assistance of an experienced mediator in the settlement

process confirms that the settlement is non-collusive); *see also In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (fact that a settlement was reached through negotiations with an experienced mediator is highly indicative of fairness).

### H.  REACTION OF THE CLASS TO THE SETTLEMENT

After notice, the Class's response to the Settlement has been overwhelmingly positive. As detailed in the Declaration of Ritesh Patel, on behalf of RSM US LLP (the Settlement Administrator), the Settlement Administrator was highly successful in sending notice of the Settlement to the Class members, with a presumed success rate of 99%.  As Mr. Patel indicated in the RSM declaration (attached hereto as Exhibit 1):

**a.  Notice Process**

The Settlement Administrator used a hybrid email and postcard notice to send notice to each of the 50,310 Settlement Class members individually.  Patel Decl. ¶¶ 3–14.  In total, the Settlement Administrator delivered notice to 49,884 of the Settlement Class members, successfully reaching 99% of the class.  *Id.* ¶ 14.

**b.  Email Notice**

Autobahn had email addresses on file for 39,233 Settlement Class members.  *Id.* ¶ 5.  Of the 39,233 emails that the Settlement Administrator sent, 30,489 were successfully delivered, while 8,744 were undeliverable.  *Id.* ¶ 6.  Of the 30,489 emails that were successfully delivered, the Settlement Administrator was able to confirm that 12,733 were "opened" by the recipient. *Id.* ¶ 7.  While that 12,733 figure sets the floor as to the number of recipients who reviewed the email, recipients who did not "open" the email may also have read the email by using the preview feature of an email program like Microsoft Outlook, which allows users to see the full contents of an email without "opening" it.  *Id.*  As to those 8,774 emails that were undeliverable, the Settlement Administrator sent a second notice via mail.  *Id.* ¶ 8.

**c.  Mail Notice**

In addition to sending notice via mail to those 8,774 Settlement Class members where the email notice was undeliverable, the Settlement Administrator also sent mail notice to those 11,077 Settlement Class members for whom Autobahn did not have an email address on file. *Id.* In total, 19,821 notices were sent by mail. *Id.* Of the 19,821 mail notices that were sent to class members, 987 were returned as undeliverable, 7 with forwarding addresses, 980 without forwarding addresses. *Id.* ¶ 11.   The Settlement Administrator forwarded the 7 mail notices where a forwarding address was provided, and all 7 were successfully delivered. *Id.* ¶ 12.   As to the 980 mail notices where no forwarding address was provided, the Settlement Administrator used the Accurint database to attempt to locate accurate addresses. *Id.* ¶ 13.   The Settlement Administrator was able to locate 517 forwarding addresses via Accurint, successfully delivering 514 of the originally undeliverable mail notices. *Id.* ¶ 13.   In total, 19,355 postcard notices were delivered. *Id.* ¶ 14.

d.   **Notice Contents**

Both the mail and email notices followed the short form set by the Court at the preliminary approval stage. *See* Dkt. 60, Ex. B.  The notices provided Settlement Class members with information about the Settlement, as well as access to the settlement website.  The website provided additional information about the Settlement, including the long form notice, and selected pleadings from the case.  Patel Decl. ¶¶ 16–17. Additionally, the website allowed each Settlement Class member the opportunity to elect to receive cash in lieu of a voucher. *Id.*  As to Class 2, the only Class that was not automatically compensated, the settlement website also provided an opportunity to make a claim. *Id.* ¶ 17.

e.   **Response of the Class**

Of the 50,310 Settlement Class members, 2,193 filed Cash Election/Claim Forms by the deadline of November 13, 2018.  Of those Settlement Class Members who filed forms, 2,001, or

4% of the class, elected to receive cash in lieu of a voucher.  The claims rate for members of Class 2 was 5%, which matches Class Counsel's prediction prior to preliminary approval.[3]  (Doc. 158 at 10 & Ex. B, Dahl Decl.).  Members of Classes 1 and 3 will be compensated automatically regardless of whether they file claims.  Approximately 98% of the members of Class 2 are also members of Class 1 or Class 3, and will receive compensation as members of those Classes regardless of whether they filed a Class 2 claim.[4]  (Dahl Decl., Doc. 158, Ex. B ¶¶ 17–18).  In total, $27,240.42 in cash will be distributed and $1,144,427.50 in voucher benefits will be distributed to Settlement Class members if the Settlement receives final approval from the Court.[5]

