UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVE FERRARI, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MERCEDES BENZ USA, LLC, ET AL.,**<br><br>Defendants. | CASE NO. 17-cv-00018-YGR<br><br>**ORDER GRANTING MOTION OF MERCEDES BENZ USA, LLC TO DISMISS FOURTH AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Dkt. No. 163, 183 |

Pending before the Court is the motion of defendant Mercedes Benz USA, LLC ("MBUSA") to dismiss the Fourth Amended Complaint of plaintiffs Steve Ferrari, Mike Keynejad, Patricia Reuben, Harold Fethe, John Diaz and Ray Gapasin and the putative class they seek to represent. (Dkt. No. 163). MBUSA seeks to dismiss the remaining claims against it on the grounds that plaintiffs have not alleged a basis for standing and that they have not alleged facts sufficient to state their claims for fraud, negligent misrepresentation, violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq*., "FAL"), and violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, "CLRA"). Having considered the papers filed in support and in opposition to the motion, including the supplemental filings at Docket Nos. 179, 180, and 182,[1] as well as the pleadings in this action, and for the reasons stated herein, the Court **GRANTS** the motion to dismiss **WITHOUT LEAVE TO AMEND**.

---

[1] On January 15, 2019, in the hearing on final approval of the class settlement with other defendants, plaintiffs proposed filing a Fifth Amended Complaint solely to remove allegations that were no longer relevant in light of the settlement. On January 24, 2019, Plaintiffs filed their redline comparison with the proposed Fifth Amended Complaint. (Dkt. No. 178-1.) The Court thereafter issued an order striking the proposed Fifth Amended Complaint and directing plaintiffs to show cause why the motion to dismiss the 4thAC should not be granted without leave to amend. The Court has considered the supplemental filings at Docket Nos. 179, 180, and 182 in connection with this motion. However, plaintiffs' additional request to submit a surreply on the grounds that MBUSA mischaracterized the nature of the settlement and prior pleadings (Dkt. No. 183), is **DENIED** for lack of good cause shown.

# I PROCEDURAL HISTORY

This instant action is a new complaint filed by some of the same plaintiffs as the *Ferrari et al. v. Autobahn, Inc. et al.*, Action No. 4:15-cv-04379-YGR litigation previously dismissed by this Court. Plaintiffs filed San Mateo Superior Court and defendant MBUSA removed this action to this Court, on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1453, and 1711–1715. Shortly after removal, plaintiffs filed a First Amended Complaint (FAC). (Dkt. No. 14.) MBUSA moved to dismiss the FAC, and this Court granted the motion in part with leave to amend, finding that plaintiffs had failed to allege reliance and injury sufficient to state a fraud claim based on the allegations that MBUSA had made false statements about the longevity and superiority of genuine Mercedes Benz parts. (Dkt. No. 64.)

Plaintiffs thereafter filed a Second Amended Complaint (Dkt. No. 69, "SAC"), and MBUSA again moved to dismiss (Dkt. No. 84). After the motion to dismiss the SAC was fully briefed, plaintiffs untimely sought leave to file a Third Amended Complaint ("TAC"). The Court granted the motion to dismiss with leave to amend and directed plaintiffs to amend the allegations in the proposed TAC accordingly. (Dkt. No. 117.) In that Order, the Court noted that the proposed TAC plaintiffs submitted still did not address the issue that had caused the Court to dismiss the fraud-based claim against MBUSA previously: failure to allege reliance and resulting injury. (*Id*. at 4, 5.) The Court noted that alleging "some but not all" plaintiffs relied on the representations "without alleging the facts about whether *any* plaintiff saw the advertising making such representations, only served to add to the insufficiency of the pleading." (*Id*. at 4.) The Court ruled that:

> [while] the proposed TAC does not repeat this language, [it] also does not allege that plaintiffs viewed, found material, and relied upon the alleged advertising (or which plaintiffs did so). The Ninth Circuit has required such allegations in the context of alleged false representations in advertising in order to state the claim. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1128 (N.D. Cal. 2014) (citing *Kearns* for the proposition that Rule 9(b) "encompasses the circumstances surrounding reliance"). Having failed to allege those facts sufficiently in the SAC or in the proposed TAC, the Court **GRANTS** the motion to dismiss claim four of the SAC, and directs plaintiffs to amend those allegations before filing a third amended complaint . . . . Plaintiffs are directed to revise their proposed TAC to address the reliance and resulting injury elements in connection with their fraud

2

and misrepresentation claims concerning false representations of longevity or superiority.