To reiterate, the Settlement Administrator reports the following information in connection with Final Approval:

1.  The actual claims rate for Class 2 is 5%.

2.  The percentage of Settlement Class members who elect to receive checks is 4%.

3.   The total amount of cash benefits to be distributed is $27,240.42.

4.  The total amount of voucher benefits to be distributed is $1,144,427.50.

The 5% actual claims rate for Class 2 is greater than the estimate ("claims rate of less than 5% because consumers are simply unwilling to take even the smallest steps to participate") provided by counsel to this Court. See DE 158 at Page 10, footnote 11.

---

[3]   Out of those 460 Class 2 claims, 401 elected cash, and 59 elected vouchers.  The 401 Class 2 members who elected cash are included in the 2001 Settlement Class members (4%) who elected cash.

[4]   This is true even if none of the 2% of Class 2 members who are not members of Classes 1 or filed claims forms.

[5]   All of these figures are laid out in more detail in the Patel Declaration, attached hereto as Exhibit 1.  The voucher redemption rate will not be known until the vouchers are distributed after final approval and the one-year redemption period expires.

24

1    While the redemption rate of the vouchers is not yet known, the evidence submitted by

2    Plaintiffs' counsel in this case establishes that the voucher component of this settlement is a true

3    benefit for Settlement Class members, particularly for those who would otherwise be shut out of

4    the settlement because they failed to take the time to make an election.  See DE 158, Exhibit B,

5    Dahl Affidavit.  Because of the automatic nature of the voucher issuance, the "effective claims

6    rate" for noticed Class members is 100%., and the effective claims rate to class members who

7    could be located will be greater than 97%.  *Id.*  at ¶17 and ¶ 18 (positing an effective claims rate

8    in excess of 98% prior to knowing the 5% actual claims rate for Class 2).

9

10    There were only three (3) requests for exclusion (opt-outs) from the Class beyond the

11    non-representative named Plaintiffs who settled their claims at mediation, which is well below

12    the 1% threshold for opt-outs in the Settlement Agreement.  The only comment or objection on

13    the Settlement was from former Plaintiff Hooshang Jowza.  Mr. Jowza was listed as a Plaintiff in

14    this action through the Third Amended Complaint.  However, he was unwilling to act as a class

15    representative.  His deposition was taken and his damages discussed in detail with counsel and

16    Autobahn.  His individual claim with Autobahn was settled at mediation with Autobahn and he

17    opted out of the class in order to effectuate that individual resolution. Since he opted out of the

18    class before mailing his comment to the Court, Mr. Jowza's comment is not to be considered.[6]

19    As a result, there are currently no valid objections to this Settlement.

20    **V. CONCLUSION**

21         As the above analysis and supporting documents demonstrate, the proposed Settlement

22    clearly satisfies the criteria for final approval.  Therefore, Plaintiffs respectfully request that this

23    Honorable Court enter an Order granting final approval to the Settlement.

24

25

26

27    [6]  After discussions with counsel, and after being assured that his claims against Mercedes
        would proceed, Mr. Jowza also withdrew his objection.  See Exhibit 2, Jowza Withdrawal of
28      Objection, December 7, 2018.

25

1    Respectfully submitted this 11th day of December, 2018.

2                         **VARNELL & WARWICK, P.A.**

3                         By: /s/ Brian Warwick
                          Brian W. Warwick, (Admitted Pro Hac Vice)
4                         Janet R. Varnell, (Admitted Pro Hac Vice)
                          David Lietz (Admitted Pro Hac Vice)
5                         P.O. Box 1870
                          Lady Lake, FL 32158
6                         Telephone: (352) 753-8600
                          Facsimile: (352) 504-3301
7

8                         Herman Franck, Esq. (SB #123476)
                          Elizabeth Betowski, Esq. (SB #245772)
9                         FRANCK & ASSOCIATES
                          910 Florin Road, Suite 212
10                        Sacramento, CA 95831
                          Tel. (916) 447-8400
11                        Fax (916) 447-0720

12

13                                    *Attorneys for Plaintiff*
                                      Steve Ferrari, Mike Keynejad et al.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBITS:

1.      Declaration of Ritesh Patel

2.      Withdrawal of Objection, Hooshang Jowza