(*Id.* at 4, 5.)

Following this Order, plaintiffs filed their TAC on February 6, 2018 (Dkt. No. 126). Subsequently, they filed a motion for preliminary approval of a settlement with the other defendants to this action[2] and filed a Fourth Amended Complaint ("4thAC") without first seeking leave of Court to do so. The Court initially ordered plaintiffs to show cause why the 4thAC should not be stricken. (Dkt. No. 141.) Once the parties confirmed that the 4thAC was being filed consistent with the terms of the settlement, and that all parties stipulated to its filing, the order to show cause was withdrawn and the 4thAC was deemed filed. (Dkt. No. 143.) The instant motion to dismiss is thus directed to the allegations of the 4thAC.

## II. REMAINING ALLEGATIONS AGAINST MBUSA -- SUPERIORITY AND LONGEVITY CLAIMS

The plaintiffs concede that, to the extent the 4thAC alleged claims against MBUSA based upon the use of non-Genuine Parts for service and repairs, the Certified Pre-Owned vehicle program, and the use of the zMax additive, those claims have been settled and released as part of the class action settlement previously approved by the Court. (Dkt. No. 165, Opposition, at 1.) The claims in the 4thAC that remain are based on allegations that MBUSA falsely represented Genuine Parts to have greater longevity and superior quality compared to non-Genuine Parts. Those claims are: (a) Count Two under the CLRA on behalf of the class; (b) Count Five under the FAL on behalf of the class; (c) Count Nine for fraud on behalf of the individual named plaintiffs only; and (d) Count Ten for negligent misrepresentation on behalf of the individual named plaintiffs only.

The claims are based on the following allegations regarding MBUSA's advertising: MBUSA's website states, "[u]sing only Genuine Mercedes-Benz Parts affords you measurable differences every mile you travel. Longevity, safety and warranty are just a few of many reasons

---

[2] Plaintiffs and defendants Autobahn and Sonic agreed to settle the entire action "except those relating to MBUSA's advertising claims relating to longevity and superiority of Mercedes-Benz [G]enuine [P]arts." (Dkt. No. 136-1, Settlement Agreement ¶ 33 ["The claims in the Action that are not released as to MBUSA are reflected in the Third Amended Complaint in Count II (CLRA), Count III (UCL), Count IV [*sic*] (FAL), and Count IX (Common Law Fraud)."].) In opposition to the instant motion, plaintiffs verified that the UCL claim was likewise resolved by the settlement. (Oppo. at 1:25-26.)

3

to buy Genuine Parts." (4thAC 86(a).) The website and MBUSA print brochures go on to tout

MBUSA's products:
> Oil filters: "can last 45% longer than other aftermarket oil filters."
> Air filters: "lasts at least 40,000 miles. Other aftermarket filters might need to be replaced at 12,000 miles." and "capture 28% more soot over their lifetime than most brands."
> Cabin filters: "are 36% more effective at filtering soot than tested aftermarket filters."
> Wiper blades: "can provide up to 800,000 more wiping cycles than other aftermarket brands."
> Brakes: "tested lower in vibration versus other aftermarket brands."

(*Id*. ¶ 86(b).) The 4thAC alleges that "[t]hese statements are materially false when the so-called non-Genuine 'aftermarket' parts are produced by the same manufacturers that produce Genuine Parts for Mercedes-Benz." (4thAC ¶ 87.) Additional allegations contend that Mann Filters perform as well as Genuine MBUSA filters and that Bosch spark plugs made with the Genuine logo are identical to other spark plugs made by Bosch at a lower price. (*Id*. ¶¶ 90-92.) The 4thAC alleges that "Defendants knowingly concealed from Plaintiffs and members of the class the true facts regarding non-Genuine [P]arts in order to cause them to purchase only Genuine Parts despite virtually identical parts made by the same manufacturer being available at reduced prices." (*Id*. ¶ 102.)

The CLRA claim relies on the foregoing statements to allege MBUSA "violate[d] this [statute] by making unfounded superiority and longevity claims regarding Genuine Parts as described herein." (*Id*. ¶ 165.) The FAL claim adds that "[m]embers of the Genuine Parts Class suffered damages as a result of Defendants' advertising campaign depicting Genuine Mercedes Parts as lasting longer and being of superior quality to all aftermarket products, when many aftermarket products cost significantly less and are identical to the Genuine Parts and sold by the same manufacturer." (*Id*. ¶ 213.) The individual plaintiffs' claim for fraud alleges that "[p]laintiffs relied on these representations and were damaged as a result [because they] were led to believe that Genuine Parts were of superior quality when compared to all other aftermarket parts." (*Id*. ¶ 276.) Finally, the individual plaintiffs' claim for negligent misrepresentation alleges that "[p]laintiffs reasonably relied on the Defendants' misrepresentations to their detriment by either purchasing but not receiving Genuine Parts during a maintenance visit, purchasing a CPO

4

automobile from Autobahn Motors, and/or by bringing their automobiles into Autobahn Motors for repairs." (*Id*. at ¶ 286.)

### III. DISCUSSION

#### A. Standing

MBUSA first argues that the remaining claims in the 4thAC should be dismissed for lack of standing because plaintiffs do not allege that they purchased Genuine Parts. The Court agrees.

To establish Article III standing, a plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014). Here, plaintiffs allege no injury fairly traceable to MBUSA's alleged misrepresentations of Genuine Parts' superiority or longevity. Numerous allegations in the 4thAC allege that plaintiffs received *non-*Genuine Parts. (4thAC ¶¶ 14-17, 33-36, 50, 57, 60, 77-80 (e.g., "Defendants installed non-Genuine [P]arts into his vehicle," "non-Genuine [P]arts were installed into his car," and "received non-Genuine and non-OEM parts during those repairs.").). Yet the 4thAC is lacking in any allegation that the named plaintiffs purchased or received any Genuine Parts, and specifically does not allege that they received any of the Genuine Parts as to which the 4thAC alleges MBUSA made misrepresentations (*i.e.,* spark plugs, oil filters, air filters, brake pads, and wiper blades; *see* 4thAC ¶ 86(b).)

Plaintiffs argue the Court should infer that they purchased Genuine Parts based on the allegation that "[d]efendants knowingly concealed from *Plaintiffs and members of the class* the true facts regarding non-Genuine [P]arts *in order to cause them* to purchase only Genuine Parts despite virtually identical parts made by the same manufacturer being available at reduced prices." (4thAC ¶ 102, emphasis supplied.) However, this allegation does not state that any person actually had Genuine Parts (much less those particular parts identified) installed in their automobiles. At most, the allegation states that MBUSA acted with the intent to cause consumers to purchase the Genuine Parts, not that plaintiffs here did so.

Simply alleging misrepresentations without facts to tie those allegations to any injury suffered by plaintiffs is insufficient to establish that there is an existing "case or controversy"

5

between plaintiffs and MBUSA with respect to those misrepresentations. On standing grounds alone, the claims must be dismissed.[3]

### B. Failure to State A Claim

For much the same reasons, even if the Court were to find that plaintiffs had alleged standing, they have failed to allege facts to show they relied upon the alleged misrepresentations and such reliance caused them harm. In the absence of any allegation that plaintiffs purchased Genuine Parts, a generalized allegation that MBUSA made misrepresentations "to entice consumers to enter into transactions involving higher[-]priced Genuine Mercedes-Benz Parts, and Plaintiffs relied on these representations" (4th AC ¶ 276) is insufficient to allege the fraud-based claims here. In addition, plaintiffs fail to allege that they were exposed to any of the allegedly false advertising. These gaps lead to the conclusion that plaintiffs are unable to allege that they suffered any harm as a result of the alleged misrepresentations by MBUSA.

Plaintiffs' opposition to the motion, as well as their supplemental briefing, do not salvage the claims against MBUSA. First, the authorities cited by plaintiffs do not aid the claims in the 4thAC which allege reliance and causation only in the most conclusory terms. Plaintiffs cite to *In re Tobacco II* for the argument that they need to identify any misrepresentations on which they relied in order to state a claims. *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). However, the case holds that plaintiffs are "not required to plead *with an unrealistic degree of specificity* that [they] relied on particular advertisements or statements." *Id*. (emphasis supplied). It still requires that "a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204," allowing only that a plaintiff "is not required to necessarily plead and prove

---

[3] Leaving aside the fact that they do not allege purchasing or receiving Genuine products, plaintiffs do not explain why their price differential injury is not mooted by the settlement's compensation for that injury. Plaintiffs point to the allegations in paragraphs 94-95 of the 4thAC, which allege that their claim of harm in being charged for higher-priced Genuine [P]arts but receiving non-Genuine Parts is not inconsistent with their claim that "[i]f the Genuine products are found not to be of superior quality, then Defendants engaged in unlawful conduct by charging higher amounts for Genuine Parts." In their settlement with the Autobahn defendants, plaintiffs (and the class) were compensated for the price difference between Genuine products and non-Genuine products because the non-Genuine products were used. Plaintiffs now seek to recover the price difference between Genuine and non-Genuine products because MBUSA should not charge more for them. Plaintiffs' attempt to allege a "heads I win, tails you lose" scenario does not create standing.

6

individualized reliance on *specific* misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *Id*. (emphasis supplied). Thus, even if the plaintiff does not point to *specific* instances, some plausible allegation of reliance nevertheless is required. Indeed, in the *Whiteley* case, cited by plaintiffs here, the court held that reference to specific misrepresentations was not required in the context of evidence that the plaintiff had, in fact, been exposed to misinformation in the tobacco companies' advertising campaigns, to the point that she "discounted" information from the government because "the tobacco industry was saying it was 'safe' to smoke cigarettes" and therefore continued smoking in reliance on that misinformation. *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 682 (2004).[4]

Second, plaintiffs argue that they have developed evidence to show that many of plaintiffs were exposed to the MBUSA display ads at the dealership when they brought their automobiles in for service, or were generally aware of those ads. Even accepting these representations of facts outside the pleadings at face value, they do not alter the conclusion that plaintiffs never allege they relied on statements in the advertising in a decision to purchase parts or bring an automobile to the dealer for service. Exposure to the ads at the dealership, without more, is insufficient to establish reliance and causation in the absence of any allegations that: (1) plaintiffs actually purchased Genuine Parts; or (2) plaintiffs took some action different from what they otherwise would have done based upon seeing those ads. Thus, the proffered evidence would not not alter the Court's analysis. Plaintiffs' assertion that the Court should either allow them to submit this evidence and convert the motion to one for summary judgment, or allow them to amend to allege this exposure, would be futile.

Third, plaintiffs' arguments that the Court's prior orders preclude MBUSA from attacking the pleadings are contrary to the record in this case. The Court previously dismissed plaintiffs' claims against MBUSA for their failure to allege reliance and causation sufficiently. (*See* Dkt. No.

---

[4] Plaintiffs' citation to *Krueger v. Wyeth, Inc.*, No. 03CV2496 JAH AJB, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) is likewise inapposite. The issue there, on class certification, was whether reliance could be established on a classwide basis based upon evidence of the company's representations, not whether the class representative plaintiff had alleged *she* saw and relied on the representations in purchasing the product. *Id*. at *4.

7

64 at 13, 16.)  These same deficiencies continue in the 4thAC.  Moreover, plaintiffs' contention that the Court ordered MBUSA to answer, seizing on an obvious typographical error in the minutes of the preliminary approval hearing, is disingenuous, at best.  The discussion on the record clearly concerned the filing of a *responsive pleading* by MBUSA and did not require that MBUSA file an answer. (Dkt. No. 155 [Transcript] at 44-45.)  The Court dismissed the SAC with leave to amend.  The parties' stipulated to a stay such that no defendant was required to answer the Third Amended Complaint.  (Dkt. No. 129.)  Pursuant to the terms of plaintiffs' settlement with the other defendants, before any responses to the Third Amended Complaint were filed, plaintiffs filed a Fourth Amended Complaint on May 22, 2018.  (Dkt. No. 139.)  On June 27, 2018, the Court approved the stipulation between Plaintiffs and MBUSA to extend its time to "respond" to the Fourth Amended Complaint to August 10, 2018.  (Dkt. No. 150.)  Thus, at the time of the July 31, 2018 hearing on the motion for preliminary approval, there would have been no reason for the Court to order, *sua sponte* and contrary to the parties' stipulation, that MBUSA must answer the Fourth Amended Complaint rather than file the instant motion to dismiss.[5]  To the extent there is any room for confusion, the Court affirms that it did intend that MBUSA be required to *answer* but to file a responsive pleading.

IV. **CONCLUSION**

In sum, plaintiffs have not alleged that any one of them purchased a Genuine Part.  In the absence of such allegations, and with no alleged basis for finding MBUSA's advertising caused them injury, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** and plaintiffs' claims against MBUSA are **DISMISSED WITH PREJUDICE**.

This terminates Docket Nos. 163 and 183.

**IT IS SO ORDERED**.

Dated: May 14, 2019

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[5] The insincerity of plaintiffs' argument is belied by the fact that it was buried in plaintiffs' opposition, rather than offered as a basis to strike the motion the moment it was filed.  Plaintiffs are cautioned that such arguments nearly cross the line into the territory of sanctions for attempting to mislead the Court.

8